# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KIMBERLY PLETCHER, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
|    and | ) | Case No. 2:20-cv-754 NBF |
| | ) | |
| JUDITH MARCH, JOSIAH KOSTEK, | ) | |
| GRAYDON GRAHAM, RONNIE | ) | |
| STURCHIO, NICHOLAS CONLEY, | ) | |
| SHARON BURTON, DEBBIE VIDOVICH, | ) | |
| PAUL SHEPHERD, GERALD | ) | |
| THOMCHICK, CONNIE WINNER, JOHN | ) | |
| DURSO, TRACY O'CONNOR, DOUGLAS | ) | |
| JANASZEK, OWEN BURK, BEN | ) | |
| ZYTNICK, GREGORY MANDICH, JOHN | ) | |
| BLACKSTONE, JAMES LEONARD, | ) | |
| KATHLEEN CUNNINGHAM, JAMIE | ) | |
| MARKS-BORICHEVSKY, POLLY | ) | |
| QUINTILIANI, CAROLYN L. STEWART, | ) | |
| TOMMY WYNKOOP, TAMMIE AIKEN, | ) | |
| STEVEN PARSONS, JEFREY COULSON, | ) | |
| KATHERINE DUCKSTEIN, NATHANAEL | | |
| DOLLAR, THOMAS BENSOR, VICKI | ) | |
| PARKER, STEPHEN MCRAE, KRISTIE | ) | |
| HARNISH, MOLLY SHIRK, MICHAEL | ) | |
| HAMMERS, | ) | |
| | ) | |
|    Consolidated Plaintiffs | ) | |
| | ) | |
|    v. | ) | |
| | ) | |
| GIANT EAGLE, INC. and C&J GROCERY | ) | |
| CO., LLC, | ) | |
| | ) | |
|    Defendants. | | |

## AMENDED MOTION FOR PRELIMINARY INJUNCTION FILED ON BEHALF OF PLAINTIFF JOSIAH KOSTEK

1

AND NOW, COMES Plaintiff, Josiah Kostek, by and through his attorneys, Thomas B. Anderson, Esquire and Thomson, Rhodes & Cowie, P.C. and files this Amended Motion for Preliminary Injunction and in support thereof states as follows:

## I.   TITLE III OF THE ADA AND THE NEED FOR INJUNCTIVE RELIEF

Thirty years ago, in 1990, the ADA was enacted in order to "eliminate discrimination against individuals with physical and mental disabilities across the United States." McGann v. Cinemark USA Inc., 873 F.3d 218, 221 (3d Cir. 2017), quoting 42 U.S.C. § 12101(a)(1); PGA Tour, Inc. v. Martin, 532 U.S. 661, 674-75, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001). "To help 'effectuate its sweeping purpose,' Congress enacted Title III of the ADA, which prohibits 'public accommodations' from discriminating against individuals on the basis of disability." McGann, 873 F.3d at 221, quoting PGA Tour, 532 U.S. at 675; 42 U.S.C. § 12182(a). The passage of the ADA was premised on Congress's finding that discrimination against the disabled is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference," of "benign neglect," and of "apathetic attitudes rather than affirmative animus." Chapman v. Pier I Imports, Inc., 631 F.3d 939, 944 (9th Cir. 2011). "Public accommodations," include grocery stores, such as those operated by Giant Eagle. Scott v. Giant Eagle Mkt.,

2018 U.S. Dist. LEXIS 34514 *11, 2:17-cv-00289 (W.D. Pa., Mar. 2, 2018),

quoting 42 U.S.C. §§ 12181(7)(B) and (E).

In 2008, Congress amended the ADA when it passed the ADA Amendments

Act of 2008 ("ADAAA").  Under the ADAAA, "a disability is broadly defined as:

'(A) a physical or mental impairment that substantially limits one or more major

life activities of such individual; (B) a record of such an impairment; or (C) being

regarded as having such an impairment.'" Anderson v. Kohl's Corp., 2103 U.S.

Dist. LEXIS 63479, *26, 2:12-cv-00822 (W.D. Pa. May 3, 2013), quoting 42

U.S.C. § 12102(1).

Title III of the ADA prohibits discrimination in public accommodations and

services and establishes a "general rule" that:

> No individual shall be discriminated against on the basis of
> disability in the **full and equal enjoyment of the goods,**
> **services, facilities, privileges, advantages, or accommodations**
> of any place of public accommodation by any person who owns,
> leases (or leases to), or operates a place of public
> accommodation.

42 U.S.C. §12182(a) (Emphasis added).  The regulations applicable to Title III

define a physical or mental impairment to include:

> (i) any physiological disorder or condition … affecting one or
> more of the following body systems: neurological, …
> respiratory, … and cardiovascular;
> (ii) any mental or psychological disorder such as … emotional or
> mental illness;
> (iii) contagious and noncontagious diseases; and

3

> (iv) emotional illness and Attention Deficit Hyperactivity
> Disorder (ADHD).

28 C.F.R. § 36.105(b)(1) and (2).  The phrase major life activity includes functions such as breathing, concentrating, thinking, communicating, interacting with others and the operation of the brain and neurological system. 28 C.F.R. § 36.105(c)(1)(i) and (ii).  In virtually all cases, major depressive disorder, bipolar disorder, post-traumatic stress disorder, and obsessive compulsive disorder substantially limit brain function.  28 C.F.R. § 36.105(d)(2)(iii)(K).[1]

Title III of the ADA prohibits disability discrimination "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations, of any place of public accommodation."  McGann, 873 F.3d at 222, quoting 42 U.S.C. § 12182(a).  Disability discrimination includes "denying an individual on the basis of a disability 'the opportunity … to participate in or benefit from the goods or services of a public accommodation."  McGann, 873 F.3d at 222; 42 U.S.C. § 12182(b)(1)(A)(i).  Discrimination also includes:

> the imposition or application of eligibility criteria that screen out
> or tend to screen out an individual with a disability or any class
> of individuals with disabilities from fully and equally enjoying
> any goods, services, facilities, privileges, advantages,
> or accommodations, unless such criteria can be shown to be
> necessary for the provision of the goods, services, facilities,
> privileges, advantages, or accommodations being offered.

---

[1] In cases brought pursuant to Title III of the ADA the primary object of attention should be "whether public accommodations have complied with their obligations and whether discrimination has occurred, not the extent to which an individual's impairment substantially limits a major life activity."  28 C.F.R. § 36.105(d)(1)(i).

Scott, 2018 U.S. Dist. LEXIS 34514 at *7, quoting 42 U.S.C. § 12182(b)(2)(A)(i).

The regulations also state a public accommodation "shall not" subject an individual to a denial of opportunity of the individual to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation. 28 C.F.R. § 36.202 (a). Giant Eagle may not force customers with disabilities to accept alternatives to shopping in its stores without masks, because Giant Eagle is forcing those disabled customers to choose a benefit "that is not equal to that afforded to other individuals." 28 C.F.R. § 36.202(b). Giant Eagle may not force its disabled customers who cannot wear masks to accept alternatives to shopping in its stores because Giant Eagle may not force those customers to accept "different or separate" access to shopping in the store because it is not "necessary to provide the individual with a good, service facility, privilege, or accommodation, or other opportunity that is as effective as that provided to others." 28 C.F.R. § 36.202(c). The fact that Giant Eagle has no comparable policies in West Virginia, Ohio and Indiana proves that the alternative options offered in Pennsylvania are not "necessary."

The regulations also provide that Giant Eagle must afford its goods, services, facilities, privileges, advantages and accommodations to customers who cannot wear masks due to a disability "in the most integrated setting appropriate to the needs of the individual." 28 C.F.R. § 36.203(a). Giant Eagle cannot force disabled

individuals to choose a "separate or different" shopping arrangement.  28 C.F.R. §
36.203(b).  "Nothing in this part shall be construed to require an individual with a
disability to accept an accommodation, aid, service, opportunity, or benefit
available under this part that such individual chooses not to accept."  28 C.F.R. §
36.203(c).  Moreover, Giant Eagle cannot utilize a standard or criteria or method of
administration that has the effect of discriminating on the basis of a disability.  28
C.F.R. § 36.204.

This case is one of numerous consolidated cases involving violations of Title
III of the ADA by Giant Eagle, Inc. ("Giant Eagle").[2]  Plaintiff suffers from several
medical conditions that substantially limit his major life activities of breathing,
thinking and concentrating, as well as his brain, respiratory and nervous systems.
(See Plaintiff's medical records filed under seal for the exact diagnoses).  Plaintiff
cannot wear a mask or cloth face covering without experiencing severe panic
attacks and difficulty breathing.

Giant Eagle has refused Plaintiff access, and had him arrested for trespass, at
its grocery store in Oil City, that is by far the closest grocery store to Plaintiff's
home.  Plaintiff was refused access to the store, arrested and charged with

---

[2] Giant Eagle, Inc. is the corporate owner and operator of most Giant Eagle stores, including the Oil City location
relevant to this motion.  Other stores are owned by independent retailers.  However, Giant Eagle's counsel has
agreed to stipulate that all Giant Eagle stores, corporate and independently owned, are bound by the face covering
policy of Giant Eagle, Inc.  The only reason C&J Grocery Co., LLC was added as a defendant in the Amended
Consolidated Complaint is that the independent retailer made the decision to ban Plaintiff Tommy Wynkoop from
the Ligonier Giant Eagle.

disorderly conduct. Plaintiff was refused access to the Oil City Giant Eagle and arrested based upon the imposition of a mask policy that screens out people with disabilities that prevent them from wearing a mask inside Giant Eagle stores.

Giant Eagle's screening process at the entrances to its stores in Pennsylvania are not necessary for Giant Eagle to sell groceries and medication to customers as evidenced by the fact that Giant Eagle does not refuse access to anyone in West Virginia, Ohio, and Indiana who cannot wear a mask. For this same reason, Plaintiff, and others who cannot wear masks, do not pose a direct threat to others that would justify refusal of access to Giant Eagle stores. Giant Eagle did not implement its mask policy in Pennsylvania because of safety, Giant Eagle implemented its zero-exception mask policy based on politics, convenience, and "to ensure consistency for everyone involved." Exhibit "C" attached hereto.

Plaintiff requested a reasonable modification to Giant Eagle's mask policy, but Giant Eagle made no modification. Because Plaintiff was not a direct threat and his requested modification would not have altered the nature of Giant Eagle's business, Giant Eagle was legally obligated to make the requested modification and allow him to shop without a mask. 28 C.F.R. § 36.302(a). After Plaintiff asserted his rights under the ADA and challenged Giant Eagle's illegal policy, Plaintiff was harassed, arrested, charged with disorderly conduct and banned from

the Oil City store under threat of future arrest for trespass in violation of <u>28 C.F.R.</u> <u>§ 36.206</u>.

Giant Eagle's corporate conduct has irreparably harmed Plaintiff for no legitimate reason. Giant Eagle's discriminatory policies and procedures must be stopped, and a preliminary injunction is the proper means to that end.

Plaintiff can clearly establish all elements of his Title III claim; Plaintiff is likely to succeed on the merits, and Plaintiff has standing to seek injunctive relief. Therefore, Plaintiff's motion for preliminary injunction should be granted.

## II.   <u>FACTS SUPPORTING THE REQUESTED RELIEF</u>

Giant Eagle has adopted a policy that requires all customers in Pennsylvania to wear masks inside Giant Eagle stores, with no exception for customers who cannot wear a mask for medical reasons. Exhibit "C". Customers who cannot wear masks for medical reasons in Pennsylvania are denied access to Giant Eagle stores, however, if those customers were in West Virginia, Ohio, or Indiana, Giant Eagle would allow them to shop in its stores without a mask because Giant Eagle does not require any customer to wear a mask or face covering in its West Virginia, Ohio, and Indiana stores. <u>Id</u>. Giant Eagle's Pennsylvania mask requirement does not comply with the order of the Pennsylvania Secretary of Health, Pennsylvania Department of Health guidelines, or the guidelines published by the United States Center for Disease Control ("CDC").

Plaintiff is a person with a disability who has physical and/or mental conditions, including anxiety disorder, panic disorder, Post Traumatic Stress Disorder (PTSD), and other disorders outlined in his medical records filed under seal that substantially limit his major life activities of breathing, thinking, concentrating, his brain function, and his respiratory and nervous systems. Plaintiff cannot wear a mask over his face without experiencing severe anxiety and difficulty breathing. Exhibit "A". Plaintiff takes medication and is receiving treatment for these conditions. Id.; see also Plaintiff's medical records filed under seal.

On May 16, 2020, Plaintiff attempted to purchase groceries but was denied access to the grocery store because he could not wear a mask. Plaintiff explained that he could not wear a mask because of his medical conditions. Instead of allowing Plaintiff to shop in the store, he was harassed, berated, and threatened by employees and customers alike. Giant Eagle called the police and alleged trespass.

After being denied the opportunity to shop, Plaintiff left the store. When the police arrived, they took him into custody. He was assaulted by the officer during the arrest causing damage to Plaintiff's neck. Plaintiff has been charged with disorderly conduct because he attempted to shop without a mask.

On May 27, 2020, Plaintiff attempted to enter the Giant Eagle again, but was told he could not shop without a mask. This time Plaintiff recorded the encounter.

A video of the encounter is being provide to This Honorable Court with the medical records under seal.  Plaintiff advised the employees that they were in violation of the ADA and all he wanted to do was purchase fruit.  He placed two bags of fruit on the check-out counter, but no one would allow him to purchase the groceries.  The employees stated that it was a private store and they could enact whatever policies they wanted.  One employee physically threatened Plaintiff and another called him a "dumbass."

The Giant Eagle employees again called the police and Plaintiff was told he is not allowed in the grocery store again, all because he was attempting to legally shop at the store without a mask.  The police told Plaintiff he could go to Walmart or some other store to shop, but Giant Eagle was a private company that could deny him access if it wanted to and Plaintiff was told he was not ever welcome again at Giant Eagle.  Thereafter, he received the letter attached hereto as Exhibit "B".  The Oil City store is located near Plaintiff's home and is the only grocery store near Plaintiff's home.

On April 15, 2020, Pennsylvania Governor, Tom Wolf issued a press release announcing that Dr. Rachel Levine, under her authority as Secretary of the Department of Health to take any disease control measures appropriate to protect the public from the spread of infectious disease, signed an order directing

protections for critical workers at businesses authorized to maintain in-person

operations during the Covid 19 disaster emergency.  Exhibit "D," see p. 2.

The Order, effective April 19, 2020, provided in relevant part, that

businesses covered by the order should:

> require all customers to wear masks while on the premises, and deny entry to
> individuals not wearing masks, unless the business is providing medication,
> medical supplies, or food, in which case the business must provide alternative
> methods of pick-up or delivery of such goods; **HOWEVER, INDIVIDUALS
> WHO CANNOT WEAR A MASK DUE TO A MEDICAL CONDITION
> (INCLUDING CHILDREN UNDER THE AGE OF 2 YEARS PER CDC
> GUIDANCE) MAY ENTER THE PREMISES AND ARE NOT
> REQUIRED TO PROVIDE DOCUMENTATION OF SUCH MEDICAL
> CONDITION.**

Exhibit "E", p. 5 at (6) (emphasis added).

The Pennsylvania Department of Health subsequently published guidelines

for businesses, which were updated on May 1, 2020.  The guidelines state:

> Q. If a customer refuses to wear a mask will they be turned away
> or will the customer be refused service?
>
> A. Yes, with the exception of businesses that provide medication,
> medical supplies, or food, which must offer another means for
> the customer to purchase goods if the customer is unable to wear
> a mask.  Those means could include home delivery or contactless
> curbside pick-up.  **However, individuals who cannot wear a
> mask due to a medical condition (including children under
> the age of 2 per CDC guidance) may enter the premises and
> are not required to provide documentation of such medical
> condition. … Businesses should advise customers of the
> Secretary's Order; <u>tell the customer that only those who
> cannot wear a mask due to a medical condition may enter the
> premises without a mask</u>; and advise the customer that
> almost any face covering would be acceptable.**

11

Q.  How do businesses avoid confrontation with customers who do not wear a mask?

**A.  … [B]usinesses should advise customers of the Secretary's Order; tell the customer that only persons who cannot wear a mask due to a medical condition do not have to comply with the requirement to wear a mask….**

Exhibit "F", pp. 5-6 (emphasis added).

Despite the Pennsylvania Secretary of Health's order and guidelines above and CDC guidance to the contrary, Giant Eagle implemented policies and procedures that require all customers to wear masks even if they are disabled and they cannot wear a mask due to their medical conditions.  Exhibit "C".  Giant Eagle's policy flies in the face of recommendations from the CDC which state **"Cloth face coverings should not be placed on young children under the age of 2, anyone who has trouble breathing, or is unconscious, incapacitated, or otherwise unable to remove the mask without assistance."**  The CDC also directs individuals to make sure when using a face covering that you do not have any difficulty breathing while wearing the cloth face covering.  Exhibit "G", p. 2 (emphasis added).

Giant Eagle has adopted and enforces policies and procedures that require all "guests" shopping at all its Giant Eagle, Market District and GetGo locations wear masks or other face coverings in its Pennsylvania stores.  Giant Eagle's policies and procedures make no accommodations for invitees who wish to shop in its

Pennsylvania stores who have disabilities that prohibit wearing a mask or make wearing a mask dangerous to the invitees.  However, Giant Eagle stores in West Virginia, Ohio and Indiana have not instituted the same policy, in fact, they have "no policy."   Exhibit "C".  On May 13, 2020, news outlet, cleveland.com reported "Dan Donovan, a spokesperson for Pittsburgh-based Giant Eagle, told cleveland.com the chain has no policy when it comes to face masks and coverings for customers."  **https://www.cleveland.com/coronavirus/2020/05/see-which-cleveland-stores-require-customers-to -wear-masks-as-of-may-13.html**.
Exhibit "H", p. 5.

> The Ligonier Giant Eagle has published the following:

>> GIANT EAGLE POLICY:
>> Moving forward until further notice in order to shop our store (or any other Giant Eagle location) you must be wearing a mask. **There will be no exceptions regardless of any reason or medical condition.**   We thank you for your compliance and understanding.

Exhibit "I".  (emphasis added).  Matt Faccenda, the Ligonier Giant Eagle "Store Leader," posted publicly that while Governor Wolf's edict that customers should wear masks in stores included an exception and accommodation for customers who cannot wear a mask for medical reasons, the entire company has decided not to comply with the accommodation.  "**It's too easy to make up an excuse not to wear a mask**, and we refuse to put our team members and customers who do wear

a mask at any more risk than they already are.  Health and safety of our community is more important to us than business."  Exhibit "J".  (emphasis added).

While Giant Eagle has implemented the no-exception policy above in Pennsylvania, Giant Eagle does not apply such a policy to its employees or "team members" who cannot wear masks for medical reasons.  Giant Eagle allows its team members to work inside its stores without masks if they provide a medical excuse.  Exhibit "K", p. 1.

Plaintiff lives at 521 Hiland Avenue, Oil City, Pennsylvania.  His residence is three-tenths of a mile from the Oil Giant Eagle grocery store. Exhibit "A" ¶ 2. Plaintiff wants to continue to shop at the Oil City Giant Eagle, but he has been permanently excluded from the Oil City Giant Eagle in retaliation for asserting his legal rights under the ADA.  Exhibits "A", ¶ 8 and "B".

Giant Eagle repeatedly denied Plaintiff full and equal access and enjoyment of the goods and services offered to the public at the Oil City Giant Eagle.  In fact, because Giant Eagle's mask policy applies at all its Pennsylvania locations, Plaintiff has been deprived of full and equal access and enjoyment of goods and services at all Giant Eagle locations because he cannot wear a mask because of his medical conditions.

## III.    STANDARD FOR AWARDING PRELIMINARY INJUNCTION

### A.    Standing

In order to have standing to pursue a claim, the plaintiff must allege facts showing "such a personal stake in the outcome of the controversy as to warrant [his] invocation of federal court jurisdiction and justify exercise of the court's remedial powers on [his] behalf." Scott, 2018 U.S. Dist. LEXIS 34514 at *7, quoting Warth v. Seldin, 422 U.S. 490, 498-99, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (quotation omitted).  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Scott, 2018 U.S. Dist. LEXIS 34514 at *7-8, quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citation omitted).

"The Third Circuit has emphasized that 'the injury-in-fact element is often determinative.'" Scott, 2018 U.S. Dist. LEXIS 34514 at *8, quoting Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 138 (3d. Cir. 2009).  "To establish an injury-in-fact, a plaintiff must show that [he] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and actual and imminent, not conjectural or hypothetical.'" Scott, 2018 U.S. Dist. LEXIS 34514 at *8, quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Injunctive relief is the only remedy for a private ADA Title III violation. Scott, 2018 U.S. Dist. LEXIS 34514 at *8, quoting Anderson v. Macy's, Inc., 943

15

F. Supp. 2d 531, 538 (W.D. Pa. 2013). "Courts look beyond the alleged past violations and consider the possibility of future violations." Id. "A plaintiff seeking prospective injunctive relief must demonstrate a real and immediate threat of injury in order to satisfy the injury in fact requirement." Id. "The plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct." Scott, 2018 U.S. Dist. LEXIS 34514 at *7, quoting Doe v. Nat'l Bd. Of Med. Examiners, 210 F. App'x 157, 159-60 (3d Cir. 2006).

> In determining whether a plaintiff has standing under Title III, courts focus on "the likelihood of the plaintiff's return to the place of public accommodation," which requires consideration of "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definiteness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel.

Scott, 2018 U.S. Dist. LEXIS 34514 at *9 (quotations omitted). "The four-factor test is one of totality, and a finding in favor of the plaintiff does not require alignment of all four factors." Scott, 2018 U.S. Dist. LEXIS 34514 at *7, quoting Anderson, 943 F. Supp. 2d at 539 (quotations omitted).

Plaintiff has clearly suffered an injury in fact and will suffer future injury without injunctive relief. Plaintiff has been banned from the grocery store that is within walking distance (three-tenths of a mile) from his home. Plaintiff shopped for groceries at the Oil City Giant Eagle for 8 years. Before Giant Eagle implemented its mask policy, Plaintiff used to shop inside the Oil City Giant Eagle

16

on a weekly to monthly basis.  Plaintiff had no intention of shopping for his groceries elsewhere.

While there is no telling how long Giant Eagle will continue to enforce its mask policy, or whether the policy will come and go in the future, several things are clear; (1) Plaintiff can no longer shop at the Oil City Giant Eagle, (2) Plaintiff cannot shop inside any Giant Eagle store, and (3) Plaintiff was banned from the Oil City Giant Eagle store because he asserted his legal rights under the ADA. Plaintiff clearly has standing to seek a preliminary injunction.

### B.     Plaintiff has Established a Claim Under the ADA

Plaintiff establishes a claim under Title III of the ADA by showing: "(1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator."  Anderson, 2103 U.S. Dist. LEXIS 63479 at *22.  "A plaintiff is discriminated against based on [his] disability if [he] is discriminated based on misconduct that stems from [his] disability."   Scott, 2018 U.S. Dist. LEXIS 34514 at *11, citing LoCastro v. Cannery Casino Resorts, LLC, No, 13cv0168, 2013 U.S. Dist. LEXIS 57733, 2013 WL 1748347 at *3 (W.D. Pa. Apr. 23, 2013).

Plaintiff has clearly alleged that he is a disabled person under the ADAAA because he has several health conditions that substantially limit his major life

activities of breathing, thinking, and concentrating, and his respiratory and nervous systems.  Exhibit A ¶¶ 4-5.  See also Plaintiff's medical records.   Plaintiff's panic attacks, anxiety disorder, claustrophobia, PTSD, and other conditions substantially impact his breathing and brain function, and the conditions prevent him from wearing a mask because wearing a mask causes severe anxiety and difficulty breathing.  Exhibit A, ¶ 5; see also Plaintiff's medical records.

Because Plaintiff cannot shop in Giant Eagle stores without wearing a mask and because wearing a mask is dangerous to his health and safety due to his disability, Plaintiff has been, and will in the future be, deprived of the full and equal enjoyment of Giant Eagle Stores.  Plaintiff has been deprived of the ability to shop in Giant Eagle stores without putting his health and well-being at risk, unlike shoppers who can comply with Giant Eagle's mask requirement without potentially subjecting themselves to respiratory distress or other danger.  Plaintiff's inability to comply with Giant Eagle's mask policy stems directly from his disability.

Plaintiff has also clearly alleged that Giant Eagle owns, leases or operates the grocery store that has violated his legal rights.  The store in question is owned by Giant Eagle, Inc.  See Exhibit A to Defendant's Status Report (Doc. 15).  Accordingly, Plaintiff's complaint clearly establishes all the elements of a Title III claim.

The ADA also clearly prohibits retaliation and coercion.  28 C.F.R. §36.206. The regulations prohibit private entities from intimidating, threatening, or interfering with any individual in the exercise or enjoyment of any right granted or protected by the ADA. 28 C.F.R. §36.206 (b) and (c)(2).  Giant Eagle clearly retaliated against Plaintiff for asserting his rights and banned him from the Oil City premises.  Exhibits "A" and "B".  Plaintiff's complaint sets forth all necessary elements of ADA retaliation and coercion.

### C.    Test for The Granting of a Preliminary Injunction

To prevail on a request for preliminary injunctive relief, "the plaintiff must demonstrate that '(A) he is likely to succeed on the merits of his claim, (B) he is likely to suffer irreparable harm without relief, (C) the balance of harm favors him, and (D) relief is in the public interest." Evancho v. Pine-Richland Sch. Dist., 237 F. Supp. 3d 267, 283 (W.D. Pa. 2017), quoting Issa v. Sch. Dist. Of Lancaster, 847 F.3d 121, (3d Cir. 2017). "In evaluating whether the party seeking an injunction is likely to succeed on the merits, courts do 'not require that the right to a final decision after the trial be 'wholly without doubt'; the movant need only show a 'reasonable probability' of success." Evancho, 237 F. Supp. 3d at 284 (citation omitted).  "In each case, courts 'must balance the competing claims of injury and must consider the effect on each part of granting or withholding of the requested relief.'" Id. (citation omitted).   "And in exercising their sound discretion, courts

of equity should pay particular regard for the public consequences in employing the extraordinary remedy of an injunction." Id. (citation omitted).

                1.      <u>Plaintiff is Likely to Succeed on the Merits</u>

There is a reasonable probability that Plaintiff will successfully prove that Giant Eagle violated Title III of the ADA and that injunctive relief is necessary and equitable.  There is simply no legitimate basis for Giant Eagle's zero-exception mask policy in Pennsylvania.

Giant Eagle has no policy at all and does not refuse to sell groceries and medication to its customers in West Virginia, Ohio and Indiana who do not wear masks.  Giant Eagle has stated: "to ensure consistency for everyone involved, we are applying this directive to all guests, regardless of any medical or other claim that may be made."  Exhibit "C".  Giant Eagle cannot claim that its actions are reasonable and necessary because if that were the case, the same policy would apply to its shoppers in West Virginia, Ohio, Indiana, and Pennsylvania. Customers with medical conditions that prevent them from wearing masks in West Virginia, Ohio and Indiana are free to enjoy the goods, services and accommodations in the same manner as every other non-disabled shopper. Pennsylvania customers who cannot wear a mask are not any more of a threat than shoppers in West Virginia, Ohio, or Indiana who cannot wear masks, yet customers who cannot, or simply choose not to, wear masks in those three other states are

permitted to fully enjoy the same public accommodation as everyone else.  In Pennsylvania, and Oil City specifically, customers who cannot wear a mask because of a disability, as that term is defined in the ADA, are screened out of equal access to Giant Eagle, shunned, and are not permitted inside the store.

Because Plaintiff cannot wear a mask, he cannot select his own groceries at a time and place that is convenient to him, just like every other customer in the store.  Because Plaintiff cannot wear a mask, he must have someone else shop for him inside the store and he cannot pick up his groceries on the day he chooses to shop.  Since he asserted his rights under the ADA and requested full and equal access to shop inside the Giant Eagle store with a reasonable modification to its policy, Plaintiff has been banned from the Oil City Giant Eagle premises in the future.

a.   Plaintiff is Protected by the ADA

Plaintiff's anxiety disorder, panic disorder, PTSD, and other disorders outlined in his medical records qualify as a disability as that term is defined by the ADAAA, as described above.  Plaintiff has received disability benefits due to his conditions, as evidenced by his medical records.  Plaintiff's conditions prevent him from wearing a mask.  Exhibit "A."  Plaintiff was not a direct threat to anyone.  Id. Plaintiff had no signs or symptoms of Covid 19, and his medical conditions clearly

fall within the exception to the Pennsylvania Secretary of Health's Order, and the corresponding guidelines.  Id.

> b.   Giant Eagle Must Comply with the ADA's Mandate Concerning Public Accommodations and Was Required to Modify its Mask Policy.

Without question, Giant Eagle is a public accommodation as defined by the ADA.  Giant Eagle is open to the public and it must provide full and equal access to its goods, services, privileges, advantages and accommodations within the stores that it owns and operates.  Giant Eagle must make reasonable modifications to its policies to comply with Title III and Giant Eagle cannot force disabled customers to accept alternative arrangements if they cannot wear masks and they are not determined to be a direct threat to the health or safety of others following an individualized assessment.  Giant Eagle is also prohibited from threatening, coercing, and retaliating against customers like Plaintiff who assert their rights under the ADA.

> c.   Giant Eagle Denied Plaintiff "Full and Equal Enjoyment" of its Public Accommodation Based on his Disability

Plaintiff was not only refused full and equal enjoyment of the Oil City Giant Eagle store because his disabling conditions prevent him from wearing a mask, Giant Eagle retaliated against him and threatened him with arrest for trespass in the future if Plaintiff steps foot on the premises of the Oil City Giant Eagle.  Plaintiff

will also be refused full and equal access to all Giant Eagle stores in the future
while Giant Eagle's illegal mask policy is in place.

The ADA requires that goods, services, facilities, privileges, advantages, and
accommodations be afforded to an individual with a disability in the most
integrated setting appropriate to the needs of the individual.  The United States
Supreme Court has defined the phrase "most integrated setting" to mean "a setting
that enables individuals with disabilities to interact with non-disabled persons to
the fullest extent possible."  Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 549 (J.
Hornak) (W.D. Pa. 2013), quoting Olmstead v. L.C. ex. Rel. Zimring, 527 U.S.
581, 592, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999).  "Providing segregated
accommodations and services relegates persons with disabilities to the status of
second-class citizens."  28 C.F.R. § 36 app. C.

Title III prohibits places of public accommodation from providing people
with disabilities with services, facilities, privileges, advantages, or
accommodations that are "not equal to," or are "different or separate from" those
provided to other individuals.  42 U.S.C. §12182(b)(1)(A)(ii)-(iii).  Title III
requires all places of public accommodation to have access to the physical
environment of the accommodation.

Plaintiff requested a modification to the mask policy due to his disability.
The request was reasonable and in accordance with the recommendations, orders

and guidelines of the Pennsylvania Health Secretary, the Pennsylvania Department of Health, and the CDC.  Giant Eagle made no individual direct threat analysis and merely implemented a zero-exception corporate policy.  The requested modification would have allowed Plaintiff to enjoy full and equal access the grocery store as provided to people who are not disabled and are able to comply with the request to wear a mask without potentially subjecting themselves to respiratory distress and/or other physical or mental distress.

### D.      Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Without preliminary injunctive relief, Plaintiff cannot set foot on the premises of the grocery store that is located only three-tenths of a mile from his home without trespassing.  Plaintiff has been banned from the premises.  Not only is Plaintiff prohibited from full and equal access to a public accommodation, Plaintiff has no access to the public accommodation without injunctive relief.

Plaintiff has been banned from a public grocery store because he challenged an illegal policy that violates the ADA.  This Honorable Court should use its equity powers to enjoin Giant Eagle from blatantly disregarding Title III of the ADA.  Plaintiff cannot comply with the mask policy at any Giant Eagle without putting his physical and emotional health at risk.  Injunctive relief is the only remedy available to Plaintiff under Title III of the ADA and this type of illegal corporate

conduct is exactly the type of discrimination and retaliation that Congress sought to end with the enactment of Title III of the ADA.

### E.    The Balance of Equities Tips Sharply in Plaintiff's Favor

Plaintiff did nothing wrong, while Giant Eagle's policy and its actions towards him broke the law.  Plaintiff is no more of a threat to anyone than every shopper in Giant Eagle's West Virginia, Ohio, or Indiana stores who either cannot, or simply chose not to, wear a mask.  There is no justifiable reason for Giant Eagle's policy and its refusal to modify its policy.  Giant Eagle's proposed alternative arrangements are unacceptable and unequal.

Giant Eagle implemented its zero-exception policy to achieve "consistency." Consistency is not an excuse to ignore the law.  There is nothing in the ADA or the regulations that allow public accommodations to discriminate or retaliate against people with disabilities as long as the public accommodation applies the same rule to everyone; the exact opposite is true, and Giant Eagle should have known better than to implement such a ridiculous policy.

The seats at the back of a bus are made of the same materials as those in the middle or front of the bus, but forcing people to accept an arbitrary mandate about where they can go and how they can utilize a public accommodation, because of a characteristic or disability that they did not ask for or choose, is wrong.  The whole

purpose of this Honorable Court's equitable powers is to level the playing field and enforce what is legal and what is right.

Plaintiff is certain that this Honorable Court would not allow a corporation to keep people out of its stores because of their race, religion or sex.  Plaintiff is certain that this Honorable Court would enjoin a corporation from refusing access to a public store because the customer could not shop in the store without a service dog.  This case is no different; Plaintiff has been discriminated against and retaliated against in a clear violation of the ADA and this Honorable Court should use its powers of equity to right this wrong.

**F.**      **The Public Interest Favors a Grant of Preliminary Relief to Plaintiff.**

Giant Eagle's policy treats its "guests" like untouchable "lepers."  The ADA and the regulations implementing it have allowed disabled persons to fully and equally enjoy access to public accommodations for thirty years.  The ADAAA was enacted to ensure that the definition of a person with a disability is as broad a definition as possible.  The Pennsylvania Department of Health and the Pennsylvania Health Secretary put in place an order and guidelines that recognize the need for an accommodation that waives the mask requirement for anyone who cannot wear a mask because of a medical condition.  The CDC guidelines also recognize that people who have trouble breathing when they don a mask should not wear masks.

The reason that Giant Eagle has no mask policy at all in Ohio, for example, is because Ohio Governor, Mike DeWine, felt that enacting a mandatory mask policy was an unreasonable extension of government power; "a bridge too far." Exhibit "L".  Giant Eagle has used politics to determine whether or not to insist that all of its customers wear masks in its stores, rather than an individualized direct threat analysis.  Exhibit "C" is unequivocal proof that Giant Eagle's treatment of its customers is based upon the political directives of the states in which its stores are located.

Giant Eagle's policy in Pennsylvania is illegal and unjustifiable.  The policy is no different than a policy that would prohibit all shoppers from entering its stores accompanied by a dog; any dog – no exceptions.  Perhaps it would just be too easy for shoppers to put a "service dog" vest on their golden retrievers and claim that their pets are there to assist the customers with navigation of the store or picking up items.  Such a policy would clearly violate the ADA, and Giant Eagle's mask policy also clearly violates the ADA.

The ADA recognizes the significant public interest in full and equal inclusion of disabled persons with respect to access to goods and services provided inside public accommodations like grocery stores.  The regulations clearly establish that Giant Eagles' alternative options that it has offered to its customers at some locations are not a viable alternative to allowing disabled shoppers who

27

cannot wear masks to shop inside Pennsylvania stores like everyone else.  Giant Eagle cannot compel disabled customers to choose some alternative; that is illegal. There is no justifiable reason why Plaintiff was, or should be, excluded from entering any Giant Eagle store.  Giant Eagle's permanent retaliatory ban of Plaintiff from its Oil City store is unconscionable and cannot be allowed to stand.

The public interest will best be served by this Honorable Court issuing an injunction that prohibits Giant Eagle from excluding disabled people who cannot wear masks from its stores.  The public interest will best be served by an injunction that merely requires Giant Eagle to follow the guidelines of the Pennsylvania Department of Health so that shoppers who cannot wear a mask can shop at Giant Eagle stores like everyone else.  All Plaintiff wants is to have access to a public accommodation in the same way that he has access to any other public accommodation; full, equal, safe, and in compliance with the Pennsylvania Department of Health recommendations, but more importantly, in compliance with the law.

## IV.   <u>CONCLUSION AND RELIEF REQUESTED</u>

For the reasons set forth herein, this Honorable Court should grant Plaintiff's request for a preliminary injunction that prohibits Giant Eagle from excluding customers with disabilities that prevent them from wearing masks to shop at Giant Eagle stores in the same manner as non-disabled customers.  This Honorable Court

should enter an order requiring Giant Eagle to permit customers who cannot wear masks to shop inside its stores in compliance with the guidelines published by the Pennsylvania Department of Health.  This Honorable Court should also enjoin the Oil City Giant Eagle from banning Plaintiff from its premises in retaliation for asserting his rights under the ADA.

Respectfully submitted,

THOMSON, RHODES & COWIE, P.C.

Dated July 1, 2020          */s Thomas B. Anderson*_____
                            Thomas B. Anderson, Esquire
                            PA I.D. #79990

                            THOMSON, RHODES & COWIE, P.C.
                            Firm No. 720
                            Two Chatham Center, 10th Floor
                            Pittsburgh, PA  15219
                            (412) 232-3400

                            Attorneys for the Plaintiff