**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIMBERLY PLETCHER, | ) | |
| | ) | Case No. 2:20-cv-00754-NBF |
| Plaintiff, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JUDITH MARCH, JOSIAH KOSTEK, | ) | |
| GRAYDON GRAHAM, RONNIE | ) | |
| STURCHIO, NICHOLAS CONLEY, | ) | |
| SHARON BURTON, DEBBIE | ) | |
| VIDOVICH, PAUL SHEPHERD, | ) | |
| GERALD THOMCHICK, CONNIE | ) | |
| WINNER, JOHN DURSO, TRACY | ) | |
| O'CONNOR, DOUGLAS JANASZEK, | ) | |
| OWEN BURK, BEN ZYTNICK, | ) | |
| GREGORY MANDICH, JOHN | ) | |
| BLACKSTONE, JAMES LEONARD, | ) | |
| KATHLEEN CUNNINGHAM, JAMIE | ) | |
| MARKS-BORICHEVSKY, POLLY | ) | |
| QUINTILIANI, CAROLYN L. | ) | |
| STEWART, TOMMY WYNKOOP, | ) | |
| TAMMIE AIKEN, STEVEN PARSONS, | ) | |
| JEFFREY COULSON, KATHERINE | ) | |
| DUCKSTEIN, NATHANAEL DOLLAR, | ) | |
| THOMAS BENSOR, VICKI PARKER, | ) | |
| STEPHEN MCRAE, KRISTIE HARNISH, | ) | |
| MOLLY SHIRK, MICHAEL HAMMERS, | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GIANT EAGLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>OPPOSITION TO PLAINTIFF JOSIAH KOSTEK'S
MOTION FOR PRELIMINARY INJUNCTION</u>**

## <u>TABLE OF CONTENTS</u>

I.     BACKGROUND ................................................................................................ 3

II.    LEGAL STANDARD....................................................................................... 7

III.   ARGUMENT .................................................................................................... 8

       A.     Kostek is Not Likely to Succeed on the Merits ................................... 8

              1.     Kostek can wear a face covering ............................................. 8

              2.     Giant Eagle's Policy is a legitimate safety requirement ............................ 9

              3.     COVID-19 poses a direct threat to health and safety of others ............... 11

              4.     Modifying the Policy would place an undue burden on Giant Eagle ....... 13

       B.     Kostek Will Not be Irreparably Harmed During the Pendency of the Litigation. 15

       C.     The Balance of the Equities Favors Giant Eagle ................................... 16

       D.     An Injunction is Not in the Public Interest .......................................... 16

IV.   CONCLUSION.............................................................................................. 18

The premise of this consolidated action is all wrong.  Plaintiffs, including Mr. Kostek, claim that Giant Eagle reacted to the coronavirus pandemic by singling them out for poor treatment, when, in fact, Giant Eagle took every reasonable step to protect and accommodate all of its customers and employees (Team Members) from a direct and ongoing threat.  We are in the midst of a public health crisis.  Mounting evidence indicates face coverings protect others from the transmission of COVID-19, particularly indoors.[1]  Faced with these facts, Giant Eagle dramatically enhanced its curbside service, invested millions to increase sanitation and other protective measures, and enacted a policy requiring all employees and customers in the stores to wear face coverings.[2]  For customers, like Kostek, who either cannot or do not want to wear a face covering in the store, Giant Eagle offers alternative means to shop for food and supplies, including curbside pickup, home delivery, and, in many cases, on-the-spot personal shopping by a Giant Eagle Team Member.

Kostek, rather than tolerate any purported personal inconvenience, sued over it.  In fact, Kostek now seeks the extraordinary remedy of a preliminary injunction to force Giant Eagle to allow him and others to enter its stores without a face covering—and without regard for Giant Eagle's other customers' and Team Members' ability to safely shop and work in its stores.  ECF

---

[1]  *See, e.g.*, Pa. Dept. of Health Universal Face Coverings Order FAQ, 7/3/2020, attached as Exhibit 1, pg. 7 ("The wearing of face coverings, such as a mask, ensures that we as a society can limit the spread of COVID-19 and successfully combat this pandemic; therefore, it is in **everyone's** best interest that all Pennsylvanians comply with this Order."); Apoorva Mandavilli, *239 Experts With One Big Claim: The Coronavirus Is Airborne*, THE NEW YORK TIMES, July 4, 2020, https://www.nytimes.com/2020/07/04/health/239-experts-with-one-big-claim-the-coronavirus-is-airborne.html

[2]  Giant Eagle's Policy allows not only cloth, surgical, and N-95 masks, but also t-shirts or bandanas wrapped around the face, face shields, scarves, neck gaiters, etc.  The Pennsylvania Department of Health specifically recognizes face shields as an alternative for those individuals who cannot wear a mask due to a disability.  *See* Ex. 1, pg. 3 ("If an individual cannot wear a face covering due to a medical or mental health condition or disability, the individual should consider wearing a face shield.").

No. 19 (Am. Mot. for Preliminary Injunction) at 28-29.  For Kostek in particular, this takes some nerve.  A recent Facebook post shows that his grievance arises not under the Americans with Disabilities Act as he claims, but from a radical and incorrect theory, circulated on the Internet, that face covering requirements violate his Constitutional rights.[3]  According to Kostek, "I don't mind wearing a mask if someone asks me polite.  I'm in excellent health … [but] I have a right to refuse wearing a mask."  *See* Exhibit 2, "PA Small Business Against Gov Wolf" Public Group Facebook Post by Josiah Kostek, 5/16/2020 at pg. 13.  Neither Kostek nor the other Plaintiffs have that right in a Giant Eagle supermarket during the COVID-19 pandemic.

Kostek's request for a preliminary injunction should be denied.  *First,* Kostek is unlikely to succeed on his claim under the ADA.  Not only has Kostek publicly admitted that no disability prevents him from wearing a face covering, the ADA specifically permits legitimate safety requirements and rejects proposed modifications that pose a direct threat to the health or safety of others or create an undue burden.  *Second,* Kostek cannot show irreparable harm—he can use Giant Eagle's curbside pickup or home delivery without wearing a face covering, or shop elsewhere during the pendency of the litigation.  *Third,* the immediate health risks to Giant Eagle's other customers, Team Members and the general public far outweigh any alleged inconvenience to Kostek.

Kostek's Motion comes as Allegheny County sees a spike in COVID-19 infections and as governments and businesses nationwide move overwhelmingly toward mandating face coverings.  Indulging his claims, which have no legitimate basis, would risk the increased spread

---

[3]   Anna Medaris Miller, *'Anti-maskers' say medical conditions prevent them from wearing masks, but doctors say that's not a legitimate excuse,* BUSINESS INSIDER, July 2, 2020, https://www.businessinsider.com/anti-maskers-say-they-cant-wear-masks-because-medical-conditions-2020-5

of COVID-19, put lives at risk, and interfere with Giant Eagle's ability to provide essential services to its tens of thousands of daily customers in Pennsylvania.

## I.    BACKGROUND

"The world is currently facing a major global pandemic – one of the most significant challenges our society has faced in a century." *Republican Party v. Pritzker*, No. 20 C 3489, 2020 U.S. Dist. LEXIS 116383, *2 (N.D. Ill. July 2, 2020); *see also Friends of Devito v. Wolf*, 227 A.3d 872, 890 (Pa. 2020) (finding that "any location (including Petitioners' businesses) where two or more people can congregate is within the disaster area" in Pennsylvania due to "the nature of [COVID-19] and the manner in which it is transmitted"). "There is no cure, vaccine, or effective treatment for COVID-19." *Id*.   By March, if not before, COVID-19 spread to Pennsylvania.   To date, we have 93,900 confirmed cases and more than 6,900 deaths from COVID-19 in Pennsylvania—more deaths than surrounding states Indiana, Ohio, and West Virginia combined.[4]  On March 19, 2020, Pennsylvania Governor Tom Wolf ordered a statewide lockdown of all "non-life sustaining businesses," with enforcement beginning March 21, 2020.

In a matter of weeks, Giant Eagle took substantial steps to increase the capacity of its stores to operate safely in the midst of the pandemic.  For example:

- **Giant Eagle tripled its curbside service capabilities.**  Giant Eagle repurposed three stores for curbside service only, and dramatically enhanced the service at other locations.  These efforts enable customers to access Giant Eagle's goods and services without person-to-person contact.

- **Giant Eagle hired thousands of additional Team Members.**  Hundreds of them are devoted to curbside service.  In addition, Giant Eagle recommitted corporate Team Members to support both curbside service and in-store customer care.

- **Giant Eagle increased sanitation and protective measures.**  Giant Eagle invested approximately $3 million in protective health and safety equipment.  Stores installed Plexiglas barriers to protect cashiers and customers.  Team Members continually sanitize shopping carts, and, where possible, clean stores

---

[4]   https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

hourly.  On top of these steps, Giant Eagle expanded corporate store hours to exclusively and more safely accommodate older and immunocompromised customers.

Declaration of William Artman, attached as Exhibit 3.

On April 15, 2020, Pennsylvania's Secretary of the Department of Health, Dr. Rachel Levine, issued an order setting forth minimum protections for critical workers like Giant Eagle's Team Members (the "April 15 Order" or "Order").  The Order recognizes that COVID-19 "is a contagious disease that is rapidly spreading from person to person in the Commonwealth of Pennsylvania … [and] can be transmitted from people who are infected with the virus even if they are asymptomatic or their symptoms are mild, such as a cough."  The Order then states "that certain life-sustaining businesses in the Commonwealth must remain open … [and] [s]pecial consideration is required to protect not only customers, but the workers needed to run and operate these establishments."

To enhance protection, the Order sets forth a list of general requirements that essential businesses, including grocery stores, must meet in order to conduct in-person business. Governor Wolf warned that "[f]ailure to comply with these requirements will result in enforcement action that could include citations, fines, or license suspensions."  Critical here, all customers must wear masks while on the stores' premises, and businesses must "deny entry to individuals not wearing masks."  Though the Order excuses businesses from enforcing the face covering requirement for customers who cannot wear one due to a medical condition, it provides no means for businesses to determine whether or not customers have such a medical condition.[5]

---

[5]  Kostek asserts that the April 15 Order forbids Giant Eagle and other businesses from requiring face coverings for all customers.  (Mot. for PI at 9).  In fact, the Order sets forth *minimum* requirements for essential business to remain open during the pandemic; it does not limit them from imposing greater safety requirements.  The Pennsylvania Department of Health's July 3 face covering requirement FAQ makes this clear—"The Order does not *require* a customer to be turned away if the customer fits within an exception to the Order."

Intent on doing everything it reasonably can to protect its Team Members and customers, Giant Eagle requires everyone in its Pennsylvania stores to wear some type of face covering at all times.  Giant Eagle cannot ask its Team Members—who already stand on the front lines of the pandemic—or its customers to accept the increased risk of infection that comes with allowing exceptions to that rule.  Nor would it make sense for Giant Eagle to ask Team Members to enforce a policy that requires exceptions, with no ability to confirm if an exception applies.  Instead, Giant Eagle provides face coverings to any customer who needs one and offers home delivery or curbside service to any customer who either cannot or does not want to wear one.  For customers who walk into a store but decline to wear a face covering, Giant Eagle offers to shop for them while they wait outside.[6]

An overwhelming majority of customers and Team Members applaud Giant Eagle's efforts to keep its stores as safe as possible during the COVID-19 pandemic.  But a small minority object, and some have acted violently toward or sought to intimidate Giant Eagle's Team Members who are merely doing their jobs.  For example, a customer at the New Kensington store punched a Team Member who asked him to wear a face covering.  A customer at the Franklin store flashed a gun at a Team Member.  And one of the Plaintiffs in this action *returned* to the Leechburg store after filing suit and shouted profanities at the Team Members

---

Ex. 1 (emphasis added).  Nor would the Secretary of Health have the ability to prohibit businesses from requiring face coverings.  As the Order itself states, Dr. Levine issued the Order pursuant to her "authority to take any disease control measure appropriate to protect the public from the spread of infectious disease." April 15 Order at pg. 1 (unnumbered) (ECF No. 19-6).  Prohibiting businesses from requiring all of their customers to wear face coverings would hardly protect the public from the spread of COVID-19.  It would increase the risk of spread.

[6]  In his Motion, Kostek incorrectly asserts that Giant Eagle allows Team Members to work inside its stores without a face covering if they provide a medical note.  (Am. Mot. for Preliminary Injunction at 14).  In fact, if a Team Member provides a medical note indicating that he or she cannot wear a face covering for a medical reason, Giant Eagle places that Team Member on a leave of absence.  Ex. 3. at ¶ 9.

there. Ex. 3 at ¶ 12. Giant Eagle is apparently far from alone among retailers facing this sort of misdirected outrage.[7]

The aggression by certain customers causes Team Members enormous stress. Ex. 3 at ¶ 13. For that reason, Giant Eagle carefully weighed the option of removing the Team Members' burden of enforcing the customer face covering policy. The local labor union representing Giant Eagle's front line Team Members opposed any change, demanded that Giant Eagle continue to require face coverings in stores without exception, and promised to remind its members that the "Labor Management Relations Acts protects the rights of workers to refrain from rendering labor or services because of abnormally danger conditions at work." Ex. 3. at ¶ 13. Ultimately, Giant Eagle determined that the safest course—and the only course that ensures its ability to continue to provide essential services to the community—is to maintain the face covering requirement in its stores (the "Policy") (ECF No. 19-5); *see also* Ex. 3-A, Giant Eagle's Maryland and Pennsylvania Mask Guidelines Update, May 4, 2020.

***Josiah Kostek***

On May 16, 2020, Kostek attempted to enter Giant Eagle's Oil City store without a face covering. Declaration of Diana Mancini Liebmann, attached as Exhibit 4, at ¶ 4. The store greeter reminded Kostek of the Policy. *Id*. Without allowing the greeter to offer any assistance, Kostek began yelling "My body, my choice" and refused to stop walking into the store. *Id.* ¶¶ 4-6. The greeter called acting Store Leaders Diana Mancini Liebmann and Greg Felmlee to address the situation. *Id.* at ¶ 4. Liebmann and Felmlee arrived to find Kostek walking down the aisles, belligerent and yelling. *Id.* at ¶¶ 5-7. Liebmann told Kostek he would need to leave if he

---

[7] *See, e.g.*, Kate Taylor, *Anti-mask shoppers at Costco and Target throw tantrums and tear down mask displays, revealing a growing crisis for retail workers,* BUSINESS INSIDER, July 6, 2020, https://www.businessinsider.com/anti-mask-costco-and-target-shoppers-throw-tantrums-viral-videos-2020-7

would not wear a mask or she would call the police.  *Id.* at ¶ 8.  Kostek told Liebmann to call the police, so she did.  *Id.*  Meanwhile, Kostek went to the service desk and asked to purchase tobacco.  *Id.* at ¶ 9.  Felmlee instructed the Team Member working at the tobacco service desk not to wait on Kostek.  *Id.*  Kostek moved close to Felmlee and berated him.  Eventually, the police arrived and arrested Kostek.  *Id.* at ¶ 10.  Kostek yelled at another customer in the parking lot even as police led him away in handcuffs.  *Id.* at ¶ 11.

After Kostek's arrest, Liebmann spoke to the police.  *Id.* at ¶ 12.  The police advised her that Kostek has a history of causing scenes in retail stores and then threatening litigation.  *Id.*  The police also directed Liebmann to send a "no-trespass" letter to Kostek.  *Id.* at ¶ 13.  Liebmann prepared the letter advising Kostek not to return to the Oil City Giant Eagle, and another Team Member, James Dailey, signed it.  *Id.*  On May 30, 2020, Liebmann sent the letter to Kostek.  *Id.*  That same day, Kostek returned to the Oil City Giant Eagle and again entered the store without a mask.  He was turned away.[8]  On June 3, 2020, Kostek filed his original complaint in this action.

## II.   **LEGAL STANDARD**

"The grant of a preliminary injunction by this Court is an extraordinary remedy."  *Tegg Corp. v. Beckstrom Elec. Co.*, Civil Action No. 08-435, 2008 U.S. Dist. LEXIS 52184, at *28-36 (W.D. Pa. July 1, 2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014).  "The failure to establish any element … renders a preliminary injunction inappropriate."  *Id.*

---

[8]   Kostek acknowledges this attempt to return to the Oil City Giant Eagle in his Motion. (Am. Mot. for Preliminary Injunction at 9.)

(quoting *NutraSweet Co. v. Vit-Mar Enters., Inc*., 176 F.3d 151, 153 (3d Cir. 1999)).  Where the moving parties are seeking a mandatory injunction requiring performance of certain acts, "the burden on the moving party is particularly heavy."  *Trinity Indus. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013) (quoting *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980)).

## III.    <u>ARGUMENT</u>

### A.    **Kostek is Not Likely to Succeed on the Merits**

To succeed on a claim under Title III of the American with Disabilities Act, a plaintiff must prove "(1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator."  *Anderson v. Kohl's Corp*., Civil Action No. 2:12-cv-00822, 2013 U.S. Dist. LEXIS, *22 (W.D. Pa. May 3, 2013) (internal quotation marks and citation omitted).  Kostek cannot show discrimination on the basis of a disability.  In fact, he admits that he can wear a face covering.  Even if Kostek could show otherwise, the ADA does not require a public accommodation to (i) modify a legitimate safety requirement; (ii) allow a direct threat to the health or safety of others; or (iii) make modifications that would create an undue burden.   28 C.F.R. § 36.301(b) (legitimate safety requirement); 42 U.S.C. § 12182(b)(3) (direct threat); 42 U.S.C. § 12182(b)(2)(A)(iii) (undue burden).  Kostek's proposed modification—enjoining Giant Eagle from enforcing its Policy—would improperly force Giant Eagle to do all three of these things.

#### 1.    *Kostek can wear a face covering*

While Kostek submits five-year old medical records indicating that he suffers from certain conditions, he relies entirely on his own self-serving declaration that those conditions prevent him from wearing a mask.  (Mot. for Preliminary Injunction at 9).  In the declaration, he asserts that "[he] cannot wear masks or cloth face coverings without experiencing severe anxiety,

difficulty breathing."   But in a public statement on Facebook, Kostek said something very different: "I don't mind wearing a mask, if someone asks me polite. … I'm in excellent health." *See* Ex. 2, pg. 13.   Kostek has not shown and cannot show that Giant Eagle's face covering requirement affects him at all, let alone discriminates against him based on a disability.

Even if Kostek were not in "excellent health" as he admits on Facebook, the Order does not require Giant Eagle to let him into its stores without a face covering.   On July 3, the Department of Health made clear that Giant Eagle is doing the right thing by offering "home delivery or contactless curbside pick-up" as an acceptable alternative "means for the customer to purchase goods if the customer is unable to wear a face covering, such as a mask."   Ex. 1, pg. 8. The ADA also supports this concept.

### 2.    Giant Eagle's Policy is a legitimate safety requirement

The eligibility regulation for Title III public accommodations states that a "public accommodation may impose legitimate safety requirements that are necessary for safe operation."   28 C.F.R. § 36.301(b).   Those safety requirements "must be based on actual risks and not mere speculation, stereotypes, or generalizations about individuals with disabilities." *Id*. Here, the actual risk dominates the national conversation.   COVID-19 has already infected more than 93,000 people in Pennsylvania and killed nearly 7,000 of them.[9]   It "spreads mainly from person to person through respiratory droplets produced when an infected person coughs, sneezes, or talks."[10]   "Medical experts agree that to stop the spread of COVID-19, people should practice social distancing and wear face coverings when near other people outside their homes." *Pritzker*, 2020 U.S. Dist. LEXIS 116383, at *3.   Face coverings are universally important because, as the CDC advises, "COVID-19 can be spread by people who do not have symptoms and do not know

---

[9]   https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx

[10]   https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html

that they are infected."[11]   The risk of spread increases where groups of people share space indoors, like in a supermarket.  *See* Mandavilli, *supra* fn. 1.  Governor Wolf addressed this risk—recently extending the face covering mandate to all public places—and Giant Eagle did, too.[12]

In this context, Kostek has no basis to claim that Giant Eagle's Policy relies on speculation, stereotypes, or generalizations about individuals with disabilities.  The opposite is true.  Giant Eagle's Policy applies to ***all*** customers, as any customer not wearing a face covering poses a heightened risk of COVID-19 transmission.  The CDC estimates that approximately 35% of people infected with COVID-19 are asymptomatic, and 40% of virus transmission occurs ***before*** infected individuals display symptoms.[13]  Even a single visit by an asymptomatic or pre-symptomatic customer without a face covering could expose hundreds of customers and Team Members to the virus, and those individuals could in turn expose many others when they return home to their families.  The law does not require Giant Eagle to take that risk.

Indeed, the United States Department of Justice identified similarly neutral safety requirements as justifiable.  *See* 56 Fed. Reg. 35544-01 (noting the legitimacy of "height requirements for certain amusement park rides or a requirement that all participants in a recreational rafting expedition be able to meet a necessary level of swimming proficiency").  Like those requirements, Giant Eagle's face covering requirement is a "neutral rule[] …

---

[11]   https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html

[12]   Requiring face coverings may be the single most important prophylactic measure to prevent the spread of COVID-19.  In one study on the infections in Italy and New York City, Texas A&M University researchers concluded that the mandate to wear face coverings "significantly reduced the number of infections, that is, by over 78,000 in Italy from April 6 to May 9 and over 66,000 in New York City from April 17 to May 9." Wei Lyu and George L. Wehby, *Community Use of Face Masks and COVID-19:  Evidence From a Natural Experiment of State Mandates in the US*, HEALTH AFFAIRS 39, No. 8 (2020): 1-7.

[13]   https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html

necessary for the safe operation of the public accommodation," even if it tends to screen out individuals with a disability (as Kostek dubiously claims). *Id.* Thus, the ADA imposes no requirement that Giant Eagle exempt certain customers from its Policy. *See Holmes v. Gen. Dynamics Mission Sys.*, 382 F. Supp. 3d 529, 532 (W.D. Pa. 2019) (holding that the ADA does not "exempt an employee from a requirement to wear safety equipment that is intended to protect her from serious injury, and to protect the company from financial harm, because she has a physical condition that prevents her from wearing the safety equipment"); *Mattair v. Pilgrim,* Case No. 3:17-cv-211, 2019 U.S. Dist. LEXIS 51147, *7 (M.D. Fla. March 27, 2019) ("Even drawing all inferences in [the plaintiff's] favor, the record readily supports that wearing a bump cap is an essential safety requirement for being on the production floor at [the defendant's business].").

### 3. COVID-19 poses a direct threat to health and safety of others

The ADA also permits public accommodations to refrain from making modifications that would pose a "direct threat." 42 U.S.C. § 12182(b)(3). Even before Congress codified this exception in Title III of the ADA, the United States Supreme Court, in *School Board of Nassau County v. Arline*, held that the disability laws do not require modifications that would allow a direct threat to the health and safety of others, ***specifically with respect to infectious diseases***.[14] 480 U.S. 273 (1987).

In *Arline*, the Supreme Court addressed a "direct threat" under the Rehabilitation Act,[15] when a teacher with tuberculosis challenged her dismissal on the basis of that disease. The Court

---

[14] After *Arline*, Congress amended both the ADA and Rehabilitation Act to include the "direct threat" exclusion. 42 U.S.C. § 12182(b)(3); 29 U.S.C. § 705(20)(D).

[15] The Third Circuit Court of Appeals has noted, "as the ADA simply expands the Rehabilitation Act's prohibitions against discrimination into the private sector, Congress has directed that the two acts' judicial and agency standards be harmonized." *New Directions Treatment Servs. v.*

found that the teacher was disabled, but held that "[a] person who poses a significant risk of communicating an infectious disease to others in the workplace will not be otherwise qualified for his or her job if reasonable accommodation will not eliminate that risk." *Id*. at 287 n.16.  The Court next identified four factors courts should consider in determining whether a direct threat to health and safety exists:  (1) the nature of the risk; (2) the duration of the risk; (3) the severity of the risk; and (4) the probabilities the disease will be transmitted and will cause varying degrees of harm.  *Id*. at 288; *accord Haas v. Wyo. Valley Health Care Sys*., 553 F. Supp. 2d 390, 399 (M.D. Pa. 2008) (applying the *Arline* factors).

Allowing Kostek, and other customers, to shop in Giant Eagle's stores without a face covering qualifies under *Arline*.  First, it would risk the health—and the lives—of Giant Eagle's customers and Team Members, to say nothing of the potential health, financial, and social impact caused by any resulting increased spread of the virus.  Second, the risk remains until we find an effective treatment or vaccine for COVID-19.[16]  Third, the risk is severe—thousands in Pennsylvania have already died from COVID-19.  Fourth, though we do not know precisely the probability that a customer without a face covering would transmit COVID-19 in a Giant Eagle store, that uncertainty is part of the risk.  COVID-19 is particularly dangerous *because* it spreads so easily and even before its host shows any signs of infection.[17]  Recognizing this risk, on March 21, 2020, the Equal Employment Opportunity Commission declared that "the COVID-19 pandemic meets the direct threat standard [under the ADA]."[18]  *See also Donahue v. CONRAIL*,

---

*City of Reading*, 490 F.3d 293, 302 (3d Cir. 2007) (internal quotation marks and modification marks omitted).

[16] *See Pritzker*, 2020 U.S. Dist. LEXIS 116383, at *2 (recognizing there is no effective treatment or vaccine).

[17] https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html

224 F.3d 226, 231 (3d Cir. 2000) ("If the threatened harm is grievous, even a small risk may be 'significant.'").

            4.      *Modifying the Policy would place an undue burden on Giant Eagle*

The ADA also exempts Giant Eagle from abandoning its Policy because doing so would result in an "undue burden."  42 U.S.C. § 12182(b)(2)(A)(iii).  Not only does the Policy mitigate the risk of virus transmission, it also reduces Giant Eagle's burden of cleaning and sanitizing its stores.[19]  Modifying the Policy would potentially subject Giant Eagle to an even more substantial burden—it could force stores to shut down.  Giant Eagle's ability to operate would certainly be threatened by an outbreak of COVID-19 among Team Members and, perhaps more immediately, the possibility that Team Members will stop reporting to work.

At least in Pennsylvania, that possibility is real.  When Giant Eagle briefly considered a modification to prevent Team Members from confronting customers who refused to wear a face covering, the local union demanded that Giant Eagle maintain the Policy.  The Union noted that it could file a Charge of Unfair Practices to address any change to the Policy, that it would remind its members that the "Labor Management Relations Acts protects the rights of workers to refrain from rendering labor or services because of abnormally dangerous conditions at work," and that it would "hold Giant Eagle accountable for the foreseeable consequences of [modifying the Policy]."  *See* Ex. 3-B (Email from Wendell Young IV to Dan Shapira, 5/27/2020).  Forcing

---

[18]  https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act

[19]  In one Pennsylvania grocery store, a customer without a face covering coughed over groceries, requiring the store to destroy $35,000 worth of food.  Alexis Johnson, *Police pursuing charges against woman who intentionally coughed on $35,000 worth of food at grocery store*, PITTSBURGH POST-GAZETTE, Mar. 26, 2020, https://www.post-gazette.com/news/crime-courts/2020/03/26/Pa-grocery-store-dumps-35-000-worth-of-food-after-woman-purposely-coughs-on-produce-meat-and-more/stories/202003260112

Giant Eagle to put its Team Members at greater risk of COVID-19 infection *could* mean that Giant Eagle has no Team Members to operate certain stores.

Even if Giant Eagle could still operate, changing or relaxing the Policy would subject it to liability.  Other businesses already face lawsuits alleging a failure to impose stringent enough safety requirements in the face of COVID-19.  *See, e.g.*, 2:20-CV-01221, Dkt. 1, *Local Joint Executive Board of Las Vegas v. Harrah's Las Vegas LLC, et al.* Complaint (D. Nev. June 29, 2020) (lawsuit against several casinos for policies that do not mandate that guests wear masks). Nothing in the ADA imposes this Hobson's choice between this litigation and potential lawsuits by Giant Eagle's other customers and Team Members.  *See Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998) (holding employer could not be forced to choose between "potential ADA liability for refusing to hire those who cannot lift, or to subject itself to potential penalties from the state for failing to adhere to state law, to say nothing of the possible tort liability [the defendant] might face should a child suffer an injury as a result of an attendant's inability to lift."); *Murphy v. United Parcel Serv., Inc.*, 946 F. Supp. 872, 882-83 (D. Kan. 1996), *aff'd*, 141 F.3d 1185 (10th Cir. 1998) ("[T]he ADA does not require an employer to accommodate a person's disability by ignoring other duties imposed by law.").

Kostek's emphasis on Giant Eagle's policies in West Virginia, Ohio, and Indiana is a red herring.  Deaths from COVID-19 in Pennsylvania exceed the COVID-related deaths in those three states combined, and the virus-related government orders in those states differ from the April 15 Order in Pennsylvania.  Giant Eagle assessed the risks and circumstances related to its stores in each state and shaped its safety policies and procedures, which all recognize the importance of wearing a face covering in the stores, accordingly.  Kostek only takes issue with a state-by-state approach to the extent it cuts against his desire to shop without a face covering—

he argues that Giant Eagle must apply the same, more lenient policy in all of its stores regardless of geography.  Then, in the next breath, he demands an "individual direct threat analysis" in lieu of the existing Policy.[20]  (Am. Mot. for Preliminary Injunction at 24).

Putting aside his contradictory arguments, neither Kostek nor the other Plaintiffs can dictate a change to the Policy.  There should be no real question that, in midst of a highly contagious pandemic, Giant Eagle can require its customers to wear face coverings while shopping in its stores.  The ADA does not demand otherwise.  *See, e.g.*, *Haas*, 553 F. Supp. 2d at 402 ("[T]here are those rare occasion where legal principles – here patient safety and reasonable accommodation – are clear as matters lacking in the ingredient of differences among reasonable people and are so clear that the Court must intervene and say so.").

### B. Kostek Will Not be Irreparably Harmed During the Pendency of the Litigation

Nothing prohibits Kostek, or any other customers who do not wear face coverings, from obtaining goods and services from Giant Eagle or, alternatively, a different retailer.[21]  Kostek's purported harm is merely the inability to walk into Giant Eagle's stores without a face covering. Rather than make a federal case of it, he could opt for curbside service or home-delivery.  He also could allow a Giant Eagle Team Member to shop for him.  And, of course, Giant Eagle does not force anyone to shop at its stores—customers are free to shop at any store of their choosing. Any inconvenience to Kostek of having to forfeit his preferred method of shopping at Giant

---

[20]  In fact, Giant Eagle did do an "individual direct threat analysis," which explains why its COVID-19-related policies may differ from state to state.

[21]  Kostek has options.  His residence in Oil City is approximately 12 miles from the Giant Eagle in Tionesta, which offers curbside pickup, and less than two miles from at least one other grocery store. *See* https://curbsideexpress.gianteagle.com/store/89EB1312#/locator?queries=_%3D1594391461972%26skip%3D0%26coordinates%3D41.4350579%2C-79.67266320000002%26radius%3D30%26unitOfMeasure%3Dmi%26take%3D999

Eagle simply does not constitute irreparable harm.  *See Moteles v. Univ. of Penn.*, 730 F.2d 913, 919 (3d Cir. 1984) ("[I]t is obvious that the involuntary transfer to another shift amounts to nothing more than inconvenience—not enough to warrant the issuance of a preliminary injunction.").

### C.       The Balance of the Equities Favors Giant Eagle

This, also, is not close.  *See Pritzker*, 2020 U.S. Dist. LEXIS 116383, at *26-*27 ("The scales weigh significantly against Plaintiffs.  The number of COVID-19 infections continues to rise across the United States, which has led some states to recently impose greater restriction of gatherings and activities.").  On the one hand, we have some purported inconvenience to Kostek, and, on the other hand, we have the increased risk of sickness, even death, for thousands of Pennsylvanians.  *See id.* ("Granting Plaintiffs the relief they seek would pose serious risks to public health.").  Denying Kostek's preliminary injunction would mean only that Kostek will either have to wear a face covering to shop in a Giant Eagle store (which he admits he can do) or face the "inconvenience" of obtaining his groceries through delivery, curbside pickup, or from some other store.  But granting Kostek's preliminary injunction would mean subjecting Giant Eagle's Team Members and customers to increased risk of COVID-19 infection and jeopardizing Giant Eagle's ability to provide essential services during this challenging time.

### D.       An Injunction is Not in the Public Interest

Plaintiffs' claims will be adjudicated in due course.  The public interest will not be served by immediately enjoining Giant Eagle from requiring face coverings for its customers, some of whom, like Kostek, appear primarily motivated by ideology.  Allowing customers—including but in no apparent way limited to those with actual relevant disabilities—to shop without a face covering risks the increase spread of the virus.  That risk is particularly unnecessary given the accommodations Giant Eagle already makes for customers who cannot or do not want to enter its

stores with a face covering.  We all want to go back to normal, but "the current state of our nation demands that we sacrifice the benefits of in-person interactions for the greater good." *Pritzker*, 2020 U.S. Dist. LEXIS 116383, at *27.

The greater good is surely not front of mind for any plaintiff who pushes an "anti-mask" agenda under the guise of having a disability.  In fact, anti-mask protestors have already widely disseminated information about how to misuse the ADA to attempt to enter stores without a face covering.[22]  The United States Department of Justice even issued a fraud alert disclaiming "postings or flyers on the internet regarding the [ADA] and the use of face masks due to the COVID-19 pandemic, many of which include the Department of Justice's seal."[23]

Giant Eagle is not the only business that would have to contend with the fallout of a preliminary injunction in this case.  Newly emboldened anti-mask activists may walk into any store or building without wearing a face covering, from small coffee shops to large offices to nursing homes.  Retailers and other businesses would likely face an even greater challenge to keep themselves and other customers safe, with no ability to turn away individuals who refuse to wear a face covering.  The mask-related misbehavior on display around the country would only be encouraged.[24]  As businesses decide how to operate safely based on rapidly changing guidance and state-specific regulations, and as the community contends with hardships brought on by the pandemic, no preliminary injunction should operate to make the public less safe.

---

[22] *See* Bill Bostock, *Anti-mask protesters are trying to commandeer US disability laws to get into stores without face coverings*, BUSINESS INSIDER, May 9, 2020, https://www.insider.com/anti-mask-protesters-cite-ada-disability-law-dodge-mask-requirement-2020-5; *accord* Kelly Weill, *The Hot New Far-Right Trend: Claiming a Disability to Avoid Wearing a Mask*, THE DAILY BEAST, May 20, 2020, https://www.thedailybeast.com/the-hot-new-far-right-coronavirus-trend-is-claiming-a-disability-to-avoid-wearing-a-mask?ref=scroll

[23] https://www.ada.gov/covid-19_flyer_alert.html

[24] *See* Taylor, *supra* fn. 7.

IV.    <u>**CONCLUSION**</u>

Kostek seeks a sweeping preliminary injunction to advance his apparent ideological view that no one should be required to wear a face covering.  The fact that Kostek, who has publicly stated that he can wear a mask but chooses not to do so, is the face of this lawsuit underscores its deficiencies.  His misuse of the ADA undermines people with actual disabilities—the people who the ADA was designed to protect.  Even Plaintiffs who may have a disability miss the mark in attacking Giant Eagle's Policy, which does not discriminate and reflects a legitimate safety requirement.  The preliminary injunction should be denied.


Dated: July 15, 2020                          Respectfully submitted,

                                              */s/ Jonathan D. Marcus*_____
                                              Jonathan D. Marcus (PA ID #312829)
                                              jmarcus@marcus-shapira.com
                                              Jeremy D. Engle (PA ID #324008)
                                              engle@marcus-shapira.com

                                              MARCUS & SHAPIRA LLP
                                              One Oxford Centre, 35th Floor
                                              301 Grant Street
                                              Pittsburgh, PA 15219
                                              Telephone: (412) 471-3490
                                              Facsimile: (412) 391-8758

                                              *Counsel for Defendant Giant Eagle, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed and served via operation of the Court's CM/ECF system on July 15, 2020, which will automatically send e-mail notification of such filing to all attorneys of record.

<div align="right">

*/s/ Jonathan D. Marcus*
Jonathan D. Marcus

</div>