EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLY PLETCHER, )
)   Case No. 2:20-cv-00754-NBF
    Plaintiff, )
)
And )
)
JUDITH MARCH, JOSIAH KOSTEK, )
GRAYDON GRAHAM, RONNIE )
STURCHIO, NICHOLAS CONLEY, )
SHARON BURTON, DEBBIE )
VIDOVICH, PAUL SHEPHERD, )
GERALD THOMCHICK, CONNIE )
WINNER, JOHN DURSO, TRACY )
O'CONNOR, DOUGLAS JANASZEK, )
OWEN BURK, BEN ZYTNICK, )
GREGORY MANDICH, JOHN )
BLACKSTONE, JAMES LEONARD, )
KATHLEEN CUNNINGHAM, JAMIE )
MARKS-BORICHEVSKY, POLLY )
QUINTILIANI, CAROLYN L. )
STEWART, TOMMY WYNKOOP, )
TAMMIE AIKEN, STEVEN PARSONS, )
JEFFREY COULSON, KATHERINE )
DUCKSTEIN, NATHANAEL DOLLAR, )
THOMAS BENSOR, VICKI PARKER, )
STEPHEN MCRAE, KRISTIE )
HARNISH, MOLLY SHIRK, MICHAEL )
HAMMERS, )
)
    Consolidated Plaintiffs, )
)
v. )
)
GIANT EAGLE, INC. and C&J )
GROCERY CO., LLC, )
)
    Defendants. )

## DECLARATION OF WILLIAM ARTMAN

I, William Artman, submit this declaration in connect with the above-captioned case.

1

1.      My name is William Artman.  I am the Senior Vice President, Retail Operations at Giant Eagle, Inc. ("Giant Eagle").

2.      In my role, I am familiar with and personally involved in the overall operations of both corporate and independently-owned Giant Eagle retail stores, including those named in the above-captioned litigation.  In addition, I am familiar with and have been personally involved with the extensive efforts that Giant Eagle has undertaken to ensure the continuous and safe operation of all supermarkets—both independent and corporate-owned—during the COVID-19 pandemic.

3.      In March 2020, COVID-19 became a pandemic, and Giant Eagle became aware of reports that the virus had already spread to Pennsylvania.  Corporate executives, including me, assessed the circumstances and immediately developed plans for Giant Eagle to operate its stores, which provide an essential service, as safely as possible under the circumstances.

4.      Giant Eagle quickly implemented its plans, sparing no expense.  In a matter of weeks, Giant Eagle tripled its curbside service capabilities.  Giant Eagle repurposed three stores for curbside service only, and adjusted service at three other locations to enhance its capabilities.  We expanded the available days and hours for taking curbside orders over the phone.  Giant Eagle hired thousands of additional Team Members, with hundreds of them devoted to curbside service.  In addition, we recommitted corporate Team Members to support curbside service and in-store customer care.  With these efforts, Giant Eagle dramatically increased its ability to provide its goods and services to its customers without person-to-person contact.

5.      Giant Eagle also greatly increased sanitation and protective measures.  The Company invested approximately $3 million in protective health and safety equipment.  Stores installed Plexiglas barriers to protect cashiers and customers.  Team Members continually sanitize shopping carts, and, where possible, clean stores hourly.  We also expanded corporate store hours to provide a window to exclusively and more safely accommodate older and immunocompromised customers.

6.      Giant Eagle has always made the health and safety of its customers and Team Members its priority.  Health and safety remain the priority now.  The Company provides independent store owners and corporate Store Leaders with enough masks for both customers and Team Members who do not have a face covering; ensures priority sanitizer delivery for our stores; provides or reimburses expenses for cashier protection kits (such as plastic dividers and sneeze guards); creates, distributes, and pays for new signage to inform customers and Team Members of updated safety measures; and hosts regular calls and provides regular email updates responding to questions regarding safety.

7.      Since the start of the pandemic, guidance from federal, state, and local governments and experts changes on a rapid basis.  In the face of changing guidance, state and municipality-specific orders, and new information about how COVID-19 spreads, Giant Eagle continually monitors the guidance and updates and revises its procedures based on its determination about how to most safely operate.  Giant Eagle regularly provides updates to its Store Leaders and Team Members about its COVID-19 related policies and enforcement of those policies.

8.      On April 15, 2020, Pennsylvania's Secretary of the Department of Health, Dr. Rachel Levine, issued an order setting forth minimum protections for critical workers who are employed at businesses that are authorized to maintain in-person operations during the COVID-19 emergency.  The April 15 Order sets forth a list of general requirements that essential businesses, including grocery stores, must meet in order to conduct in-person business.  Governor Wolf warned that "[f]ailure to comply with these requirements will result in enforcement action that could include citations, fines, or license suspensions."  The Order requires that all customers must wear masks while on the stores' premises, and that businesses must "deny entry to individuals not wearing masks."  The Order excuses businesses from enforcing the face covering requirement for customers who cannot wear a face covering due to a medical condition, but provides no means for businesses to determine whether or not customers have such a medical condition.

9.      Giant Eagle determined that allowing any Pennsylvania customers to shop without wearing a face covering would potentially violate the Order and directly threaten the health and safety of other customers and Team Members.  Giant Eagle instituted a policy in Pennsylvania requiring the use of face coverings in its stores and offering anyone who declines to wear a face covering access to its goods and services through curbside, home delivery or in-person shopping assistance.  For Team Members who cannot wear a face covering due to a medical condition, Giant Eagle places those Team Members on a leave of absence.  Giant Eagle made the same decision and instituted the same face covering requirement for its Maryland stores.  Based on different government requirements and lower incidences of COVID-19 infections and related deaths in other states, Giant Eagle decided to, for the time being, strongly recommend but not require customers to wear face coverings in its West Virginia, Ohio, and Indiana stores.

10.     To help Team Members communicate and enforce the face covering requirement, Giant Eagle provided talking points to inform discussions with customers.  A copy of the talking points is attached as Exhibit A.  Those talking points emphasize Giant Eagle's commitment to accommodating customers who will not or cannot wear a face covering by offering curbside, home delivery or personal shopping services.

11.     An overwhelming majority of customers and Team Members applaud Giant Eagle's efforts to keep its stores as safe as possible during the COVID-19 pandemic.  But a small minority object, and some have acted violently toward or sought to intimidate Giant Eagle's Team Members who are doing their jobs.

12.     I have received numerous reports from stores describing such altercations.  For example, a customer at the New Kensington store yelled profanities at and physically attacked a Team Member by punching him in the head, after refusing the Team Member's request that he wear a face covering.  A customer at the Franklin store flashed a gun at a Team Member after a Team Member asked him to wear a face covering.  And at the Leechburg location, one of the Plaintiffs in this lawsuit, Paul Shepard, returned to that store after the lawsuit was filed and shouted profanities at the Team Members about Giant Eagle's face covering requirement.  When, in response, Team Members called police to the Leechburg store, Mr. Shepherd shouted at the police officers, who then removed him from the store.

13.     Giant Eagle does not take lightly the enormous stress these confrontations cause our Team Members.  In fact, Giant Eagle briefly considered removing Team Members' obligation

to remind customers who enter its Pennsylvania stores without wearing a face covering of our requirement. On May 27, the President of the United Food and Commercial Workers Union Local 1776, Wendell Young, announced the Union's strong opposition to that proposed change. In an email to Giant Eagle's counsel, Mr. Young noted that in response to less strict enforcement of the Order the Union could file a Charge of Unfair Practices. Mr. Young also stated that the Union would remind its members that the "Labor Management Relations Acts protects the rights of workers to refrain from rendering labor or services because of abnormally danger conditions at work" (i.e. that they do not have to report to work), and it would "hold Giant Eagle accountable for the foreseeable consequences of this decision." A copy of the email is attached as Exhibit B. After assessing this input from the local Union, the relative prevalence of the virus in Pennsylvania, and a growing body of evidence indicating that face coverings are critical to preventing the spread of COVID-19, Giant Eagle decided to maintain its Policy.

14.     Recent guidance reaffirmed Giant Eagle's decision to require face coverings for all customers in Pennsylvania. For example, I learned that the World Health Organization now recognizes that COVID-19 spreads indoors through the air, after hundreds of experts sent a letter to the organization warning it of the danger.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this _13_ day of July 2020.

William Artman

# EXHIBIT A



**Maryland and Pennsylvania Mask Guidelines Update**
**May 4, 2020**

<u>Update</u>

Thank you for continuing to protect the well-being of fellow Team Members and guests. While most of our Maryland and Pennsylvania guests have appreciated the safety-first reasoning behind our policy requiring everyone to wear a mask or other face covering while in our stores, we also realize that some guests have been vocal against our stance.

We have updated the following protocols to help Team Members who encounter upset guests. Please share them with your management team, any Team Member that will be assigned to the front door mask detail, and the guard on site should you have one assigned in your building.

***Suggested*** <u>talking points</u>

- The safety and well-being of our Team Members and guests is always our top priority.

- To keep in compliance with the State's mandate requiring all people – including employees and customers – entering an essential business to wear a face mask, we must ask that you please put on a mask or other face covering before entering our store.

- *(IF YOUR STORE HAS FACEMASKS FOR GUESTS)*: If you do not have a face mask with you, we will provide a one-time complimentary face mask. In the future, please know that we will be unable to provide you with a face mask.

- *(IF YOUR STORE DOES NOT HAVE FACEMASKS FOR GUESTS, OR YOU ENCOUNTER A GUEST WHO MAY BE ABUSING THE ONE-TIME GESTURE OR OTHERWISE REFUSES TO WEAR A FACEMASK)*: We apologize, but you are not permitted to enter our store without a mask or other face covering. Should you not have a mask, we would be happy to shop for you, and also encourage you to take advantage of our Giant Eagle pickup and delivery service.

- *(IF THE GUEST STATES THAT THEY HAVE A MEDICAL CONDITION THAT PREVENTS THEM FROM WEARING A MASK)*: We appreciate you sharing this important information with us, but you will not be permitted to shop in our store without wearing a mask or other face covering. We would be happy to shop for you, and also encourage you to take advantage of our Giant Eagle pickup and delivery service.

<span style="color:red">**In all circumstances where a guest (1) refuses to wear a mask or other face covering, (2) refuses to accept one of our options to get their grocery order and (3) continues entering the store after being asked not to, management should call the police.**</span>

***Key Points*** <u>to follow once all attempts to help the guest have been refused</u>

- The Guard or Team Member assigned to the door contacts management. Management responds and handles the situation.

- DO NOT block the guest's way or attempt to physically stop them. The manager in charge should call the police.

- DO NOT confront or follow the individual with a large group of Team Members or management. The manager and one witness are all that are necessary during these conversations. Stay calm and understand that the individual's objective is often to create a scene in-store and potentially to capture the incident on video.

# EXHIBIT B

| | |
|---|---|
| **From:** | Dan H. Shapira |
| **Sent:** | Wednesday, May 27, 2020 6:11 PM |
| **To:** | Bill.Artman@gianteagle.com; Stephanie M. Weinstein |
| **Subject:** | Please see the below. |

Begin forwarded message:

> **From:** Wendell Young IV <w@ufcw1776.org>
> **Date:** May 27, 2020 at 5:41:30 PM EDT
> **To:** "Dan H. Shapira" <Shapira@marcus-shapira.com>

Earlier today, Giant Eagle circulated a memo to its Pennsylvania Team Members on the topic of "Update on Guest Mask/Face Covering Enforcement". In this Memo, the Company advised that " **Effective Thursday, May 28, the mask-related signage currently in-store will be the sole manner by which the order *is* enforced with guests**. Team Members and security personnel will no longer be asked to engage guests on the matter." This change to prior guidance constitutes a direct violation of the Governor's workplace directive requiring customer masks and constitutes a reckless disregard for the health and safety of our members and the shopping public. Accordingly, I am demanding that the Company immediately rescind the memo and restore enforcement of the Governor's Order.

The Order could not be clearer. It directs all businesses that serve the public within a building or defined area to "require all customers to wear masks while on the premises, and deny entry to individuals not wearing masks, unless the business is providing medication, medical supplies or food, in which case the business must provide alternative methods of pick-up or delivery of such goods…" Only individuals who cannot wear a mask due to a medical condition and children under the age of 2 may enter the premises without a mask.

This Order has been in effect since April 19. It has been enforced by Giant Eagle since April 19. Your directive to our members to disregard the Order and to "assume that anyone shopping in our stores without a mask or face covering must have a medical condition that prevents them from wearing one" makes our members complicit in your reckless behavior.

So here is a preview of coming attractions. First, your decision constitutes a dramatic change to the working conditions in your stores which was unilaterally implemented without notice or consultation with the Union. Unless it is rescinded and you begin negotiations about the decision to and impact of failing to enforce a health order of the Governor, we will file a Charge of Unfair Practices.

As you are undoubtedly aware, OSHA requires that an employer ensure that its workplace be free of recognized hazards likely to cause death or serious harm. Further and consistent with that obligation, Section 502 of the Labor Management Relations Act protects the rights of workers to refrain from rendering labor or service because of abnormally dangerous conditions at

work.  Local 1776 KS intends to remind its members of their rights to protect themselves and their families from the well documented consequence of exposure to COVID 19 made more likely by this reversal.

Further, we believe that the shopping public and the communities in which they live, have a right to know how the Company has diminished their safety while shopping at Giant Eagle.  It is our intention to make them aware of your decision, which we assume you will have no objection since it is in writing and provided to our members as a directive.  We have already advised the Governor's Office of your directive and intend to reach out to the Department of Public Health and Attorney General.

Finally, rest assured that we intend to hold Giant Eagle accountable for the foreseeable consequences of this decision.  We believe that your decision constitutes reckless endangerment to the health and safety of our members and the general public.  We are evaluating a number of legal options should the Company persist.  Frankly, I am more that a little shocked and disappointed that you would put profits ahead of the safety of your employees and your customers.  I hope that you will reconsider this strategy and rejoin the community of responsible grocers who are respecting these important regulations and the health and safety of everyone in their stores.


Wendell Young IV
UFCW Local 1776
1-866-329-1776, Ext 805

P Go green. Read it from the screen. Save paper, please consider not printing this email
Confidential The information contained in this message is intended only for use of the individual or entity to which it is addressed, and may contain information that is privileged and confidential. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver this to the intended recipient, you are hereby notified that the dissemination or distribution of this communication, by any means whatsoever, is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via EMAIL. Thank you.


Dan Shapira
**Marcus & Shapira LLP**

301 Grant Street, 35th Floor
One Oxford Centre
Pittsburgh, Pennsylvania 15219-6401
Direct Dial: 412-338-5225
Fax: 412-391-8758

THIS MESSAGE AND ANY ATTACHED DOCUMENTS CONTAIN INFORMATION FROM THE LAW FIRM OF MARCUS & SHAPIRA LLP WHICH MAY BE CONFIDENTIAL AND/OR PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU MAY NOT READ, COPY, DISTRIBUTE, OR USE THIS INFORMATION. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY REPLY E-MAIL AND THEN DELETE THE MESSAGE.