**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KIMBERLY PLETCHER, et al., )<br>    ) Case No. 2:20-cv-00754-NBF<br>    Consolidated Plaintiffs, )<br>    )<br>v.   )<br>    )<br>GIANT EAGLE, INC. and C&J )<br>GROCERY CO., LLC, )<br>    )<br>    Defendants. ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR RULE 12 MOTION TO DISMISS

In these virtually unprecedented times, Courts will likely grapple with complex and challenging pandemic-related cases that pose questions with no good or immediate answers. This is not one of them. The Americans with Disabilities Act permits Giant Eagle to take reasonable steps to protect its customers and employees (Team Members) from unnecessary risks, including its policy requiring everyone in its stores to wear a face covering to minimize the spread of COVID-19 (the "Policy"). Though Plaintiffs purport to bring this lawsuit on behalf of individuals with disabilities, their claims seek to impose disproportionate risk on those most susceptible to serious consequences from the virus, including the elderly, the immunocompromised, and, of course, individuals with a disability. The Court can and should immediately reject this proposition.

Plaintiffs' claims fail for three reasons. First, the ADA permits legitimate safety requirements—such as Giant Eagle's neutral face-covering Policy—even if the requirement screens out individuals with disabilities. Second, the ADA does not require Giant Eagle to abandon its Policy in the face of a direct threat to the health and safety of its customers and Team Members. Third, Plaintiffs do not state a claim under the ADA because their proposed modification—allowing them to shop in stores without any face covering—is neither reasonable

nor necessary.  In fact, Giant Eagle *already* reasonably accommodates customers who cannot or will not wear masks by allowing them to wear face shields and offering curbside and home delivery services.

Despite these defects on the face of their Second Amended Complaint, Plaintiffs contend that the ADA gives anyone claiming a disability a pass to ignore Giant Eagle's Policy.  Their theory echoes a debunked Internet scheme, which claims that individuals who are ideologically opposed to wearing masks can misuse the ADA to further their agenda.  The United States Department of Justice, responsible for enforcing portions of the ADA, denounced the scheme as fraudulent.[1]  But whether they have an ideological agenda, a legitimate disability or both, Plaintiffs' lawsuit against Giant Eagle has no merit.  It should be dismissed.

## STANDARD OF REVIEW

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted."  Fed.R.Civ.P. 12(b)(6).  Though "detailed pleading is not generally required," the pleader must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[1] *See* Exhibit 1, Press Release, Unites States Department of Justice Office of Public Affairs, The Department of Justice Warns of Inaccurate Flyers and Postings Regarding the Use of Face Masks and the Americans with Disabilities Act (June 30, 2020), *citing* Alert, Unites States Department of Justice, COVID-19 ALERT: Fraudulent Face Mask Flyers. https://www.justice.gov/opa/pr/department-justice-warns-inaccurate-flyers-and-postings-regarding-use-face-masks-and

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 544, 557 (2007)).

## ARGUMENT

### I. <u>Count I—Violation of Title III of the ADA—Fails to State a Claim</u>

#### A. Giant Eagle's face-covering Policy is a legitimate safety requirement, excluded from the ADA's mandates

Under the ADA, a "public accommodation may impose legitimate safety requirements that are necessary for safe operation." 28 C.F.R. § 36.301(b); *accord Masci v. Six Flags Theme Park, Inc.*, Civil Action No. 12-6585, 2014 U.S. Dist. LEXIS 178666, *27 (D.N.J. Dec. 31, 2014) (quoting 28 C.F.R. § 36.301). Public accommodations may impose such "neutral rules and criteria," even if "they screen out, or tend to screen out, individuals with disabilities." 56 Fed. Reg. 35544-01. The Federal Regulations provide examples of such neutral safety requirements, including "height requirements for certain amusement park rides or a requirement that all participants in a recreational rafting expedition be able to meet a necessary level of swimming proficiency." *See, e.g., Masci*, 2014 U.S. Dist. LEXIS 178666, at *31 (holding that the defendant's ridership requirements did not violate the ADA even though they excluded plaintiff from certain rides).

Like those requirements, Giant Eagle's Policy sets forth a neutral and legal rule required for the safe operation of Giant Eagle's stores during the current COVID-19 pandemic. The United States Department of Justice Civil Division, which is responsible for enforcing certain provisions of the ADA, recently issued a press release to directly counter claims to the contrary. In response to fraudulent flyers and Internet postings invoking the ADA as a means to avoid wearing a face mask, the DOJ stated that the "ADA does not provide a blanket exemption to people with


disabilities from complying with legitimate safety requirements necessary for safe operations." Exhibit 1.[2]

Such legitimate safety requirements "must be based on actual risks and not mere speculation, stereotypes, or generalizations about individuals with disabilities." *Id*. Plaintiffs make no allegation that the spread of COVID-19 presents no actual risk to the health of others, no allegation that face coverings do not help reduce the risk, and no allegation that Giant Eagle's Policy is based on speculation, stereotypes, or generalizations about individuals with disabilities. Nor could they reasonably do so. COVID-19 has already infected more than 135,000 people in Pennsylvania and killed more than 7,700 of them.[3] The overwhelming view and guidance by experts states that the universal use of face coverings is essential to reducing the spread of COVID-19. *See Ill. Republican Party v. Pritzker*, 2020 U.S. Dist. LEXIS 116383, at *3 (N.D. Ill. July 2, 2020) ("Medical experts agree that to stop the spread of COVID-19, people should practice social distancing and wear face coverings when near other people outside their homes."). Critical here, Giant Eagle's Policy applies to *everyone* shopping in its stores, not just individuals with disabilities.

Because Giant Eagle's Policy is a neutral rule based on actual risks, the ADA does not provide Plaintiffs with a vehicle for challenging it, even if the Policy may exclude some on the basis of a disability. The Court should dismiss Plaintiffs' ADA claims for that reason alone. *See*

---

[2] The Court may of course take judicial notice of the facts regarding the pandemic that are generally known within the Court's "territorial jurisdiction and that 'can be accurately and readily determined from' public records 'whose accuracy cannot reasonably be questioned.'" *United States v. Fortson*, Case No. 2:18-cr-416, 2020 U.S. Dist. LEXIS 127148, *5 (taking judicial notice of COVID-19 Pandemic circumstances and quoting Fed. R. Evid. 201(b)). *See also In re Egalet Corp. Secs. Litig.*, 340 F. Supp. 3d 479, 497 (E.D. Pa. Aug. 18, 2018) (citations omitted) (reiterating with approval the Third Circuit's prior judicial notice of the veracity of certain public records, such as FDA website documents).

[3] https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx

*Holmes v. Gen. Dynamics Mission Sys.*, 382 F. Supp. 3d 529, 532 (W.D. Pa. 2019) (holding that the ADA does not "exempt an employee from a requirement to wear safety equipment that is intended to protect her from serious injury, and to protect the company from financial harm, because she has a physical condition that prevents her from wearing the safety equipment").[4]

### B. Plaintiffs' proposed modification—to prohibit Giant Eagle from enforcing its Policy—would result in a direct threat to the health and safety of others

Separate from the ADA's legitimate safety requirement exception, the ADA also permits public accommodations to avoid modifications that would pose a "direct threat" to the health and safety of others. 42 U.S.C. § 12182(b)(3); *Haas v. Wyo. Valley Health Care Sys.*, 553 F. Supp. 2d 390, 399 (M.D. Pa. 2008). Even before Congress codified the direct threat exception in Title III of the ADA, the United States Supreme Court, in *School Board of Nassau County v. Arline*, held that the disability laws do not require modifications that would result in a direct threat, ***specifically with respect to infectious diseases***.[5]  480 U.S. 273 (1987).

In *Arline*, the Supreme Court addressed a "direct threat" under the Rehabilitation Act,[6] when a teacher with tuberculosis challenged her dismissal, which her employer based on the threat of that disease. The Court found that the teacher was disabled, but held that "[a] person who poses a significant risk of communicating an infectious disease to others in the workplace will not be otherwise qualified for his or her job if reasonable accommodation will not eliminate that risk."

---

[4] *Accord Mattair v. Pilgrim*, Case No. 3:17-cv-211, 2019 U.S. Dist. LEXIS 51147, *7 (M.D. Fla. March 27, 2019) ("Even drawing all inferences in [the plaintiff's] favor, the record readily supports that wearing a bump cap is an essential safety requirement for being on the production floor at [the defendant's business].").

[5] After *Arline*, Congress amended both the ADA and Rehabilitation Act to include the "direct threat" exclusion. 42 U.S.C. § 12182(b)(3); 29 U.S.C. § 705(20)(D).

[6] The Third Circuit Court of Appeals has noted, "as the ADA simply expands the Rehabilitation Act's prohibitions against discrimination into the private sector, Congress has directed that the two acts' judicial and agency standards be harmonized." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 302 (3d Cir. 2007) (internal quotation marks and modification marks omitted).

*Id*. at 287 n.16.  The Court formulated a direct threat test to effect the "goal of protecting handicapped individuals from deprivations based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns . . . as avoiding exposing others to significant health and safety risks."  *Id*. at 287.  The test outlines four factors courts should consider in determining whether a direct threat exists:  (1) the nature of the risk; (2) the duration of the risk; (3) the severity of the risk; and (4) the probabilities the disease will be transmitted and will cause varying degrees of harm.  *Id*. at 288; *accord Haas*, 553 F. Supp. 2d at 399 (applying the *Arline* factors).

Plaintiffs' proposed modification would pose a direct threat to the safety and health of other customers and Team Members under *Arline*.  First, courts have already recognized the nature of the risk—an increased possibility that customers will transmit the virus risks the lives of Giant Eagle's customers and Team Members and a potentially cascading health, financial and social impact.  Second, the risk remains until we find an effective treatment or vaccine for COVID-19.[7]  Third, the risk is severe—thousands in Pennsylvania have already died from COVID-19.  Fourth, though we do not know precisely the probability that a customer without a face covering would transmit COVID-19, the virus is particularly dangerous *because* it spreads so easily.  Recognizing this risk, on March 21, 2020, the Equal Employment Opportunity Commission declared that "the COVID-19 pandemic meets the direct threat standard [under the ADA]."[8]  *See also Donahue v. CONRAIL*, 224 F.3d 226, 231 (3d Cir. 2000) ("If the threatened harm is grievous, even a small risk may be 'significant.'"); *United States v. Ortiz*, 16-CR-439, 2020 U.S. Dist. LEXIS 119004,

---

[7] *See Pritzker*, 2020 U.S. Dist. LEXIS 116383, *2 (N.D. Ill. July 2, 2020) (recognizing there is no effective treatment or vaccine).
[8] https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act

*4 (S.D.N.Y. July 6, 2020) (The COVID-19 pandemic "presents a clear and present danger to free society for reasons that need no elaboration.").

Plaintiffs' allegations that they "had no signs or symptoms of Covid 19" and "other safety precautions were in place" (2d Am. Compl. ¶ 290) are misguided and should not affect the analysis here.  A lack of symptoms is not a reliable indicator of whether an individual is infected with COVID-19 and contagious.  The CDC estimates that approximately 35% of people infected with COVID-19 are asymptomatic, and 40% of virus transmission occurs *before* infected individuals display symptoms.[9]  Regardless of the other safety precautions Giant Eagle puts in place, almost universal expert guidance dictates that wearing face coverings is one of the most effective measures we can take to reduce the spread of COVID-19, particularly in confined spaces, like grocery stores.[10]

No reasonable juror could determine that allowing any customer who claims a disability to shop without a face covering poses no heightened risk to the health and safety of others.  Hence, Plaintiffs' ADA claims fail as a matter of law.  *See, e.g., Haas*, 553 F. Supp. 2d at 402 (holding that no reasonable juror could determine that the plaintiff physician, who had a mental disability, did not pose a direct threat to the health and safety of others).

### C.   Plaintiffs' proposed modification is unreasonable and unnecessary

Plaintiffs request that Giant Eagle "modify" its face covering Policy by dispensing with it completely when they shop.  *See, e.g.*, 2d Am. Compl. ¶ 291 ("Plaintiffs request that the court

---

[9] https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html
[10] *See, e.g.,* Pa. Dept. of Health Universal Face Coverings Order FAQ, 7/3/2020, attached as Exhibit 2, pg. 7 ("The wearing of face coverings, such as a mask, ensures that we as a society can limit the spread of COVID-19 and successfully combat this pandemic; therefore, it is in everyone's best interest that all Pennsylvanians comply with this Order."); *see also* Apoorva Mandavilli, 239 Experts With One Big Claim: The Coronavirus Is Airborne, THE NEW YORK TIMES, July 4, 2020, https://www.nytimes.com/2020/07/04/health/239-experts-with-one-bigclaim-the-coronavirus-is-airborne.html

award them injunctive relief requiring Giant Eagle to accommodate Plaintiffs by modifying its policies and procedures, allowing them to shop in its stores without wearing a mask . . . ."). Even if Giant Eagle's Policy were subject to modification—and it is not—Plaintiffs must meet three requirements to trigger a requested change:  (1) "the requested modification must be reasonable"; (2) "the requested modification must be necessary"; and (3) "the requested modification must not fundamentally alter the nature of the services provided by the entity."  *Doe v. Haverford Sch.*, CIVIL ACTION NO. 03-3989, 2003 U.S. Dist. LEXIS 15473, *13 (E.D. Pa. Aug. 6, 2003) (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001)).  Plaintiffs fall short of this standard for two glaring reasons.

First, their request is not reasonable.  We are in the midst of deadly pandemic caused by a virus that spreads easily from person to person via excretions from the nose and mouth.  Face coverings reduce the spread of the virus, and Plaintiffs do not allege otherwise.  Allowing them and others to shop with no face covering would—quite literally—risk the lives of Pennsylvanians.  "[N]o reasonable jury could find" such a proposed modification reasonable.  *Haas*, 553 F. Supp. 2d at 402.

Second, Plaintiffs' requested modification is unnecessary.  Giant Eagle *already* accommodates them and others by permitting customers who will not or cannot wear a mask to wear face shields.  *See* Exhibit 3, Giant Eagle Covid-19 Response Center FAQ, https://www.gianteagle.com/response ("When shopping, guests should wear a face mask or cloth face covering that covers the nose and mouth, which public health authorities agree is an effective tool to reduce the transmission of the coronavirus.  If you feel you are unable to wear a face mask

or cloth face covering, a full-face shield that extends to the chin may be worn instead.").[11] Alternatively, customers may shop for their groceries using curbside or delivery service or, in many cases, on-the-spot personal shopping by a Giant Eagle Team Member. *See* 2d Am. Compl. ¶ 273 (recognizing that Giant Eagle provides the "option of staying out of the store and having a Giant Eagle team member shop for them or use curbside pick-up and delivery services."); ¶ 76 (alleging that the manager offered to shop for the Plaintiff while she waited outside).

Plaintiffs try to sidestep this barrier to their claims by vaguely alleging that the offered alternatives "do not comply with the ADA and deny disabled customers full and equal access to Giant Eagle stores." *Id*. But that's not true as a matter of law. Wearing a face shield would of course allow Plaintiffs the exact same access to Giant Eagle's stores as customers wearing a face mask. *See* Exhibit 2, at pg. 3 ("If an individual cannot wear a face covering due to a medical or mental health condition or disability, the individual should consider wearing a face shield."). Also, curbside and delivery service are well-recognized as sufficient alternatives to in-store shopping. *See* 28 C.F.R. 36.305 (recognizing that "curb service or home delivery" is an alternative to in-store shopping where barrier removal is not readily achievable); *Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 630 (D. Md. 2002) ("The Court finds that the [defendant] provides disabled customers with reasonable alternative service accommodations [including] curbside (in car) service, service in the lobby, the use of sidewalk ATM machines, and an unfortunately inconvenient route to the Banking Hall . . . ."); *see* Exhibit 2, at pg. 8 (recognizing "home delivery or contactless curbside pickup" as alternatives to in-store shopping). No ADA claim survives here.

---

[11] The Court may consider Giant Eagle's face covering Policy on a motion to dismiss, because the Complaint expressly references and relied upon it. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

**II.     Count II—Retaliation and Coercion Under the ADA—Fails to State a Claim**

Because the ADA does not provide Plaintiffs a right to enter Giant's Eagle's stores without a face covering, their retaliation claims fail as a matter of law. They cannot sufficiently allege that Giant Eagle retaliated against them because they engaged in "constitutionally protected conduct" under the ADA. *Wishnefsky v. Salameh*, 3:15-cv-00148, 2016 U.S. Dist. LEXIS 161035, *15 (W.D. Pa. Nov. 18, 2016). In any event, the Complaint only formulaically alleges that Giant Eagle's purported "retaliation was caused by Plaintiffs' protected conduct and requests for reasonable modifications to Defendant's policies and procedures." 2d Am. Compl. ¶ 295. Such allegations are insufficient under *Twombly* to state a claim. *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal citation and quotation marks omitted)).

Plaintiffs do not allege any *facts* in support of their claim that Giant Eagle retaliated against them for engaging in a protected activity under the ADA. Rather, Plaintiffs allege that Giant Eagle called the police or "yelled" at a few of the Plaintiffs for trying to enter its stores without wearing a face covering. *See, e.g.,* 2d Am. Compl. ¶¶ 84 ("The manager responded that he could not enter the store without a mask and if he entered, she would call the police and have him arrested for trespassing"); 171 (The Plaintiff "was immediately stopped by two employees who were yelling at him because he was not wearing a mask."). Even if the ADA protects their ability to flout Giant Eagle's Policy (and it does not), Plaintiffs do not allege a real and immediate threat of future retaliation for protected activities under the ADA. *See Bobs Little Sport Shop, Inc.*, 2010 U.S. Dist. LEXIS 23666, at *9-*10 (D.N.J. Mar. 11, 2010) ("Without this real and immediate threat, Plaintiffs have failed to allege sufficient facts to establish standing to assert their retaliation claim under the ADA.").

10

## CONCLUSION

We are all living through a difficult time, when, allegedly, a simple trip to the supermarket may require some sacrifice. But even taking Plaintiffs' central allegation—that they cannot wear a face covering—as true, they state no viable claim. Giant Eagle's face covering Policy constitutes a legitimate safety requirement under the ADA and combats a direct threat posed by potential carriers of COVID-19. Giant Eagle properly seeks to protect its customers and front-line Team Members, particularly those in high-risk groups. Plaintiffs' demand to modify the Policy is neither reasonable nor necessary. The Court should dismiss the Second Amended Complaint with prejudice.[12]

Dated: September 2, 2020

Respectfully submitted,

*/s/ Jonathan D. Marcus*
Jonathan D. Marcus (PA ID #312829)
jmarcus@marcus-shapira.com
Jeremy D. Engle (PA ID #324008)
engle@marcus-shapira.com

MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
301 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 471-3490
Facsimile: (412) 391-8758

*Counsel for Defendants*

---

[12] Prior to filing their Motion to Dismiss, Defendants conferred with Plaintiffs regarding the bases for the motion. Plaintiffs subsequently amended their Complaint, but failed to cure the identified deficiencies.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed and served via operation of the Court's CM/ECF system on September 2, 2020, which will automatically send e-mail notification of such filing to all attorneys of record.

*/s/ Jonathan D. Marcus*
Jonathan D. Marcus