IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY PLETCHER, et al. ) | |
| ) | |
| Consolidated Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:20-cv-754 NBF |
| ) | |
| GIANT EAGLE, INC. and C&J Grocery CO., ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |

**CONSOLIDATED PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

AND NOW, COME Plaintiffs, by and through their attorneys, Thomas B. Anderson, Esquire and Thomson, Rhodes & Cowie, P.C., and file this Brief in Opposition to Defendants' Motion to Dismiss.

**I.   INTRODUCTION**

"In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities." Ramsay v. Nat'l Bd. of Med. Examiners, 2020 U.S. App. LEXIS 24307 *9,  968 F.3d 251 (3d Cir. July 3, 2020) (affirming the district court's preliminary injunction in favor of the plaintiff under Title III of the ADA), quoting Enyart v. Nat'l Conf. of Bar Exam'rs, 630 F.3d 1153, 116 (9th Cir. 2011*)*; and citing  Issa v. Sch. Dist. of Lancaster, 847 F.3d 121, 143 (3d Cir. 2017) (concluding that it was in the public interest for covered entities to comply with a civil rights statute).[1]   Defendants'

---

[1] "In studying the need for such legislation, Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' Congress noted that the many forms such discrimination takes include 'outright intentional exclusion' as well as the 'failure to make modifications

1

Motion to Dismiss is improper and frivolous and demonstrates the continuing need for eradication of disability discrimination.

Defendants' motion does not address or challenge Plaintiffs' allegations that establish all the elements of Plaintiffs' claims of Americans with Disabilities Act ("ADA") violations. Defendants' motion merely asserts an affirmative defense that has not been pleaded, is not properly supported, and cannot be proven by the Defendants who have the burden of proof on the issue.

Plaintiffs' have alleged meritorious claims of blatant violations of Title III of the ADA in the form of illegal discrimination and retaliation.  Defendants' motion should be dispatched by this Honorable Court quickly and easily.

## II. ARGUMENT

### A. Legal Standard

This Honorable Court has stated the legal standard for addressing motions filed pursuant to Federal Rule of Civil Procedure 12(b)(6) numerous times and has consistently described the court's role.  This court has stated:

> A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." Id. at 210-11.

---

to existing facilities and practices.'" Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 542 (W.D. Pa. 2013) (citations omitted).

> To survive the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." Johnson v. City of Shelby, _ U.S. _, 135 S. Ct. 346, 347, 190 L. Ed. 2d 309 (2014).
>
> To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.
>
> In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits, and matters of public record. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). An exception to this general rule is "undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "items subject to judicial notice," without converting the motion to dismiss into one for summary judgment. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2004)).

Pristas v. Esper, Civ. A. No. 17-056, 2018 U.S. Dist. LEXIS 47080, *14-16, 2018 WL 1427089 (J. Fischer) (W.D. Pa. Mar. 22, 2018).

### B. Plaintiffs Have Indisputably Alleged Facts in Support of All the Elements of Their Claims.

Title III of the ADA prohibits disability discrimination in places of public accommodation. Title III's "general rule" is that

> no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

Anderson, 943 F. Supp. 2d at 542, quoting 42 U.S.C. § 12182(a). A plaintiff establishes a claim under Title III of the ADA by showing: "(1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." Anderson, 943 F. Supp. 2d at 542-43, quoting Harty v. Burlington Coat Factory of PA., L.L.C., No. 11-01923, 2011 U.S. Dist. LEXIS 64228, 2011 WL 2415169, at *9 (E.D. Pa. June 16, 2011).

Defendants' Motion to Dismiss does not challenge in any way that Plaintiffs have each alleged that (1) they are disabled as defined by the ADA;[2] (2) they cannot wear masks because of their disabilities;[3] (3) Giant Eagle and C&J Grocery CO., LLC, owned and operated public accommodations (Giant Eagle Grocery stores);[4] and (4) they discriminated against the plaintiffs in the full and equal enjoyment of goods, services, privileges, advantages, or accommodations in their grocery stores.[5] Because Defendants do not challenge these factual allegations,

---

[2] Doc. 32 (Plaintiffs' Second Amended Consolidated Complaint), ¶¶ 3, 7,10, 13.18, 21, 25, 28, 35, 39, 42, 45, 52, 54, 56, 58, 63, 68, 72, 75, 79, 82, 86, 89, 93, 96, 100, 103, 109, 112, 116, 123, 126, 130, 133, 135, 139, 145, 151, 155, 157, 160, 167, 173, 176, 181, 184, 188, 193, 198, 202, 207, 210, 212, 215, 219, 224, 229, 231, 234, 237, 240, 245, 249, 252, 255, 258, and 283.
[3] Doc. 32, ¶¶ 3, 7,10, 13.18, 21, 25, 28, 35, 39, 43, 46, 52, 54, 56, 59, 63, 68, 72, 75, 79, 83, 87, 89, 93, 97, 101, 103, 109, 112, 119, 124, 126, 130, 133, 135, 139, 147, 151, 155, 157, 162, 167, 173, 177, 181, 185, 188, 193, 199, 202, 207, 211, 213, 215, 219, 224, 229, 231, 235, 239, 240, 245, 249, 252, 255, and 259.
[4] Doc. 32, ¶¶ 4, 5, 172, and 285.
[5] Doc. 32, ¶¶ 3, 6, 7- 261, 276, and 286.

4

Defendants' Motion to Dismiss is completely without merit.[6] The factual allegations set forth in the complaint clearly establish all the elements of Plaintiffs' disability discrimination and retaliation claims.

Defendants cite only one subsection of one ADA regulation in their brief and do not address in any way the remaining regulations.[7] They then reach the absurd conclusion that the ADA does not apply to their mask policy because it is a safety rule. The reason Defendants mention only one section of the regulations is because they clearly violated others and the other regulations eviscerate Defendants' arguments.[8] Defendants' policy and their treatment of Plaintiffs cannot be reconciled with the Title III regulations (28 C.F.R. §§ 36.101 – 36.208) that provide "broad" and "expansive" coverage and protection for the disabled to the "maximum extent permitted" by the ADA. 28 C.F.R. § 36.101.

The ADA regulations allow public accommodations to make reasonable safety rules, but modifications <u>must</u> be made if they are reasonable and necessary, unless doing so would modify the nature of the business or the individual is a direct threat to the health and safety of others. 28 C.F.R. § 36.208 (Direct threat). The ADA regulations only apply the term "direct threat" to an individual, not a generalized threat of any virus, and the regulations require an "individualized assessment," which Defendants did not do. 28 C.F.R. § 36.208(a) and (b).

Defendants make a general argument that COVID-19 is a direct threat to the health and safety of others. Doc. 34, p. 3-4. However, Defendants' argument misses the mark as it completely fails to address the requirements of 28 C.F.R. § 36.208(a) and (b). Defendants make

---

[6] Defendants' Exhibit 1 is improperly attached to the motion in an effort to fabricate an argument that has nothing to do with Plaintiffs' claims, is completely irrelevant, and should not be considered in ruling on Defendant's motion.
[7] Doc. 24, p. 3. Defendants cite only 28 C.F.R. § 36.301(b).
[8] "In 42 U.S.C. §§ 12186(b) and 12205a, the ADA authorizes DOJ to issue regulations implementing the public accommodations provisions of the ADA. Such regulations have 'the force and effect of law.' The regulations 'are entitled to substantial deference.'" Ramsay, 2020 U.S. App. LEXIS 24307 at * 9, note 6.

this argument because they made no individualized assessments, they merely adopted a policy and instructed employees that no medical (i.e. disability) exceptions were allowed.  **"No medical exceptions" necessarily means *no modifications for disabilities*.**  Furthermore, nowhere in their motion or corresponding brief do Defendants mention the central ADA regulation at issue, 28 C.F.R. § 36.302 (Modification in policies, practices, or procedures), that requires Defendants to make reasonable and necessary modifications to their policies.[9]

The ADA also clearly prohibits retaliation and coercion.  28 C.F.R. §36.206.  The regulations prohibit private entities from intimidating, threatening, or interfering with any individual in the exercise or enjoyment of any right granted or protected by the ADA. 28 C.F.R. §36.206 (b) and (c)(2).  Plaintiffs have clearly alleged intimidation, threats of criminal charges, interference with their legal rights, and even permanent banishment from Giant Eagle stores.[10] These allegations are not challenged in any way and clearly establish that Plaintiffs are entitled to the relief they seek.

### C. Defendants' Motion is Based on an Affirmative Defense Upon Which They Have the Burden of Proof.

Defendants base nearly their entire brief on the affirmative defense that they apparently intend to plead in their answer, that they believed the Plaintiffs posed a "direct threat" to the health and safety of others.  While the defendants will not be able to meet their heavy burden of proof on this issue because their policy completely ignored or rejected the directives and

---

[9] "A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations." 28 C.F.R. § 302(a).
[10] Doc. 32, ¶¶ 7- 261, 272, and 292-96.

guidance of public health authorities to the contrary, this affirmative defense is not a basis for a Rule 12(b)(6) motion.

Under Title III of the ADA, the "direct threat" defense that Defendants base their motion upon is an affirmative defense.  Frilando v. Bordertown Driver Training Sch., LLC, 2017 U.S. Dist. LEXIS 118067, *16, 2017 WL 3191512 (N.J. Dist. 2017); Davison v. Hart Broadway, LLD, 2009 U.S. Dist. LEXIS 48572 *24, 2009 WL 1514393 (E.D. Cal., May 27, 2009) (The "direct threat" defense under Title III is an affirmative defense and the burden of proof "falls squarely on the defendant."); Doe v. Deer Mt. Camp, Inc., 682 F. Supp. 2d 324, 345-47 (S.D.N.Y. Jan. 13, 2010) (A plaintiff "is not required to prove that he poses no risk.  In contrast, **a defendant asserting a 'direct threat' as a basis for excluding an individual bears a heavy burden of demonstrating that the individual poses a significant risk to the health and safety of others.**") (citations omitted, emphasis added); See also Lockett v. Catalina Channel Express, Inc., 496 F.3d 1061 (9th Cir. 2007) ( In the context of 28 C.F.R. §36.208, the entity asserting a "direct threat" defense bears a heavy burden of demonstrating that the individual poses a significant risk to the health and safety of others.); and Bragdon v. Abbott, 524 U.S. 624, 649-50, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998).

Like its responses to the pending motion for preliminary injunction filed by Plaintiff, Josiah Kostek, Giant Eagle's Motion to Dismiss ignores the requirements of the ADA and its implementing regulations, cites almost none of the applicable regulations, and merely jumps to a conclusion that it can meet its burden of proving its "direct threat" defense.  Giant Eagle makes the direct threat argument despite the fact that Giant Eagle's mask policy was contradicted by the clear recommendations of the CDC, the Pennsylvania Secretary of Health, and the Pennsylvania

Department of Health, that each stated the need for exceptions to mask recommendations or requirements for people with disabilities just like the plaintiffs.

The Title III regulations state:

> In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

28 C.F.R. §36.208. In Frilando, the district court noted that when making an individualized threat assessment under section 36.208, the public accommodation must consider "the nature, duration and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modification of policies, practices, or procedures … will mitigate the risk." Frilando, 2017 U.S. Dist. LEXIS 118067 at *38. "Such a multifactor determination does not lend itself easily to resolution on ***summary judgment***." Id. (emphasis added).

The United States Supreme Court has held that when evaluating whether a public accommodation's actions were reasonable, "the views of the public health authorities such as the U.S. Public Health Service, the CDC and the National Institute of Health, are of special weight and authority." Bragdon, 524 U.S. at 650, citing School Bd. of Nassau Cty. v. Arline, 480 U.S. 273, 288, 94 L. Ed. 2d 307, 107 S. Ct. 1123 (1987). The problem for the Defendants, as alleged in the Second Amended Consolidated Complaint, is that Defendants decided not to follow the recommendations of the CDC, the Pennsylvania Health Secretary's Orders, or the guidelines of the Pennsylvania Department of Health. All these public health authorities recognized that disabled people like Plaintiffs should not be kept out of businesses because they cannot wear masks due to their disabilities. The authorities stated that disabled people who cannot wear

8

masks should be allowed to enter stores without masks.[11]  If the risks posed by allowing non-masked shoppers inside stores outweighed the public benefits afforded by the ADA, the public health authorities surely would have said so, instead of qualifying mask mandates with exceptions stating that the mandates did not apply to disabled customers who cannot wear masks.

Defendants did not base their decisions on objective medical evidence, they relied upon generalization, stereotypes, and politics.[12]  Because the direct threat affirmative defense is not a proper basis for Defendants' motion, Defendants' Motion to Dismiss should be denied.  However, even if the affirmative defense was a proper basis for the motion, Defendants arguments fail for the reasons stated above.

### D. **Plaintiffs Have Alleged Facts Showing That Their Requested Modifications Were Reasonable and Necessary**.

While Defendants improperly argue in their Rule 12(b)(6) motion that Plaintiffs' requested modifications are neither reasonable, nor necessary, Defendants' arguments are simply wrong.  Plaintiffs have alleged that the modifications they requested were consistent with the recommendations of the CDC, the Pennsylvania Secretary of Health's Orders, and the guidelines of the Pennsylvania Department of Health.[13]  Giant Eagle's no exception policy is the only unreasonable and unnecessary element in this case.  Giant Eagle chose to reject the directives of the public health officials and has refused to allow Plaintiffs to shop inside the store(s) without masks, because it felt that it was simply too easy for people to make up excuses not to wear masks.[14]  Contrary to Giant Eagle's arguments, that go well beyond the allegations in the complaint, Giant Eagle cannot legitimately argue that Plaintiffs' requests that they be permitted

---

[11] Doc. 32, ¶¶ 6, 263 – 270, 284.
[12] Doc. 32, ¶¶ 267and 290.
[13] Doc. 32, ¶¶ 6, 119, 262-270, 275, 284 and 290. Plaintiff Whitcroft was taken to the hospital after being forced to wear a mask. Doc. 32, ¶ 88.
[14] Doc. 32, ¶¶ 169-172, 270.

9

to shop without masks was unreasonable because Giant Eagle has no mask policies at all in its West Virginia, Ohio, or Indiana stores and the requested modifications asked Giant Eagle to do nothing more or different than it was doing in all of its stores in three neighboring states.[15]

Defendants' argument that Plaintiffs' requested modifications were not necessary to provide them with full and equal enjoyment of the stores in the most integrated setting available is also wrong. Defendants' policy left many with no alternative options, save shopping at other stores that adopted legal policies that recognized the exceptions in the public health authorities' orders and guidelines. For example, Giant Eagle did not allow face shields as an alternative to masks,[16] did not allow customers to buy alcoholic beverages outside of the brick and mortar stores,[17] and did not allow customers to use EBT cards[18] to pay for curbside or home delivery.[19] Furthermore, Giant Eagle does not offer curbside pickup at all stores.[20]

Defendants cannot simply force disabled customers to stand outside or go somewhere else to shop.[21] Disabled customers are entitled to shop inside the stores just like able-bodied customers, and with respect to the ADA "separate is not equal." Dominguez v. Banana Republic, LLC, 2020 U.S. Dist. LEXIS 72193, *14 (S.D.N.Y., April 23, 2020) ("To make this more concrete, a bookstore could not prohibit a visually impaired person from entering its store, but it need not ensure that the books it sells are available in both Braille and standard print.").[22] Contrary to Defendants' arguments, disabled individuals are not required to accept alternatives

---

[15] Doc. 32, ¶¶ 6 and 290.
[16] Doc. 32, ¶¶ 146-150.
[17] Doc. 32, ¶¶ 114 and 273.
[18] "Electronic Benefits Transfer (EBT) is a benefit delivery system that provides public assistance recipients with electronic access to their cash and Supplemental Nutrition Assistance Program (SNAP) benefits." www.dhs.pa.gov.
[19] Doc. 32, ¶¶ 20 and 64-65.
[20] Doc. 32, ¶¶ 31, 33, 99, 141, 154, and 273.
[21] Doc. 32, ¶¶ 270 and 281-82.
[22] "Practically speaking, how can an owner, etc., deny *the full and equal enjoyment* of the goods or services that he offers? By denying access to, or otherwise interfering with, the use of the goods or services that the business offers." Id. at *14-15, quoting McNeil v. Times Ins. Co, 205 F.3d 179, 186-87 (5th Cir. 2000).

10

such as having others shop for them.  28 C.F.R. §§ 36.202 (Activities) – 36.203 (Integrated settings).  These regulations are also not mentioned in Defendants' brief because they are irreconcilable with Defendants' policy and actions.

In J.D. by Doherty v. Colonial Williamsburg Found., 925 F.3d 663, 666 (4th Cir. 2019),[23] a child with a strict gluten-free diet sued Colonial Williamsburg for violation of Title III of the ADA when during a school fieldtrip a restaurant refused to allow him to bring his homemade gluten-free meal into the restaurant and instead offered to prepare him a gluten-free meal as an alternative.  The plaintiff declined the alternative because he did not trust the restaurant to safely prepare the meal to his specific needs.  Id.  Instead, the plaintiff chose to eat his homemade meal outside and apart from the rest of his classmates.  Id.

At issue was the restaurant's policy against allowing outside food into its restaurant.  Id. at 668.  The district court granted summary judgment to the defendant concluding that the defendant did not deny the plaintiff a like experience because the restaurant would have prepared a gluten-free meal, or would have allowed him to stay inside, enjoy the atmosphere, and eat his meal later.  Id. at 672.  The district court concluded that the requested modification was not necessary for full enjoyment of the restaurant.  Id.  The Fourth Circuit Court of Appeals disagreed, vacated the district court's judgment, and remanded the case.  Id. at 677.

The Colonial Williamsburg Court noted that the United States Supreme Court explained that the policy modification requirement set forth at 42 U.S.C. § 12182(b)(2)(A)(ii), "contemplates three inquiries: (1) whether the requested modification is 'necessary' for the disabled individual; (2) whether it is 'reasonable'; and (3) whether it would 'fundamentally alter the nature' of the public accommodation."  Id. at 671, quoting PGA Tour, Inc. v. Martin, 532

---

[23] The Third Circuit Court of Appeals cited the Colonial Williamsport case in the recent Ramsay opinion.  Ramsay, 2020 U.S. App. LEXIS 24307 at * 9.

U.S. 661, 683 n. 38, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001). "For each step, the ADA requires an 'individualized inquiry' based on the particular circumstances." Colonial Williamsburg, 925 F.3d at 671, quoting Martin, 532 U.S. at 688.

In order to determine whether a requested policy modification is necessary, "public accommodations must start by considering how their facilities are used by nondisabled guests and then take necessary and reasonable steps to provide disabled guests with a like experience." Colonial Williamsburg, 925 F.3d at 672, quoting A.L., ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc., 900 F.3d 1270, 1296, (11th Cir. 2018); accord Argenyi v. Creighton Univ., 703 F.3d 441, 451 (8th Cir. 2013); Baughman v. Walt Disney World Co., 685 F.3d 1131, 1135 (9th Cir. 2012). "This approach is consistent with the ADA, which 'guarantees the disabled more than mere access to public facilities; it guarantees them 'full and equal enjoyment.'" Colonial Williamsburg, 925 F.3d at 672, quoting Baughman, 685 F.3d at 1135 (quoting 42 U.S.C. § 12182(a)).

The Colonial Williamsburg Court determined that there were genuine issues of fact concerning the plaintiff's ability to eat out. 925 F.3d at 673. The Court of Appeals held that the district court erred in finding as a matter of law that the plaintiff's "proposed modification was not necessary to have an experience equal to that of his classmates." Id. at 674. The Court also held that the plaintiff had put forth sufficient evidence that his requested modification was reasonable. Id. at 675.

In Colonial Williamsburg, the defendant also claimed that the plaintiff's modification request was unreasonable because its policy was a legitimate safety requirement; the Appeals Court disagreed. Id. at 675.

> And although "a public accommodation may impose legitimate safety requirements that are necessary for safe operation," 28 C.F.R. § 36.301(b),

12

>   such requirements won't inevitably override a reasonable modification
>   request.  See Lamone, 813 F.3d at 508 (**"Requiring public entities to
>   make changes to rules, policies, practices or services is exactly what the
>   ADA does."** (citation omitted)).

Id. at 675 (emphasis added).

Defendants were legally required to analyze how their stores are used by nondisabled customers and make reasonable modifications to their policies to create a "like experience," as well as "full and equal enjoyment" for those disabled customers, like Plaintiffs, who cannot wear masks because of their disabilities.  The emergence of COVID-19 did not suspend the ADA, just like other viruses and related diseases, such as HIV, AIDS, and influenza, did not void the requirements of Title III.  Defendants cannot legitimately argue that telling customers with disabilities that prevent them from wearing masks they must stand outside and allow employees to select their groceries for them, while nondisabled customers can select their own items inside the store, provides the disabled with full and equal enjoyment of the store, as well as a like experience.

Defendants cannot use the virulence of the novel corona virus in and of itself as a basis to refuse to modify their zero-medical (disability) exception mask policy.  The Pennsylvania Health Department has clearly and repeatedly recognized the need for disabled people and those with health conditions that prevent them from wearing a mask to be exempt from mask mandates.  As the Covid-19 numbers increased in Pennsylvania, so did the exceptions set forth in the Secretary's Orders.  Additionally, Giant Eagle had no mask policy in neighboring states.  It is simply ludicrous for Defendants to argue that asking them to make an accommodation to their zero-disability exception policy is unreasonable or unnecessary when Giant Eagle allowed customers in neighboring states to do exactly what Plaintiffs requested in Pennsylvania.

## IV.     CONCLUSION

Plaintiffs have pleaded facts establishing all elements of their claims and accepting all the allegations as true, Plaintiffs are clearly entitled to the relief they seek.  Therefore, Defendants' Motion to Dismiss should be denied.

                                                        Respectfully submitted,

                                                        THOMSON, RHODES & COWIE, P.C.

Dated September 8, 2020                     /s/ *Thomas B. Anderson, Esquire*
                                                        Thomas B. Anderson, Esquire
                                                        PA I.D. #79990
                                                        THOMSON, RHODES & COWIE, P.C.
                                                        Two Chatham Center, 10th Floor
                                                        Pittsburgh, PA  15219
                                                        (412) 232-3400

                                                        Attorneys for the Plaintiffs