**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIMBERLY PLETCHER, et al., | ) | |
| | ) | Case No. 2:20-cv-00754-NBF |
| Consolidated Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GIANT EAGLE, INC. and C&J | ) | |
| GROCERY CO., LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTION TO DISMISS

Plaintiffs cannot justify claims that seek to make Giant Eagle supermarkets less safe.  The Opposition to the Motion to Dismiss fails to effectively address fatal flaws in their Complaint, and it tries to duck Giant Eagle's primary argument altogether.  The Americans with Disabilities Act permits neutrally-applied policies that protect the health and safety of customers and employees, even if the policy excludes individuals with disabilities.  Giant Eagle's Policy does not even actually exclude Plaintiffs.  At most, Plaintiffs allege purported inconvenience for the sake of protecting the lives of thousands of others and slowing the spread of COVID-19.  Plaintiffs do not and cannot counter this argument.

Instead, ***Plaintiffs strain to read the "legitimate safety requirement" exclusion out of the ADA.***  They argue, without citing any authority, that "modifications <u>must</u> be made" to legitimate safety requirements unless such modification would be unreasonable, change the nature of the business, or pose a direct threat to the health and safety of others.  Plaintiffs then dispute that Giant Eagle made any individualized ***direct threat*** assessment.  Opp. at 5.  This reading of the law improperly conflates the legitimate safety requirement exclusion with the direct threat exclusion.  They are separate and distinct.  *See Masci v. Six Flags Theme Park, Inc.*, Civil Action No. 12-

6585, 2014 U.S. Dist. LEXIS 178666, *26-*27 ("Under the ADA, there are two safety 'defenses' to policies or criteria that are otherwise discriminatory"—(1) legitimate safety requirements and (2) direct threats).

As the court in *Masci* explained, "[t]he Department of Justice (DOJ)…, recognizing that certain goods and services may require the exclusion of disabled persons due to safety concerns, promulgated 28 C.F.R. § 36.301, which provides that 'a public accommodation may impose legitimate safety requirements that are necessary for safe operation.'" *Masci*, 2014 U.S. Dist. LEXIS 178666, at *27 (internal modification mark omitted). Unlike the exclusions for direct threats, the legitimate safety requirement exclusion does not require an individualized assessment, but instead "must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." *Masci*, 2014 U.S. Dist. LEXIS 178666, at *27. Plaintiffs do not contend that the potential spread of COVID-19 in a supermarket—the undisputed reason for Giant Eagle's Policy—poses no actual risk. Nor could they reasonably do so.[1] The ADA permits the Policy even if it "screen[s] out, or tend[s] to screen out, individuals with disabilities." 56 Fed. Reg. 35544-01.[2]

Plaintiffs miss the mark with their citation to an out-of-circuit case, *J.D. v. Colonial Williamsburg Found.*, 925 F.3d 663 (4th Cir. 2019), for the proposition that a legitimate safety

---

[1] As CDC Director Redfield recently testified, "We have clear scientific evidence they work, I might even go so far as to say that this face mask is more guaranteed to protect me against COVID than when I take a COVID vaccine, because the immunogenicity may be 70 percent and if I don't get an immune response, the vaccine's not going to protect me, this face mask will." Peter Sullivan, *CDC director says masks more guaranteed to work than a vaccine*, THE HILL, Sep 16, 2020, https://thehill.com/homenews/administration/516686-cdc-director-says-masks-more-guaranteed-to-work-than-a-vaccine

[2] Plaintiffs allege no facts to support their formulaic allegation that Giant Eagle's Policy is based on speculation, stereotypes, or generalizations about individuals with disabilities. *See* 2d Am. Compl. ¶ 290 ("Giant Eagle has adopted a broad discriminatory policy based on generalizations, stereotypes and politics."). Nor could they. Giant Eagle's Policy applies to everyone.

requirement may still be subject to reasonable modifications under the ADA.  Opp. at 12-13.

Plaintiffs' suggested "reasonable modification" is that they need not comply with Giant Eagle's

Policy at all.  If the ADA required public accommodations to forego applying legitimate safety

requirements to individuals with disabilities as a reasonable modification, it would make no sense

to permit legitimate safety requirements in the first place.  The ADA does not impose such an

illogical outcome.  *See Holmes v. Gen. Dynamics Mission Sys.*, 382 F. Supp. 529, 532 (W.D. Pa.

2019) (holding that the ADA does not "exempt an employee from a requirement to wear safety

equipment that is intended to protect her from serious injury, and to protect the company from

financial harm, because she has a physical condition that prevents her from wearing the safety

equipment.").[3]

     ***Plaintiffs' attempt to avoid the direct threat exclusion fairs no better.***  Opp. at 5-6.  ***First***,

as pleaded, Giant Eagle made the required individualized determination that each Plaintiff would

pose a direct threat to the health and safety of others as soon as they entered the store.  *See, e.g.*,

2d Am. Compl. ¶¶ 76 ("Soost was stopped upon entering the store because she did not have a face

mask."); 90 ("Blair was confronted by an employee who told Blair he needed to put on a mask.");

96 ("Stewart attempted to enter the store but was stopped by a Giant Eagle employee who said she

could not enter without a mask."); 204 ("Blackstone was stopped at the door by an armed guard

who told Blackstone he could not enter the store without a mask.").

     ***Second***, Plaintiffs cannot reasonably dispute the elevated risk presented by allowing certain

individuals to shop in Giant Eagle's stores without wearing a face covering.  In fact, Plaintiffs <u>do</u>

---

[3] *Colonial Williamsburg* is inapposite.  In *Colonial Williamsburg*, a child with a severe food allergy wanted to bring his own prepared food into a restaurant to eat, and the restaurant prohibited him from doing so.  925 F.3d at 667.  By contrast, Plaintiffs here demand the opportunity to shop in stores without wearing a face covering, endangering thousands of other people.

not directly dispute that their proposed modification would increase the risk for Giant Eagle's other customers and Team Members, but instead argue generally that whether each of them would pose a direct threat to the health and safety of others is a factual issue that should be decided later. Opp. at 7-8. The ADA does not entitle Plaintiffs—or require the Court—to suspend reality. *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998) ("We do draw on the allegation of the complaint, but in a realistic, rather than a slavish manner."). No ***reasonable*** factual dispute about the nature of the threat exists here, so Giant Eagle does not have a burden to prove it through discovery.

*Third*, the issue is not, as Plaintiffs contend, whether Giant Eagle can require individuals with a disability to wear a face covering. Opp. at 8. Giant Eagle does not seek to do that. The issue is whether Giant Eagle can require ***anyone entering its stores*** to wear a face covering. It can. Contrary to Plaintiffs' assertions, no government entity currently mandates, or even recommends, that businesses allow customers to enter their stores without wearing a face covering. The CDC and Pennsylvania Department of Health merely advise that anyone who cannot wear a face mask because of a medical condition should not wear one. That is far from a recommendation that people should circulate in public places without a face covering. *See, e.g.*, Pa. Dept. of Health Universal Face Coverings Order FAQ, 7/3/2020 (ECF 34-2), pg. 7 ("The wearing of face coverings, such as a mask, ensures that we as a society can limit the spread of COVID-19 and successfully combat this pandemic; therefore, it is in **everyone's** best interest that all Pennsylvanians comply with this order." (emphasis in original)).

Similarly, the Pennsylvania Health Secretary's Order only states that businesses will not be sanctioned if a customer enters their stores without a required face covering due to a medical condition. That does not translate to a directive for businesses to allow people into their stores

4

without a face covering.[4]  In fact, the Pennsylvania Department of Health specifically contemplates that businesses *will* turn away customers who refuse to wear a face covering.  *See, e.g.*, Pa. Dept. of Health Universal Face Coverings Order FAQ, 7/3/2020 (ECF 34-2), at 8 (stating that a business must deny entry to those not wearing a face covering, but "if a business provides medication, medical supplies, or food, that business **must offer another means for the customer to purchase goods if the customer is unable to wear a face covering**, such as a mask." (emphasis added)).

*Plaintiffs also miss the point by arguing that Giant Eagle's Policy is "unreasonable" because it purportedly denies Plaintiffs the exact same shopping experience as customers who wear face coverings*.  Because the Policy is a legitimate safety requirement and Plaintiffs' proposed modification (*i.e.*, no face coverings for them) would pose a direct threat to the health and safety of others, Giant Eagle is not required to provide them with an identical shopping experience.  *See Masci*, 2014 U.S. Dist. LEXIS 178666, at *27 (explaining that the Department of Justice recognized, in promulgating 28 C.F.R. § 36.301, that "certain goods and services may require the exclusion of disabled persons due to safety concerns").  In any event, Giant Eagle's accommodations for customers who cannot wear a face covering—the use of face shields, curbside and delivery service, and Team Member personal shopping—are well-recognized as sufficient.  *See* cited material at Giant Eagle's Brief in Support of Motion to Dismiss Second Amended Complaint (ECF 34), at 9-10.[5]

_____

[4] The April 15 Order, on which Plaintiffs so heavily rely, sets forth *minimum* safety requirements for businesses to remain open during the pandemic; it does not limit or prevent them from imposing greater safety requirements.  The Pennsylvania Department of Health's July 3 face covering requirement FAQ makes clear that businesses have the discretion to go further—"the Order does not *require* a customer to be turned away if the customer fits within an exception to the Order." *See* Pa. Dept. of Health Universal Face Coverings Order FAQ, 7/3/2020 (ECF 34-2), at 8 (emphasis added).

[5] Plaintiffs mischaracterize the Second Circuit case *Dominguez v. Banana Republic, LLC*, 2020 U.S. Dist. LEXIS 72913 (S.D.N.Y. Apr. 23, 2020) for the proposition that "[d]isabled customers

*Plaintiffs do not dispute that Giant Eagle's Policy permits face shields, rendering their requested modification unnecessary.*   In response to Giant Eagle's point that the Policy accommodates customers by allowing them to wear face shields instead of a cloth face covering, ECF 34 at 8-9, Plaintiffs say little.  They assert, in passing, that "Giant Eagle did not allow face shields as an alternative to masks," citing just a single alleged instance in the early days of the pandemic, where a Giant Eagle Team Member purportedly told a Plaintiff not to wear a face shield.  Opp. at 10 (*citing* 2d Am. Compl. ¶¶ 146-150).  Even if true, this alleged encounter does not save Plaintiffs' claims.  The ADA provides only prospective injunctive relief.  *Harty v. Burlington Coat Factory of Pa., LLC*, CIVIL ACTION NO. 11-01923, 2011 U.S. Dist. LEXIS 64228, *7-*8 (citations omitted).  Hence, Plaintiffs cannot support an ADA claim based on a single purported encounter, now months in the past.  Giant Eagle's Policy *does* allow customers who will not or cannot wear a mask or cloth face covering to wear face shields instead.[6]  Plaintiffs make no allegation suggesting that they cannot comply with this Policy.[7]

Dated: September 16, 2020                                    Respectfully submitted,

                                                                             */s/ Jonathan D. Marcus*
                                                                             Jonathan D. Marcus (PA ID #312829)

---

are entitled to shop inside the stores just like able-bodied customers."). That case concerned whether Banana Republic was required to provide gift cards in braille. *See id*. *17 ("There is simply no legal support for Plaintiffs' assertion that Title III requires Banana Republic to create Brailled gift cards for the visually impaired."). It had nothing to do with whether curbside and delivery service were sufficient alternatives to in-store shopping. It had nothing to do with in-store shopping at all.

[6] *See* Giant Eagle Covid-19 Response Center FAQ, https://www.gianteagle.com/response (ECF 34-3) ("When shopping, guests should wear a face mask or cloth face covering that covers the nose and mouth, which public health authorities agree is an effective tool to reduce the transmission of the coronavirus. If you feel you are unable to wear a face mask or cloth face covering, **a full-face shield that extends to the chin may be worn instead**.") (emphasis added).

[7] Plaintiffs' apparent preoccupation with Giant Eagle's policies in different states has no bearing on Giant Eagle's ability to institute reasonable health and safety measures in Pennsylvania. *See* Giant Eagle's Brief in Opposition to Motion for Preliminary Injunction (ECF 22), at 3-6; 13-15.

jmarcus@marcus-shapira.com
Jeremy D. Engle (PA ID #324008)
engle@marcus-shapira.com

MARCUS & SHAPIRA LLP
One Oxford Centre, 35th Floor
301 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 471-3490
Facsimile: (412) 391-8758

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed and served via operation of the Court's CM/ECF system on September 16, 2020, which will automatically send e-mail notification of such filing to all attorneys of record.

*/s/ Jonathan D. Marcus*
Jonathan D. Marcus
