**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIMBERLY PLETCHER, et al., | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:20-754 |
| | ) | |
| GIANT EAGLE INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

I.    INTRODUCTION

In this consolidated action, Plaintiffs Kimberly Pletcher et al. seek leave of Court to add claims against Defendants Giant Eagle, Inc. and C&J Grocery Co., LLC alleging that the policy requiring all customers to wear masks inside its grocery stores during the COVID-19 pandemic violated their rights under § 504 of the Rehabilitation Act, 28 U.S.C. § 794(a).  (Docket Nos. 115; 115-1).  Defendants maintain that they are not subject to suit under the Rehabilitation Act.  (Docket Nos. 121; 127).   Presently before the Court are Plaintiffs' Motion for Leave to File Fourth Amended Complaint; their proposed Fourth Amended Complaint; Defendants' Brief in Opposition; Plaintiffs' Reply; and Defendants' Sur-Reply.   (Docket Nos. 115; 115-1; 121; 123; 127).  After careful consideration of the parties' positions, and for the following reasons, Plaintiffs' motion [115] is denied.

II.    BACKGROUND

*A. Relevant Allegations*

In their proposed Fourth Amended Complaint, Plaintiffs[1] allege the following facts which are relevant to the pending motion to amend.  (Docket No. 115-1).  Giant Eagle owns and operates grocery stores across Western Pennsylvania including thirty-seven (37) specific stores at issue in this case.  (*Id*. at ¶ 5).  C&J Grocery is an independent retailer which owns and operates a single Giant Eagle store in Ligonier, Pennsylvania.  (*Id*.).  During the events in question, (i.e., in April, May and June of 2020), all Giant Eagle stores in Pennsylvania, including the store in Ligonier operated by C&J Grocery, adopted a policy requiring all customers in Pennsylvania to wear masks while inside the stores and did not permit customers who were not able to wear a mask due to a disability to shop inside the stores without wearing a mask.  (*Id*. at ¶¶ 7-8, 240-41).  Plaintiffs complain that the policy was contrary to Governor Tom Wolf's mandates and that Giant Eagle stores in West Virginia, Ohio, and Indiana were subject to a different policy pursuant to which customers shopping in those states were not required to wear masks.  (*Id*. at ¶¶ 8, 240).  However, Plaintiffs admit that the policy in Pennsylvania stores was amended as of June 12, 2020, at which time Giant Eagle permitted its customers shopping in Pennsylvania to wear face shields, without masks underneath.  (*Id*. at ¶¶ 240, 243).

With respect to the Rehabilitation Act claim, Plaintiffs aver that:

> 6.   Giant Eagle stores are public accommodations as defined in Title III of the ADA and the PHRA.
>
> 7.   The corporate defendants receive Federal funds and are a program or activity receiving Federal financial assistance. Giant Eagle's pharmacies are a primary and integral part of its business. Through its pharmacies, Giant Eagle provides health care services in the form of vaccine clinics, vaccine administration, blood pressure monitoring, medical/pharmaceutical advice, and operates a long-term care pharmacy that partners with long-term care facilities to residents. Giant Eagle receives federal funds through its

---

[1]     There are 58 individual Plaintiffs listed in the proposed Fourth Amended Complaint. (Docket No. 115-1). However, the Court has granted stipulations for dismissal as to two individual Plaintiffs, Tammie Aiken and Robert Haggerty such that 56 individual Plaintiffs remain.  (Docket Nos. 141; 146).  The Court previously dismissed the claims of 10 other Plaintiffs on March 18, 2021.  (Docket No. 72).

> pharmacies from Medicare. Giant Eagle is a Medicare Durable
> Medical Equipment, Prosthetics, Orthotics and Supplies
> ("DMEPOS") Supplier and posts Medicare DMEPOS Supplier
> standards applicable to it on its website, gianteagle.com.

(*Id*. at ¶¶ 6-7).  Plaintiffs have not made any specific allegations that C&J Grocery received federal funds.  (*See generally* Docket No. 115-1).

All of the remaining 56 Plaintiffs allege that they attempted to enter one of the thirty-eight Giant Eagle stores to shop for groceries without wearing a mask between April 19, 2020 and June 27, 2020.  (Docket No. 115-1 at ¶¶ 9-39; 43-191; 195- 234).  They generally complain that they were not permitted to shop without a mask, despite their disabilities, and each detail the individual circumstances which resulted ranging from refusal of service to physical altercations with security, and interventions by police, among other things.  (*Id*.).  With that said, none of the Plaintiffs assert that they are eligible for Medicare or purchased prescriptions, medical devices or other covered items from Giant Eagle using Medicare plans.  (*Id*.).

In total, the proposed Fourth Amended Complaint specifies that 4 of the 38 Giant Eagle stores, including the Ligonier store owned by C&J Grocery, had a pharmacy.  (*Id*. at ¶¶ 73; 97-98; 110-112; 163).  Three of the Plaintiffs aver that they were refused service at a pharmacy, i.e., Geneviere Mellott, Theresa Davis, and, Stephen McRae.  (*Id*. at ¶¶ 73 (Eastgate Giant Eagle); at ¶¶ 97-98 (Jeanette Giant Eagle); at ¶¶ 110, 112 (University Park Giant Eagle)).  Tommy Wynkoop also alleges that the Ligonier Giant Eagle owned and operated by C&J Grocery had a pharmacy and that he often filled prescriptions there, but he only claims that he was refused the ability to shop for groceries. (*Id*. at ¶ 163).  Plaintiffs continue that "[a]t the times that most of the Plaintiffs were refused service and/or entry to Giant Eagle Stores, Giant Eagle required the use of masks, and did not permit customers to wear face shields or other face coverings."  (*Id*. at ¶ 240).  However, none of the Plaintiffs have alleged that they were unable to wear a face shield.  (*Id*. at

¶¶ 9-39; 43-191; 195- 234).  They further state that the mask policy was relaxed during May of 2020 but that "[b]ecause of a threat from the union, Giant Eagle reinstituted its no-exception mask policy thereafter."  (*Id*. at ¶ 221).

After incorporating paragraphs ¶¶ 1-285 in the proposed Fourth Amended Complaint, Plaintiffs allege the following:

> 287. Plaintiffs are individuals with disabilities as set forth herein.
>
> 288. The corporate defendants excluded Plaintiffs from participation and denied Plaintiffs a like experience to shopping inside their stores like non-disabled customers and customers in neighboring states.
>
> 289. Plaintiffs were discriminated against, excluded from participation, and/or denied benefits, by the defendants because of their disabilities.
>
> 290. Plaintiffs were denied meaningful access to Defendants' stores and Defendants failed to modify their mask policy which was reasonable and necessary to provide Plaintiffs with access to Giant Eagle stores and a shopping experience like that experienced by non-disabled customers and all customers in neighboring states.
>
> 291. Plaintiffs were denied the ability to shop in Defendants' stores equally to nondisabled patients.
>
> 292. Defendants intentionally discriminated against Plaintiffs and Defendant's actions were taken with deliberate indifference to Plaintiffs' legal rights.
>
> 293. As a result of Defendant's violations of the Rehabilitation Act, Plaintiffs sustained the following damages:
>
> > a. embarrassment;
> >
> > b. humiliation;
> >
> > c. mental anguish;
> >
> > d. emotional distress; and
> >
> > e. inconvenience.
>
> WHEREFORE, Plaintiffs seek a judgment against the corporate defendants, compensatory damages, reasonable attorney fees including litigation expenses and the costs in this action, and any other relief this Honorable Court deems just and proper.

(Docket No. 115-1 at ¶¶ 287-293).

B.  *Relevant Procedural History*

This litigation has a lengthy procedural history with multiple prior amendments and numerous discovery disputes which have caused significant delays.  (*See generally*, Docket Report, Civ. A. No. 20-754).  This now-consolidated matter was initially brought as multiple individual actions asserting Title III ADA claims for injunctive relief against Giant Eagle, with the lead case brought by Kimberly Pletcher filed on May 26, 2020. (Docket No. 1).  While the vast majority of the allegations in these initial complaints focused on the plaintiffs shopping for groceries, some complained of being unable to shop at Giant Eagle pharmacies. To that end, Stephen McRae filed his individual lawsuit on June 1, 2020 at which time he asserted that he was not permitted to shop for groceries and pick up his prescription medication at the University Park Giant Eagle store in Johnstown, Pennsylvania. *See McRae v. Giant Eagle*, Civ. A. No. 3:20-106, Docket No. 1 (W.D. Pa. June 1, 2020).  Tommy Wynkoop likewise noted in his lawsuit filed 4 days later that he was denied the ability to shop at the Giant Eagle store in Ligonier where he also picked up his prescription medications from the in-store pharmacy.  *See Wynkoop v. Giant Eagle*, Civ. A. No. 20-841, Docket No. 1 (W.D. Pa. June 5, 2020).

On June 17, 2020, the Court granted Giant Eagle's motion to consolidate and joined 35 individual actions into this consolidated matter.  (Docket No. 11).  At the direction of the Court, the 35 consolidated Plaintiffs submitted their Amended Consolidated Complaint on June 29, 2020. (Docket No. 17).  They repeated the allegations from McRae and Wynkoop regarding pharmacies and added that Giant Eagle "is a business that owns, leases, or operates a place of public accommodation within the meaning of the ADA because [Giant Eagle] owns, leases or operates grocery stores and pharmacies which provide food, medicine, and other essential items and services to members of the public." (*Id*. at ¶¶ 60-62, 96, 173).  In this pleading, the 35 consolidated

plaintiffs all asserted claims for retaliation and coercion under Title III of the ADA against Giant Eagle while 6 of them brought tort claims for negligence/reckless conduct or assault/battery. (Docket No. 17).

Plaintiffs later filed a Second Amended Consolidated Complaint on August 21, 2020, at which time they added C&J Grocery as a Defendant and 34 individual plaintiffs, resulting in a total of 69 plaintiffs.  (Docket No. 32).  Two of the newly added plaintiffs, Genevieve Mellot and Theresa Davis, complained that they had been denied access to a Giant Eagle pharmacy.  (*Id*. at ¶¶ 80, 104-08).  Beyond the additions of these parties, the substantive claims remained essentially the same.  (Docket No. 32).  While Defendants did not object to the filing of this amended pleading, they moved to dismiss under Rule 12(b)(6) and also contested a separately filed amended motion for preliminary injunction filed by Plaintiff Josiah Kostek.  (Docket Nos. 22; 33-34; 39).

After receiving briefing and supporting evidence from the parties, the Court denied Kostek's amended motion for preliminary injunction on October 23, 2020.  (Docket Nos. 42, 43). Among other things, the Court found that Kostek was unlikely to succeed on the merits of his Title III ADA claims seeking injunctive relief because Giant Eagle's policy was amended to permit the use of face shields by in-store customers, and he presented no evidence that he was unable to wear a face shield.  (*Id*.).  On the same day, the Court denied, without prejudice, the motion to dismiss filed by Defendants.  (Docket No. 44).  In this Order, the Court found that Defendants' motion was properly converted to a motion for summary judgment as they had improperly relied upon matters outside the pleadings in their Rule 12(b)(6) motion and otherwise raised affirmative defenses which were best decided under Rule 56.[2]  (*Id*.).

---

[2]        The Court notes that Alternative Dispute Resolution ("ADR") has been deferred in this matter, as the parties have declined the Court's invitations to refer this matter to Alternative Dispute Resolution.  (*See e.g.,* Docket No. 45).

A few weeks after these rulings, the Court granted a joint motion filed by the parties permitting the plaintiffs to submit a Third Amended Consolidated Complaint, which was filed on November 16, 2020.  (Docket Nos. 49-51).  This third amended pleading added two more plaintiffs, PHRA claims by all plaintiffs, and, an individual defendant, Matt Faccenda, the manager of the Ligonier store owned by C&J Grocery.  (Docket No. 51).  Once again, McRae, Wynkoop, Mellot and Davis all asserted that they were denied access to pharmacies operated by Defendants. (*Id*. at ¶¶ 84, 108-112, 121-123, 177).  Defendants answered on December 11, 2020.  (Docket No. 59).

At the time of the Court's rulings in October of 2020, the Court anticipated that the parties would engage in a brief period of limited discovery and then submit briefing and argument on a motion for summary judgment filed by Defendants.  (Docket No. 60).  The initial deadline for limited fact discovery was set for March 31, 2021.  (*Id*.).  However, discovery has yet to be completed nearly 17 months after the Plaintiffs' third amendment of their pleadings due to a multitude of factors including, among other things: both counsel's inability to agree on proposed case management orders and other routine matters; discovery disputes requiring the appointment of a Special Master; and, plaintiffs' discovery failures which have resulted in orders compelling production and sanctions against two of the plaintiffs, i.e., Vidovich and Zytnick.   (Docket Nos. 61; 62; 65-70; 73-80; 84-91; 93-94; 98-100).  Given these issues, the Court granted a motion extending the discovery period from March 31, 2021 to June 15, 2021, (Docket No. 69), and then stayed discovery from June 15, 2021 through September 14, 2021, at which time the Court issued its Order on the adjudication of the motions to compel and for sanctions and reopened discovery, (Docket Nos. 83, 136).

Most recently, on January 20, 2022, the Court ordered that the parties shall "work cooperatively to complete outstanding discovery in an effort to secure the just, speedy, and inexpensive determination of this case" and set a deadline of April 22, 2022 to complete fact discovery. (Docket Nos. 135, 137). Yet, on March 8, 2022, Defendants filed a discovery status report alleging that several additional plaintiffs who were recently deposed have committed discovery misconduct including, among other things:

- Plaintiff Conley destroyed and threw away his smart phone days before it was scheduled to be analyzed by third party vendor Bit-x-Bit;

- Several plaintiffs failed to produce relevant photographs, videos, social media posts, and, text messages;

- Several plaintiffs admitted at their depositions that their answers to interrogatories stating that they were unable to wear a mask were false as they had worn masks on planes, while shopping in Giant Eagle stores, and other places.

(Docket No. 147). Defendants have also indicated that they intend to bring more motions for sanctions against several of the Plaintiffs. (*Id.*). Hence, it appears to the Court that the parties may once again be seeking an extension of the discovery deadline.

Returning to the instant motion, Plaintiffs initiated a new lawsuit with their § 504 Rehabilitation Act claims against Giant Eagle and C&J Grocery on October 12, 2021. *See Pletcher, et al. v. Giant Eagle, et al.*, Civ. A. No. 21-1361, Docket No. 1 (W.D. Pa. Oct. 12, 2021). Upon a motion to consolidate filed by Plaintiffs in Civ. A. No. 20-754, and after considering briefing by the parties, the Court dismissed the lawsuit filed at Civ. A. No. 21-1361, without prejudice, to Plaintiffs seeking leave to amend in this case. (Civ. A. No. 21-1361 at Docket No. 4). Thereafter, Plaintiffs filed their motion for leave to amend along with their Proposed Fourth Amended Complaint; Defendants countered with a response in opposition; Plaintiffs replied; and

Defendants submitted a sur-reply.   (Docket Nos. 115; 121; 123; 127).   As the briefing has concluded, Plaintiffs' motion is now ripe for disposition.

III.   LEGAL STANDARD

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc*., 434 F.3d 196, 200 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "It is well-settled that prejudice to the non-moving party is the touchstone for the denial of [leave to file] an amendment." *Cornell & Co. v. Occupational Safety and Health Review Com'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted). "But leave to amend may be denied when there is 'undue delay, bad faith, dilatory motive, prejudice, and futility.'" *Spartan Concrete Prod., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)) (further quotation omitted).   "Given the liberal standard under Rule 15(a), 'the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility.'" *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 123 (W.D. Pa. Sept. 15, 2010) (citing *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007)).   The test under Rule 15(a) "is in the disjunctive, meaning that if [Defendants] meet[ ] [their] burden to prove any one of these elements, the [amendment] should not be permitted." *Id*.; *Spartan Concrete*, 929 F.3d at 115.

IV.   DISCUSSION

Plaintiffs argue that the proposed amendment should be permitted because discovery is not yet completed and the only differences between the pending claims under Title III of the ADA and the proposed claims under § 504 of the Rehabilitation Act are the standing requirements to pursue

injunctive relief noted in *Ames v. Wash. Health Sys. Foot & Ankle Specialists, Inc.*, 2021 WL 4594673 (W.D. Pa. Oct. 6, 2021). (Docket Nos. 115; 123). Plaintiffs continue that the Court did not establish a deadline for the amendment of pleadings but that they could also meet the heightened good cause standard under Rule 16(b)(4) as they allegedly "recently realized that Giant Eagle is the recipient of federal funds through its acceptance of Medicare at its pharmacies and its provision of health care services."[3] (Docket No. 115 at ¶ 6). Defendants counter that the proposed amendments should be denied because § 504 of the Rehabilitation Act does not apply to them, to permit the amendments at this time would prejudice the defense, and the motion should otherwise be rejected given the delays in this case caused by Plaintiffs and their discovery misconduct. (Docket Nos. 121; 127). Having considered the parties' positions, the Court will deny Plaintiffs leave to file the proposed Fourth Amended Complaint because of their undue delay in seeking such amendment, the prejudice to Defendants and the futility of their claims.

### A. *Undue Delay and Prejudice to Defendants*

Given the substantial overlap in the undue delay and prejudice factors, the Court's discussion begins with its evaluation of the parties' arguments as to those factors, starting with the prevailing legal standards.

### 1. Legal Standards

It is well established that:

---

[3]  Plaintiffs contend that the Court did not establish deadlines for amendment of pleadings and that the good cause standard under Rule 16(b)(4) does not apply. While they are technically correct, both parties submitted proposed case managements orders in November of 2020 suggesting deadlines for joinder of additional parties and amendment of pleadings by December 14, 2020. (Docket Nos. 47 (Plaintiffs); 52 (Defendants)). The Court did not include a deadline for joinder of parties and amendment of pleadings because the order was entered on December 21, 2020, or one week after the proposed deadlines had expired. (Docket No. 60). Given same, and for the reasons set forth in the body of this Opinion, Plaintiffs clearly have not shown "good cause" sufficient to justify this untimely amendment. *See Premier Comp. Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) ("[a] party must meet [the Rule 16(b)(4)] standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard.").

> [t]he "undue delay" factor recognizes that a gap between when
> amendment becomes possible and when it is actually sought can, in
> certain circumstances, be grounds to deny leave to amend. While
> simple delay cannot justify denying leave to amend by itself, delay
> that is "undue"—a delay that is protracted and unjustified—can
> place a burden on the court or counterparty, or can indicate a lack of
> diligence sufficient to justify a discretionary denial of leave. As
> there is "no presumptive period in which ... delay becomes
> 'undue,'" the "question of undue delay requires that we focus on the
> movant's reasons for not amending sooner" while "bearing in mind
> the liberal pleading philosophy of the federal rules." "Following this
> principle, we have refused to overturn denials of motions for leave
> to amend where the moving party offered no cogent reason for the
> delay in seeking the amendment."

*Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (internal quotations and citations omitted). "A

district court may exercise its discretion to deny leave to amend when the movant delays

completion of discovery," *Spartan Concrete*, 929 F.3d at 115-16 (citing *Oran v. Stafford*, 226 F.3d

275, 291 (3d Cir. 2000)), and "when the plaintiff[s] [have] had previous opportunities to

amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Cureton*, 252

F.3d at 273) (further citations omitted). The Court of Appeals has "also upheld district courts'

findings of prejudice when adding a new claim would 'fundamentally alter[ ] the proceeding and

could have been asserted earlier.'" *Spartan Concrete*, 929 F.3d at 115-16 (quoting *Cureton*, 252

F.3d at 274).

2. <u>Analysis</u>

In this Court's estimation, the totality of the circumstances of this litigation reveals that the

Plaintiffs have unduly delayed seeking the proposed amendments and to permit the addition of the

§ 504 Rehabilitation Act claims at this late juncture would prejudice Defendants. *See Spartan*

*Concrete*, 929 F.3d at 115-16. To that end, the Court entered its Order consolidating these cases

on June 17, 2020 but Plaintiffs did not seek leave to add causes of action under § 504 of the

Rehabilitation Act until November 16, 2021, a period of approximately 17 months. (Docket Nos.

11; 115).  While this period of delay, by itself, is insufficient to deny the proposed amendments,

Plaintiffs were previously afforded three opportunities to amend their pleadings at which time they

added numerous parties (i.e., 36 plaintiffs and 2 defendants) and several claims asserting new

theories including retaliation under Title III of the ADA; negligence/reckless conduct;

assault/battery; and violations of the PHRA.  *See Bjorgung*, 550 F.3d at 266.

The primary reason provided by Plaintiffs for their delays is that they only "recently

learned" that Giant Eagle accepted Medicare payments and engaged in health care services.

(Docket Nos. 115; 123).  Yet, Plaintiffs did not act diligently in pursuing the amendment because

they had more than enough information to assert this legal theory when they made their prior

amendments in June, August, and/or October of 2020.   (Docket Nos. 17; 32; 51).  Among other

things:

- two of the initial Plaintiffs, McRae and Wynkoop, complained about access to one of Giant Eagle's pharmacies and/or the inability to purchase medications in June of 2020 and several additional plaintiffs who later joined made similar claims;

- all of the Plaintiffs allege that they are disabled and their medical records (including prescription records) were required to be produced as part of discovery;

- Plaintiffs allege that the information about Giant Eagle's pharmacies and health care services are available on its website, (Docket No. 115-1 at ¶ 7); and,

- there have been numerous documents exchanged between the parties and filed in this matter from Giant Eagle's website.

Plaintiffs' counsel also has a duty to investigate prior to pleading claims.  *See J.R. by & Through*

*Redden v. Penns Manor Area Sch. Dist.*, 373 F. Supp. 3d 550, 562, n.4 (W.D. Pa. 2019) ("it is

plaintiff's duty to investigate the  legal  and  factual  bases  of  his  or  her  claims.").

Given that such information was readily available to Plaintiffs, it is clear to the Court that the §

504 Rehabilitation Act claims should have been asserted earlier. *See Spartan Concrete*, 929 F.3d at 115-16.

The other reasons proffered by Plaintiffs likewise do not justify their delays in pursuing their Fourth Amended Complaint. (Docket Nos. 115; 123). In this regard, Plaintiffs suggest that the amendment is necessary because they may not be able to establish standing to continue their claims for injunctive relief under Title III of the ADA following Judge Ranjan's decision in *Ames* and the Court may then decline supplemental jurisdiction over their state law claims. (*Id.*). However, as is explained in the next section of this Opinion, the *Ames* case is distinguishable and does not support the proposed amendment. *See* § IV.B.2., *infra*. Plaintiffs also overlook that this Court held in October of 2020 that Kostek is unlikely to succeed on the merits of his claim for injunctive relief under Title III of the ADA because Giant Eagle amended its policy to permit in-store shoppers to wear face shields and he offered no evidence that he was unable to wear a face shield. (Docket No. 42). Hence, Plaintiffs were on notice for at least a year that their only federal claims were unlikely to succeed here. All told, Plaintiffs have failed to offer a cogent reason for their delays in waiting so long to add this new claim. *See Mullin*, 875 F.3d at 151.

Beyond these matters, the Court retains discretion to deny a proposed amendment when the moving party causes delays in discovery. *See Oran*, 226 F.3d at 291. In *Spartan Concrete*, the Court of Appeals upheld the District Court's ruling that discovery delays for which the parties were equally at fault justified the denial of Spartan's motion seeking leave to amend to add two tort claims. 929 F.3d at 115-16. Here, the record is clear that the discovery delays have been caused by Plaintiffs and what was supposed to be a three-month period of limited discovery has now turned into 15 months and counting. (Docket Nos. 60-62; 65-70; 84-91; 93-94; 98-100; 136-37; 147). The discovery issues led the Court to take the extraordinary steps of appointing a Special

Master to adjudicate discovery disputes and staying discovery for several months while those matters were resolved.  (Docket Nos. 74; 84-91; 93-94).  As is fully detailed in the Report and Recommendations authored by the Special Master and the Court's Order adopting same, fourteen of the Plaintiffs were directed to supplement their discovery responses and productions and two of them were sanctioned.  (Docket Nos. 69; 98-100).  Despite the Court's orders, Defendants allege that the Plaintiffs' discovery misconduct has continued and point out significant deficiencies of at least seven more Plaintiffs in their latest status report which make it exceedingly unlikely that discovery will end by the current deadline of April 22, 2022.  (Docket No. 147).  Since Plaintiffs have caused protracted and unjustified discovery delays, as opposed to following the dictates of Rule 1 and efficiently and cooperatively meeting their discovery obligations, the Court will exercise its discretion to deny them leave to amend their complaint a fourth time. *See Mullin*, 875 F.3d at 151; *see also* Fed. R. Civ. P. 1 (Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

The Court alternatively holds that leave to amend should be denied because Defendants would be prejudiced if the amendment were permitted.  *See Spartan Concrete*, 929 F.3d at 115-16.  On this factor, the Court of Appeals has "considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273 (citation omitted).  Plaintiffs maintain that the elements of a § 504 Rehabilitation Act claims are the same as their ADA claims and that no additional discovery would be necessary, but the Court disagrees.  (Docket Nos. 115; 123).  As is discussed in the next section of this Opinion, Plaintiffs have the burden of pleading and proving that Defendants are subject to suit under the Rehabilitation Act. *See* § IV.B.2., *infra*.  While the Court finds below that Plaintiffs

have failed to sufficiently plead this additional element, if the claims were permitted, both parties would have to be provided the opportunity to conduct discovery as to same, leading to additional costs and preparation to defend against this new theory of liability. Accordingly, leave to amend will be denied because the proposed amendments would "'fundamentally alter[ ] the proceeding and could have been asserted earlier.'" *Spartan Concrete*, 929 F.3d at 115-16 (quoting *Cureton*, 252 F.3d at 274).

       3.  Conclusion as to Undue Delay/Prejudice

For all of these reasons, Plaintiffs' Motion for Leave to File Fourth Amended Complaint is denied given the undue delays in seeking the amendment and the prejudice to the defense if the amendment were permitted at this time.

      *B.  Futility*

The Court's decision that the proposed amendment should be denied in light of the undue delays and prejudice to Defendants described above is sufficient to deny Plaintiffs' motion. *See Graham*, 271 F.R.D. at 123. Although the analysis could end here, the Court continues its discussion and alternatively holds that the proposed amendment seeking to add the § 504 Rehabilitation Act claims is futile.

       1.  Legal Standard

The standard governing futility of amendment is the same as the standard for evaluating motions to dismiss under Rule 12(b)(6). A motion to dismiss tests the legal sufficiency of the complaint. *S.K. v. N. Allegheny Sch. Dist.*, 146 F. Supp. 3d 700, 708 (W.D. Pa. 2015) (Conti, C.J.) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)). To survive a motion to dismiss, plaintiffs do not need to plead detailed factual allegations; rather, they must only show a plausible entitlement to relief. *See id.* at 709 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (citing *Twombly*, 550 U.S. at 556).

When assessing the plausibility of a complaint, the United States Court of Appeals for the Third Circuit has articulated a three-step process. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). The first step involves articulating the necessary elements of the plaintiffs' claims. *See id.*; *see also Iqbal*, 556 U.S. at 675. The second step scrutinizes the allegations in the complaint, calling for the court to identify and disregard any "formulaic recitation of the elements of a claim or other legal conclusion" and "allegations ... [that] are ... so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Connelly*, 809 F.3d at 789-90 (alteration, internal quotation marks, and citations omitted). The third and final step requires the Court to evaluate the remaining allegations, assuming their veracity and viewing them in the light most favorable to the plaintiffs, to determine whether they have plausibly pled a claim. *See id.*

2. Analysis

"The Rehabilitation Act is a federal anti-discrimination statute that Congress fashioned to regulate only certain public entities and recipients of federal funds." *Bamat v. Glenn O. Hawbaker, Inc.*, No. 4:18-CV-01898, 2019 WL 1125817, at *3 (M.D. Pa. Mar. 12, 2019). The relevant portion of the statute provides that "[n]o otherwise qualified individual with a disability [...], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "To establish a violation of Section 504, a plaintiff must prove that (1) he or she is handicapped under the Act; (2) qualified for the program of benefits from

which he or she had been excluded; (3) the program receives federal financial assistance; and (4) he or she was precluded from participating in the program because of their handicap." *Lloyd v. Hilton Garden Inn*, No. 20-CV-4070, 2021 WL 2206291, at *5 (E.D. Pa. June 1, 2021) (citing *Sullivan v. Pittsburgh*, 811 F.2d 171, 181-82 (3d Cir. 1987)).   As the Defendants are private corporations, Plaintiffs have the additional burden of pleading and proving that those entities constitute a "program or activity" within the meaning of the Rehabilitation Act.  *Bamat*, 2019 WL 1125817, at *3.  "Section 504's 'program or activity' requirement extends to corporations if the corporation 'is principally engaged in the business of providing education, health care, housing social services, or parks and recreation' or 'if assistance is extended to such corporation ... as a whole.'"  *Id.* (citing 29 U.S.C. § 794(b)(3)(A) and (B)).

It is this Court's opinion that Plaintiffs have failed to plead sufficient facts to state plausible claims that § 504 of the Rehabilitation Act applies to Defendants.   Initially, Plaintiffs do not contend that financial assistance has been extended to the "whole" of the entire corporations. (Docket No. 115-1).  As to the other alternative, "[t]he statute does not define further what it means to be 'principally engaged' in one of the delineated businesses, or what any of the specific businesses, e.g., ['health care,'] entails[.]" *Drachman v. Bos. Sci. Corp.*, 258 F. Supp. 3d 207, 212 (D. Mass. 2017) (quoting *Doe v. Salvation Army in U.S.*, 685 F.3d 564, 568 (6th Cir. 2012)).  "'Principally engaged' has been interpreted in other contexts to mean 'the primary activities of a business, excluding only incidental activities.'" *Runnion ex rel. Runnion v. Girl Scouts of Greater Chic. & Nw. Ind.*, 786 F.3d 510, 527 (7th Cir. 2015) (citing *Doe*, 685 F.3d at 571).  Plaintiffs have not pointed to any persuasive caselaw extending § 504 to Giant Eagle, or any other grocery store or retailer providing similar goods and services.  Several other courts have recognized that § 504 does not apply to these types of entities.  *See e.g., Rosario-Rivera v. Wal-Mart de Puerto Rico,*

2021 WL 3639713, at *2-3 (D.P.R. Aug. 17, 2021) (dismissing claim under § 504 as threadbare allegation that Wal-Mart received federal funding insufficient to plead plausible claim); *Bell v. Stop & Shop Supermarket*, No. CV 18-13, 2020 WL 6140545, at *2 (D.V.I. Oct. 19, 2020) (§ 504 does not apply to supermarket); *Vasquez v. Smith's Food & Drug Centers, Inc.*, No. CV-14-2339-TUC-DCB, 2017 WL 1233840, at *5 (D. Ariz. Apr. 4, 2017) (§ 504 does not apply to food and drug store).  As such, the Court must look to the well-pled facts in the proposed pleading to determine if they have stated plausible claims for relief.

In their proposed Fourth Amended Complaint, Plaintiffs plead in conclusory fashion that the corporate defendants receive federal financial assistance in the form of Medicare payments. (Docket No. 115-1 at ¶ 7).  Plaintiffs make no specific allegations about C&J Grocery but state that "Giant Eagle's pharmacies are a primary and integral part of its business."  (*Id.*).  They continue that "[t]hrough its pharmacies, Giant Eagle provides health care services in the form of vaccine clinics, vaccine administration, blood pressure monitoring, medical/pharmaceutical advice, and operates a long-term care pharmacy that partners with long-term care facilities to residents." (*Id.*).  However, these broad assertions are undermined by the facts set forth in the remainder of the pleading which make clear that Giant Eagle is principally engaged in selling groceries to its customers.  (Docket No. 115-1).  To that end, Plaintiffs plead that Giant Eagle owns and operates "grocery stores" and all 56 of the remaining Plaintiffs allege that they were attempting to shop for groceries on the dates in question.  (*Id.* at ¶¶ 5; 9-39; 43-191; 195-234).  At the same time, Plaintiffs aver that four of the 38 stores involved in this case had a pharmacy and only three Plaintiffs state that they were also at the store to pick up prescriptions from a pharmacy.  (*Id.* at ¶¶ 73; 97-98; 110-12; 163).  Further, none of the Plaintiffs assert that they were on a Medicare plan or attempted to use such benefits.  (*Id.* at ¶¶ 5; 9-39; 43-191; 195-234).  Therefore, these

allegations are insufficient to support plausible claims that either Giant Eagle or C&J Grocery were principally engaged in the provision of health care services. *See* 29 U.S.C. § 794(b)(3)(B).

Plaintiffs rely upon *Ames v. Washington Health Center Foot and Ankle Specialists* in support of their position, but that matter is distinguishable. 2021 WL 4594673, at *3-4. In *Ames*, there was no objection by the medical facility that it was subject to the Rehabilitation Act and that entity did not contest that it received federal financial assistance and was principally engaged in the provision of health care. *See id.* As such, the Court did not analyze the relevant statues and caselaw noted above to determine if § 504 of the Rehabilitation Act applied. *Id.* With that said, the facts of *Ames* provide a straightforward application of the test described above because the plaintiff made an appointment for treatment on her foot at the defendant medical facility which denied her preferred accommodation that she attend her appointment without wearing a facemask due to a claimed disability.[4] *Id.* Therefore, *Ames* does not persuade the Court that § 504 of the Rehabilitation Act applies to Defendants in this case.

Defendants also maintain that the proposed amendment is futile because Plaintiffs have not sufficiently pled that their disabilities were the "sole" cause of the discrimination. (Docket Nos. 121; 127). "Because the [Rehabilitation Act's] causation requirement requires disability to be the sole cause of discrimination, an alternative cause is fatal to an [Rehabilitation Act] claim because disability would no longer be the sole cause." *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 236 (3d Cir. 2013) (citing *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 125 (3d Cir.1998)). "In other words, Plaintiffs must show that they have been deprived of a benefit or opportunity provided to non-disabled [individuals] or a group of [individuals] with some other

---

[4]       On summary judgment, Judge Ranjan held that Ames had failed to establish standing to pursue her claim for injunctive relief under Title III of the ADA because her foot condition had healed, and she presented no evidence that she intended to return to the facility. *Ames*, 2021 WL 4594673. However, the Court found genuine disputes of material fact as to the § 504 Rehabilitation Act claim for damages. *Id.* at *4-5. The case remains pending.

category of disability, because of their disability." *Id*. at 235-36.  Here, while Plaintiffs assert that they were discriminated against because of their disabilities, they admit that the no-exception mask policy applied to all customers at Giant Eagle stores in Pennsylvania and that no one was permitted to shop within those stores without a mask during the relevant time-period.  (*Id*. at ¶¶ 7-8; 240-41).  Their allegations also include that Giant Eagle adopted its no-exception mask policy based on "orders from the various Health Secretaries in the states where its stores are located," "generalizations, stereotypes, and politics," and, was reinstituted after a brief pause following "a threat from the union." (Docket No. 115-1 at ¶¶ 221, 239-40).  Therefore, Plaintiffs' admissions throughout the proposed pleading attributing the no-exception mask policy to other causes undermines their Rehabilitation Act claims as well.

### 3.  Conclusion

Having carefully considered the allegations set forth in the proposed Fourth Amended Complaint, Plaintiffs have failed to state a plausible claim for relief that Defendants are subject to § 504 of the Rehabilitation Act.  Accordingly, Plaintiffs' Motion is also denied on this alternative basis.

### C.  *Title III ADA Claim*

Although this issue has not been raised by the parties, the Court questions the viability of the Plaintiffs' claims for injunctive relief under Title III of the ADA at this stage of the proceedings.  As noted above, the Court previously held that Kostek was unlikely to succeed on the merits of his Title III ADA claim for injunctive relief because the Giant Eagle policy had been amended to permit customers to wear face shields within the stores and he offered no evidence that he was unable to wear a face shield.  (Docket No. 42).  Plaintiffs' Third Amended Complaint was filed in November of 2020 after this policy change took place in July of 2020, but they did

not plead any facts mentioning this change.   (Docket No. 51).   In the proposed Fourth Amended Complaint, Plaintiffs specifically alleged that the Giant Eagle policy changed in July of 2020 to permit the use of face shields but none of the 56 remaining Plaintiffs have asserted that they are unable to wear face shields.   (Docket No. 115-1 at ¶¶ 5; 9-39; 43-191; 195-234).   Given same, if the proposed pleading had been permitted, this Court would have held that Plaintiffs have effectively pled themselves out of court on their claims for injunctive relief under Title III of the ADA and dismissed those claims at Counts I and II.

Beyond these pleading deficiencies, the Court is aware of the recent rulings in the mask litigation involving two local school districts before the Court of Appeals.   In *John Doe 1 et al. v. Upper Saint Clair Sch. Dist., et al*, and *John Doe 1 et al. v. North Allegheny Sch. Dist.*, App. Nos. 22-1141, 22-1160 & 22-1299, (3d Cir. Mar. 1, 2022)), the District Courts considered similar disputes involving universal mask policies with Judge Horan granting an injunction and ordering that the universal masking remain in place at North Allegheny and Judge Stickman denying an injunction in the Upper Saint Clair case.   Both cases went on appeal at which time the Court of Appeals ordered the parties to file supplemental briefs addressing why the appeals were not moot following the revised masking guidance issued by the Centers for Disease Control and Prevention on February 25, 2022.   After reviewing the supplemental briefs, the Court of Appeals dismissed the appeals challenging the injunctions, as moot, vacated the District Court opinions and directed the District Courts to "dismiss without prejudice the complaints, as moot."   *Id.*

In line with these developments, the Court will issue a rule to show cause why Plaintiffs' claims for injunctive relief under Title III of the ADA should not be dismissed and why the Court should not decline to exercise supplemental jurisdiction over the remaining state law claims.

V.     CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Leave to Amend is denied.   An appropriate

Order follows.

_s/Nora Barry Fischer_
Nora Barry Fischer
Senior U.S. District Judge

Dated: March 17, 2022

cc/ecf: All counsel of record.