**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIMBERLY PLETCHER, et al., | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:20-754 |
| | ) | |
| GIANT EAGLE INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

I.    INTRODUCTION

There are 49 Plaintiffs remaining in this consolidated action involving Plaintiffs Kimberly Pletcher et al.'s challenge to Defendants Giant Eagle et al.'s ("Giant Eagle") COVID-19 mask policy. (Docket No. 51). The parties recently reported that they have now completed the Plaintiffs' depositions. (Docket Nos. 193 at n.1; 198). As such, the remaining matters include: the resolution of the rule issued by the Court on the parties to show cause why the Plaintiffs' only federal claims under Title III of the ADA should not be dismissed, as moot, and the Court should not decline to supplemental jurisdiction over the state law claims; and, two motions for discovery sanctions filed by Giant Eagle against 21 of the Plaintiffs seeking dismissal of their claims, with prejudice, attorneys' fees and costs and/or other relief. (Docket Nos. 150; 166; 192). This Memorandum Opinion focuses on the latter motions for discovery sanctions.

Presently before the Court are Giant Eagle's Second and Third Motions for Sanctions, Plaintiffs' Responses in opposition, Giant Eagle's Replies and Plaintiffs' Sur-Reply as to the second motion. (Docket Nos. 166; 171; 172; 181; 183; 192; 193; 200; 201; 204). In its Second Motion, Giant Eagle seeks sanctions against Plaintiffs Lisa Brannigan, Nathanael Dollar, Kristie Harnish, Tommy Wynkoop, Nicholas Conley, Kerry Palladino, Jeffrey Coulson, Sharon Burton,

Stephen McRae, Molly Shirk, Carol Stevanus, and Robert Ree.   (Docket Nos. 166; 171).  In the Third Motion, Giant Eagle asks for sanctions against Plaintiffs John Durso, Amy Ulery, Rita Gorzock, Tracy O'Connor, Teresa Davis, Kathleen Cunningham, Owen Burk, Katherine Duckstein, and Jordan Rhoat.  (Docket Nos. 192; 193).  As noted, Plaintiffs oppose the imposition of any form of sanctions against these 21 individual Plaintiffs.  (Docket Nos. 172; 200).  The Motions have been fully briefed and are now ripe for disposition.  (Docket Nos. 166; 171; 172; 181; 183; 192; 193; 200; 201; 204).  After careful consideration of the parties' arguments and in light of the prior rulings in this case as well as the relevant standards, Giant Eagle's Motions [166] [192] will be denied as the Court finds them to be procedurally deficient and otherwise request relief which is not supported by the record.  The Court's rationale follows.

II.     BACKGROUND

Because the Court writes primarily for the parties, and has set forth the facts in its prior decisions, it focuses on those facts necessary to resolve the pending motions.  (Docket Nos. 42; 98; 99; 112; 149).  In this consolidated action, Plaintiffs are challenging Giant Eagle's former policy which required all Pennsylvania customers to wear masks or other face coverings while inside their grocery stores at times during the COVID-19 pandemic and Giant Eagle's denials of their requested accommodations that they be permitted to shop without masks or other face coverings due to alleged disabilities.   (Docket No. 51).  Discovery has been contentious, to say the least, and the Court previously referred the parties' numerous discovery disputes to Special Master Mary Jo Rebelo, Esq.  The Special Master met with the parties in several sessions during 2021 in an effort to mediate their disagreements and then issued Reports and Recommendations which were adopted by the Court and are incorporated herein.  (Docket Nos. 98; 99; 112).

Most relevant here, Giant Eagle filed companion motions to compel and for sanctions last year which were granted, in part, and denied, in part. (Docket Nos. 98; 99). Among other things, the Court held that Giant Eagle had shown that the discovery production as to 9 of the Plaintiffs (Debbie Vidovich; Nicholas Conley; Douglas Janaszek; Paul Sheperd; Thomas Bensor; Margaret Dunn; Vicki Parker; Tommy Wynkoop; and Ben Zytnick) was deficient and since they were unsophisticated individuals, ordered them to meet with Plaintiff's counsel's paralegal to review and produce any responsive text messages, emails, private Facebook messages, or other social media posts/messages/blogs that had yet to be produced. (Docket No. 98). However, the Court concluded that Giant Eagle did not meet its burden of proof to show that any of the other Plaintiffs had failed to produce responsive documents and messages, rejecting Giant Eagle's speculative theory that since it had identified deficiencies as to those specific individuals that all of the other Plaintiffs had similarly failed to produce responsive documents. (*Id*.). The Court ordered that if Giant Eagle desired to conduct a more thorough search of Plaintiffs' text messages, Facebook accounts or private emails, then Giant Eagle could engage a third-party vendor to do so at its own cost because "considerations of proportionality counsel against compelling a further production than that recommended […] at Plaintiffs' cost." (*Id*. at 16).

With respect to the motion for sanctions, the Court largely denied the relief requested, including Giant Eagle's demand that the claims of 9 Plaintiffs, (Debbie Vidovich; Nicholas Conley; Douglas Janaszek; Paul Sheperd; Holly Pulling; Josiah Kostek; Clyde Piovesan; Tommy Wynkoop; and Ben Zytnick), be dismissed, with prejudice, and that Plaintiffs pay for the costs of taking depositions of Janaszek and Zytnick. (Docket No. 99). The Court granted limited relief to Giant Eagle, directing Vidovich and Zytnick to pay sanctions "in the form of an award of reasonable attorneys' fees and costs incurred in preparing for and participating in two (2)

conferences with the Discovery Special Master, the preparation of the Motion to Compel, and the preparation of the Motion for Sanctions as a result of their respective failures to timely produce documents." (*Id.*).  The Court found that Vidovich had "wrongfully withheld her notes regarding phone calls with Giant Eagle executives and various agencies in addition to her video recordings of her trips to Giant Eagle stores." (*Id.* at 6).  The Court also concluded that it could not determine the sincerity of Zytnick's belief that no responsive documents existed and in light of his concession that he had not conducted a search, compelled him to conduct a reasonable search and to pay the fees associated with the motion.  (*Id.*).  As noted, the sanctions against Vidovich and Zytnick related to the corresponding orders compelling them to conduct searches and produce discoverable materials.  Although the specific citation is not set forth in the Court's Order, the sanctions imposed against Vidovich and Zytnick were authorized under Rule 37(a)(5)(A) and/or 37(a)(5)(C), which grant the Court discretion to award the movant reasonable expenses, including attorneys' fees in bringing a motion to compel which is granted in whole or in part.  *See* Fed. R. Civ. P. 37(a)(5)(A), (C).

Following the resolution of these motions, the Court's Order required the Plaintiffs to make a supplemental discovery production by October 4, 2021.  (Docket No. 100).  It is undisputed that a supplemental production was made by Plaintiffs at that time.  (Docket No. 204-1 at 3).  The lawyers engaged in some email correspondence in mid-October wherein counsel for Giant Eagle requested to search the devices of 7 Plaintiffs, (i.e., Wynkoop, Conley, Parker, Janaszek, Shepherd, Quintiliani, Vidovich) and noted some deficiencies in the supplemental production.  (Docket No. 147-1 at 2-6).  Plaintiffs did not respond to these inquiries.  (Docket No. 204-1 at 3).  Yet, Giant Eagle did not bring it to the attention of the Court at that time.

The parties did not communicate concerning discovery for several months as they apparently focused on litigating other motions before the Court including an ongoing dispute about whether counsel or Vidovich and Zytnick should pay the sanctions and Plaintiffs' initiation of a new lawsuit/leave to amend their complaint to add a claim under the Rehabilitation Act.[1] As Giant Eagle's counsel now reports:

> On January 10, 2022, Giant Eagle's counsel followed up on his earlier email and suggested "addressing these issues now so the parties are in a position to move forward with discovery when the Court rules on Plaintiffs' motion for leave to amend." Plaintiffs' counsel did not respond, but on January 11, 2022, his paralegal replied that "we had produced everything that we had and were able to obtain from the plaintiffs." Giant Eagle's counsel asked if Plaintiffs intended to address the specific issues it identified, as Giant Eagle "would like to avoid bothering the Court or Special Master with issues that the parties should be able to resolve without assistance." Plaintiffs did not respond.

(Docket No. 204-1 at 3 (footnote omitted)).  Once again, the Court was not alerted to any issues by the parties.

On January 20, 2022, the Court issued an order regarding the ongoing dispute over the payment of attorneys' fees.  (Docket No. 135).  The Court's Order further stated that "the parties are directed to work cooperatively to complete outstanding discovery in an effort to secure the just, speedy, and inexpensive determination of this case" and directed the parties to confer and file a Joint Status Report by January 24, 2022. (*Id*.). In their Joint Status Report, the parties listed the depositions taken to date and advised that Plaintiffs did not plan to take additional fact depositions. (Docket No. 136).  For its part, Giant Eagle stated that it "intend[ed] to take approximately 48

---

[1]      Defense counsel is incorrect to the extent that they suggest that discovery was stayed by virtue of the filing of the motion for leave to amend by Plaintiffs.  To the contrary, this Court's Practices and Procedures state that "[t]he filing of a dispositive motion does not automatically stay discovery. A stay may be sought by motion, but will only be granted if the right to relief under the dispositive motion is clear or there is some other good reason."  *Practices and Procedures of Judge Nora Barry Fischer* at § III.B.4.  The parties never moved for a stay of discovery and should have been working together diligently in an effort to complete the outstanding discovery in this case.

additional depositions of Plaintiffs, including an additional deposition of Plaintiff Vidovich." (*Id.*

at 2). As to document production and written discovery, they jointly reported:

> [t]he Parties have agreed to address certain questions raised by Giant Eagle about Plaintiffs' October 2021 supplemental production. These questions may be answered by certain Plaintiffs providing access to their devices and accounts to third-party vendor Bit-x-Bit, pursuant to the Court's Order. Plaintiffs have agreed to meet and confer regarding any remaining issues after such searches occur.

(*Id.*). Since there were no apparent disputes to be addressed, the Court largely adopted their

proposals and ordered the following:

- By February 15, 2022, Plaintiffs will provide Giant Eagle's third-party electronic discovery vendor with the electronic devices and access to the email and social media accounts of any Plaintiffs for whom Giant Eagle requests such devices and access. Should Giant Eagle thereafter believe any issues remain with Plaintiffs' October 2021 supplemental production, the Parties shall meet and confer regarding such issues no later than March 1, 2022.

- By April 22, 2022, Plaintiffs will make available for depositions all Plaintiffs who have not previously been deposed in this case, as well as Plaintiffs Vidovich and Bair.

(Docket No. 137).

The established deadlines for the Plaintiffs to produce their devices by February 15, 2022

and for the parties to meet and confer regarding the supplemental production by March 1, 2022

expired without any requests for an extension. On March 8, 2022, Giant Eagle filed "Defendants'

Status Report and Request for the Court's Guidance" wherein it noted that the parties had met and

conferred on February 25, 2022. (Docket No. 147). Giant Eagle asserted that "[t]his process has

already revealed additional overt discovery misconduct by several more Plaintiffs, including

spoliation, admittedly false discovery responses, and a failure to search for or produce responsive

documents" by several plaintiffs. (*Id.* at 1). Among others, Giant Eagle complained that:

- Plaintiff Conley reportedly smashed and "threw away" his phone only days before his scheduled meeting with third-party vendor Bit-x-Bit [on March 1, 2022], making it impossible for Giant Eagle to collect electronic data from the phone.

…

- Plaintiff Brannigan testified that she wore a face mask for a majority of a flight to and from Florida, something she failed to note in her discovery responses that she verified just three months later. She claimed she must have forgotten about it.

(Docket No. 147 at 1, 3 (footnotes omitted)). [2] Giant Eagle stated that it intended to seek sanctions against these Plaintiffs but still wanted to move forward and depose more than forty individual Plaintiffs. (*Id.* at 3). Giant Eagle added that it would "not burden the Court with piecemeal motions if the Court would prefer to address the discovery misconduct at a later date and in a more consolidated fashion." (*Id.* at 3). Plaintiffs did not file a response to this submission. As is its general practice, the Court did not offer any input as to how Giant Eagle should litigate its case and left it to counsel to follow the applicable Federal Rules of Civil Procedure, Local Rules of Court, its Practices and Procedures, and the Orders issued in this case.

On March 17, 2022, the Court denied Plaintiffs' motion for leave to amend seeking to add the Rehabilitation Act claim and issued "a rule […] upon the parties to show cause by March 31, 2022 why [Plaintiffs'] claims under Title III of the ADA should not be dismissed and why the Court should not decline to exercise supplemental jurisdiction over the remaining state law claims." (Docket No. 150). Plaintiffs filed a response the following morning indicating that they "agree[d] that the proper remedy is to dismiss the claims for injunctive relief under Title III of the ADA. There being no other basis for federal jurisdiction, Plaintiffs cannot show cause why this Honorable Court should not decline to exercise supplemental jurisdiction over the remaining state

---

[2] The March 8, 2022 Status Report also noted discovery issues with a number of Plaintiffs who have now been dismissed from this lawsuit, (i.e., Vicki Parker, John Blackstone, Drew Mangus, and Paula Soost), or are not the subject of the sanctions motions, (i.e., Polly Quintilani). (Docket No. 147).

law claims" and dismiss them, without prejudice.  (Docket No. 152).  Plaintiffs also contacted defense counsel and cancelled depositions which were scheduled the following Monday.  (Docket No. 153).  Later that afternoon, Giant Eagle filed an emergency motion for a status conference. (*Id*.).  The Court immediately convened a telephone conference with counsel at which time Giant Eagle insisted that the depositions go forward, and Plaintiffs sought to continue them due to a number of factors, including staffing issues at counsel's law firm caused by a number of retirements by lawyers and an unexpected medical leave of another lawyer.   (Docket Nos. 154; 155; 160).

The Court considered the parties' positions, reviewed their respective schedules, and issued an order scheduling the remaining depositions on dates where counsel for the parties were mutually available.  (Docket Nos. 154; 160).  At the same time, the Court encouraged the parties to consider mediating these claims and while Plaintiffs expressed interest in same, Giant Eagle remained unwilling to engage in ADR as it had been throughout the duration of this case. (Docket No. 160 at 24-25).  The Court volunteered that it would stay the discovery deadlines in order to facilitate the negotiations but that offer was not taken up. (*Id*. at 28).   The attorneys were further directed to contact the Court if any issues arose with the deposition schedule or discovery.  (*Id*.).

The lawyers conducted a meet and confer session on the following Monday, March 21, 2022 which was not brought to the attention of the Court at that time.[3]  The details are more fully set forth below but their correspondence generally indicates that Giant Eagle asserted that several Plaintiffs had committed discovery misconduct. (Docket Nos. 171-1; 172-2). Giant Eagle threatened to file a motion for sanctions but offered to not file the motion if these Plaintiffs agreed

---

[3]        The March 25, 2022 correspondence from Giant Eagle's counsel also noted discovery issues with a number of Plaintiffs who have now been dismissed from this lawsuit, (i.e., John Blackstone, Drew Mangus, Vicki Parker, Paula Soost), or are not the subject of the sanctions motions, (i.e., Alex Sakelos, Tony Kirby, Polly Quintilani). (Docket No. 171-1 at 2).

to dismiss their claims, with prejudice.  (*Id.*).  Plaintiffs' counsel responded on March 31, 2022 and provided further information concerning searches which certain of the Plaintiffs had conducted after their depositions and produced additional documents.  (Docket No. 171-2 at 2).  On April 5, 2022, five Plaintiffs filed stipulations for dismissal, with prejudice, all of which were granted by the Court.  (Docket Nos. 161-164).  Giant Eagle noted in its correspondence that there were still outstanding depositions for many additional plaintiffs and that it "reserved the right" to bring motions for sanctions against any of these individuals "without notice" to opposing counsel. (Docket No. 171-2 at 2).  The record reveals that Giant Eagle did just that as there were no further meet and confer sessions between counsel leading up to the filing of the pending motions for sanctions which were submitted on April 13, 2022 and June 10, 2022, respectively.

It has been reported to the Court that the parties completed all remaining depositions by July 5, 2022.  (Docket Nos. 193 at 1, n.1; 198).  On June 20, 2022, after most of the briefing as to these motions was concluded, Giant Eagle filed a Supplemental Certificate of Conferral which states that counsel conferred on the telephone regarding these motions on February 25, 2022 and March 21, 2022.  (Docket No. 197).  On June 30, 2022, Giant Eagle also filed its "Summary of Efforts to Obtain Written Discovery" which disclosed, for the first time, that the February 25, 2022 and March 21, 2022 meet and confer sessions included counsel's discussion of an unresolved legal dispute which was never brought to the attention of the Court prior to the filing of these motions. (Docket No. 204-1).  To that end, the parties conferred "regarding Plaintiffs' failure to search for and produce responsive materials and provide complete and accurate written discovery. Plaintiffs' counsel asserted the position that Plaintiffs had no unmet discovery obligations since the Court ordered that Giant Eagle may hire an outside vendor to search Plaintiffs' devices."  (*Id.* at 3).

As noted, Giant Eagle's motions for sanctions have been exhaustively briefed and, as the parties have not requested argument, the Court considers the motions to be ripe for disposition. (Docket Nos. 166; 171; 172; 181; 182; 192; 193; 200; 201; 204).

III.   DISCUSSION

In its motions, Giant Eagle argues that discovery sanctions should be imposed against 21 of the 49 remaining Plaintiffs arguing that their claims should be dismissed, with prejudice, or that alternative sanctions should be imposed including adverse inferences and/or the payment of fees and costs.   (Docket Nos. 166; 171; 192; 193).   Plaintiffs naturally oppose the requested relief. (Docket Nos. 172; 200).   Having carefully considered the parties' positions, and consistent with the prior rulings in this case, the Court will deny Giant Eagle's motions because: A.) counsel failed to sufficiently meet and confer prior to bringing these motions; B.) Giant Eagle did not set forth the specific provisions of Rule 37 and other authority supporting the sanctions it seeks against these Plaintiffs; and C.) the relief requested is inconsistent with the prior rulings and otherwise inappropriate.   The Court's analysis follows.

A.   *Deficiencies in Meet and Confer*

At the outset, Giant Eagle's Motions must be denied because the record before the Court demonstrates that it failed to meet and confer as to all of the discovery disputes raised in its motions and to submit corresponding certificates of conferral indicating that its counsel met in good faith with Plaintiffs' counsel in an effort to resolve their disputes prior to bringing the motions.

This Court's Practices and Procedures state that it "expects counsel to avoid the necessity for the filing of […] Rule 37 Motions through the exercise of good professional judgment, common courtesy and civility," and "requires that all discovery motions […] must be accompanied by a certificate of conferral [and that] [c]ounsel shall meet and confer in an effort to resolve their

10

disputes prior to filing such motions. [...] **E-mail communications are not sufficient**." *Practices and Procedures of Judge Nora Barry Fischer, effective 2/16/22*, at §§ II.N, and III.B.6, *available at:* https://www.pawd.uscourts.gov/sites/pawd/files/Fischer_Practices_Procedures_2_16_22.pdf (last visited 8/22/2022).[4]  "[T]his Court fully promotes the meet and confer process as an efficient means to resolve discovery disputes" and/or to narrow such disputes before they are presented to the Court. *Volkay v. Ct. of Common Pleas of Allegheny Cnty.*, Civ. A. No. 14-193, 2015 WL 6824024, at *1 (W.D. Pa. Nov. 6, 2015).  As this Court has held repeatedly, "if a party feels that it has not received disclosures or discovery responses to which it claims it is entitled, it should first meet and confer in person or by telephone in an attempt to resolve the issue, and if that does not resolve the dispute, reach out to the Court by requesting a status conference or filing a motion to compel." *Vay v. Huston*, Civ. A. No. 14-769, 2016 WL 1408116, at *15 (W.D. Pa. Apr. 11, 2016).

Here, Giant Eagle did not attach and contemporaneously file a certificate of conferral to either of its motions for sanctions and those motions can be summarily denied on that basis alone. With that said, Giant Eagle admits in the Supplemental Certificate of Conferral that it filed on June 20, 2022 that its counsel only met and conferred with Plaintiffs' counsel on February 25, 2022 and March 21, 2022.  (Docket No. 197).  Giant Eagle broadly proclaims in this supplemental certificate that "counsel met and conferred in an attempt to resolve the issues raised in their Second and Third Motions for Sanctions."  (*Id.*).  However, the other materials in the record make clear that the conferral which took place on those dates did not pertain to all of the 21 Plaintiffs against whom sanctions are now sought; did not involve all of the issues which are raised in these motions; and, included discussion of a legal dispute which was not timely brought to the attention of the Court.

---

[4]      The Court even provides sample certificates of conferral as exhibits to the Practices and Procedures which are available for counsel to use in support of discovery motions.

Initially, the motions for sanctions relate to alleged deficiencies and/or misconduct committed at or during the depositions of 21 individual Plaintiffs but only 6 of the 21 were deposed prior to March 21, 2022.  Therefore, Giant Eagle could not have met and conferred as to any of the 15 Plaintiffs who were deposed after that March 21, 2022 session took place between counsel. Indeed, Giant Eagle's counsel stated in an email dated April 4, 2022 that "Giant Eagle reserves the right to seek sanctions against the remaining plaintiffs without further notice should it know of or learn of relevant misconduct" and there is no evidence that a conferral session took place after March 21, 2022.  (Docket No. 171-2 at 2).  Accordingly, the Court finds that Giant Eagle failed to meet and confer with respect to the following Plaintiffs named in the Second Motion for Sanctions: Molly Shirk (3/25/22 deposition); Tommy Wynkoop (4/1/22 deposition); Kristie Harnish (4/5/22 deposition); Kerry Palladino (4/6/22 deposition); Stephen McRae (4/7/22 deposition); and Robert Ree (4/11/22 deposition).  Similarly, Giant Eagle did not meet and confer as to all of the Plaintiffs named in the Third Motion for Sanctions: Rita Gorzock (4/12/22 deposition); Tracy O'Connor (4/13/22 deposition); Kathleen Cunningham (5/3/22 deposition); Teresa Davis (5/4/22 deposition); John Durso (5/6/22 deposition); Jordan Rhoat (5/9/22 deposition); Owen Burk (5/12/22 deposition); Katherine Duckstein (5/12/22 deposition); and Amy Ulery (5/13/22 deposition). Hence, the Third Motion for Sanctions [192] is denied in its entirety and the Second Motion for Sanctions [166] is denied as to Plaintiffs Shirk, Wynkoop, Harnish, Palladino, McRae and Ree.

Next, the parties' correspondence and other documents reveal that as to the remaining 6 Plaintiffs, (i.e., Nicholas Conley, Lisa Brannigan, Sharon Burton, Jeffrey Coulson, Nathanael Dollar, and Carole Stevanus), Giant Eagle raises several issues in the present motions for sanctions which were not discussed during the meet and confer sessions.  (*See* Docket Nos. 171; 193).  Giant Eagle also now admits that counsel for the parties discussed an important legal dispute which they

were unable to resolve but did not bring it to the attention of the Court prior to taking these depositions.  (Docket Nos. 197; 204-1).  To that end, the Status Report filed by Giant Eagle on March 8, 2022 notes that counsel met and conferred on February 25, 2022.  (Docket No. 147). Giant Eagle further concedes in a later submission on June 30, 2022 that the conferral on February 25, 2022 concerned the alleged failure of Plaintiffs "to search for and produce responsive materials and provide complete and accurate written discovery" and that "Plaintiffs' counsel asserted the position that Plaintiffs had no unmet discovery obligations since the Court ordered that Giant Eagle may hire an outside vendor to search Plaintiffs' devices."  (Docket No. 204-1 at 3).

The March 8, 2022 Joint Status Report also details issues with discovery related to two individuals against whom sanctions have been brought, Lisa Brannigan and Nicholas Conley. (Docket No. 147).  In this filing, Giant Eagle complained that Conley spoliated evidence as his cell phone was destroyed and thrown away before it could be forensically imaged by a third-party vendor and that Brannigan had failed to disclose in written discovery responses that she had flown to Florida and wore a mask during the majority of the flight.  (*Id*.).  However, the issue with Conley's cell phone did not arise until March 1, 2022 and both Brannigan (March 7, 2022) and Conley (March 16, 2022) were deposed weeks after the February 25, 2022 meet and confer session.

The correspondence from Giant Eagle's counsel dated March 25, 2022 attached to the Second Motion provides some details as to the March 21, 2022 conferral and outlines a few discovery disputes pertaining to Lisa Brannigan, Sharon Burton, Jeffrey Coulson, Nathanael Dollar, and Carole Stevanus.[5]  (Docket No. 171-1).  There is no specific mention of any discussion between counsel concerning Conley, his discarded phone or any other issue from his March 16,

---

[5]     This letter further states that "Giant Eagle reserves all rights as to the other Plaintiffs.  Giant Eagle has not deposed many of the Plaintiffs and continues to assess their claims as well as the claims of others who have been deposed."  (Docket No. 171-1).

2022 deposition.  (*Id*.).  In this letter, Giant Eagle added that Brannigan failed to look for or produce

texts regarding Giant Eagle and its policy.  (*Id*.).  Giant Eagle asserted that Burton and Coulson

failed to search for responsive documents or communications and that Dollar had denied wearing

a face covering in written discovery but testified that he had shopped at Giant Eagle multiple times

wearing a face covering.  (*Id*.).  Giant Eagle concedes in its June 30, 2022 filing that the March

21, 2022 meet and confer addressed the alleged failures of Plaintiffs:

> to search for and produce responsive materials or provide complete
> and accurate written discovery about face coverings.  Plaintiffs'
> counsel maintained the position that Plaintiffs were not obligated to
> conduct a search for or produce any additional materials.  Giant
> Eagle followed the meet and confer by offering certain Plaintiffs the
> opportunity to stipulate to dismissal rather than face a motion for
> sanctions.

(Docket No. 204-1 at 4).

Plaintiffs' counsel responded in a March 31, 2022 email, acknowledging that some of the

Plaintiffs would be agreeing to dismiss their claims and then stated the following regarding the

ongoing disputes:

> I have also received confirmation from Jeff Coulson, that his prior
> responses were accurate and that he has no texts, emails or social
> media references regarding masks or Giant Eagle other than those
> involving my office.  Sharon Burton has confirmed that she has no
> texts, emails, or social media posts other than those that were made
> on the Stop Giant Eagle site which you already have.  Ms. Brannigan
> has provided additional texts, which have or will be provided to you.
> […]  Carol Stevanus has conducted a search of her emails and texts
> and found nothing concerning face coverings or Giant Eagle.
>
> While I agreed to have the above referenced plaintiffs conduct
> thorough searches for the items you referenced, as you requested,
> please do not interpret my willingness to do so as any type of
> concession concerning the fact that the Special Master and the Court
> through court order imposed the burden upon Giant Eagle to engage
> an outside firm, if it chose to do so, to conduct any additional
> searches for electronic information.  The reports and orders, in
> response to my request to the Special Master in this regard to avoid

14

any additional discovery motions, clearly stated that Giant Eagle had
an opportunity to conduct a search or electronic data with respect to
any and all of the plaintiffs.

(Docket No. 171-2 at 3).  Defense counsel replied later that evening, noting, in pertinent part, that

"Giant Eagle will address with the Court those Plaintiffs who have not accepted Giant Eagle's

offer to dismiss now and avoid a sanctions motion and the discovery issues on which the Parties

have not agreed, as discussed on our meet and confer call and memorialized in my letter." (Docket

No. 171-2 at 3).  Defense counsel then sent a follow-up email on April 4, 2022, wherein he stated

that Giant Eagle was extending its offer to Plaintiffs who were not included in the March 25, 2022

letter "to stipulate to their dismissal with prejudice without it seeking sanctions against them if

those Plaintiffs agree to do so or actually file the stipulation by Friday, April 8, 2022.  After that

date, Giant Eagle reserves the right to seek sanctions against the remaining Plaintiffs without

further notice should it know of or learn of relevant misconduct." (Docket No. 171-2 at 2).  As

noted, there is no evidence of a further conferral regarding these discovery issues.

Upon reviewing these submissions, the Court is chagrined to learn that the attorneys had

identified a legal dispute on February 25, 2022 concerning the Plaintiffs' duties to search for

additional communications and other materials and produce same in light of the prior rulings which

was not timely brought to the attention of the Court, despite numerous opportunities to do so.

Indeed, the Court established a deadline of March 1, 2022 for the parties to meet and confer on

any issues related to the supplemental production which had been previously ordered and then

conducted a telephone status conference on March 18, 2022.  (Docket Nos. 137; 160).  At that

time, Giant Eagle's counsel insisted on deposing the remaining Plaintiffs but did not advise the

Court that the parties were at an impasse regarding the proper interpretation of the past rulings.

(Docket Nos. 147; 160).  Of course, the Court retains the authority to interpret its own orders and

could have done so promptly if the parties had alerted it to this legal dispute.[6]  *See E.E.O.C. v. U.S. Steel Corp.*, 877 F. Supp. 2d 278, 282, n. 5 (W.D. Pa. 2012) (citations omitted) ("Included in a district court's power to administer its decrees is the power to construe and interpret the language of the original order.").

After considering the information it had at the time, the Court directed the parties to complete the depositions and issued an order setting forth a deposition schedule.  (Docket Nos. 154; 155; 160).  As a practical matter, Giant Eagle conducted the depositions of all of these Plaintiffs knowing that this important legal dispute had not been resolved and that no further supplementation would be forthcoming from any of the Plaintiffs before they were deposed.  Giant Eagle then ignored the Plaintiffs' offer to resolve the disputes through further supplementation after the depositions and moved for sanctions as opposed to asking for a status conference or bringing a motion to compel, as this Court requires.  *See Vay*, 2016 WL 1408116, at *15.

Overall, the Court finds that Giant Eagle failed to engage in a meaningful meet and confer in accordance with this Court's Practices and Procedures and the prior directives to counsel in this case that they should "work cooperatively to complete outstanding discovery in an effort to secure the just, speedy, and inexpensive determination of this case."  (Docket No. 135).  Rather, Giant Eagle identified deficiencies with the discovery, asserted that certain Plaintiffs had committed misconduct, threatened to file motions for sanctions against them and "offered" to not pursue sanctions if they agreed to dismiss their claims.  (Docket Nos. 17-1-2 at 2).  Giant Eagle declined to respond to Plaintiffs' offer to resolve the dispute as to 4 of the remaining 6 Plaintiffs and moved for sanctions against all of them when they did not dismiss their claims.  (*Id*.).  Giant Eagle's continued threats to bring sanctions motions without notice are directly contrary to the meet and

---

[6]     The Court could have also referred the matter to the Special Master and asked her to mediate the disputes and/or provide another Report and Recommendation.

confer requirement and fly in the face of Rule 37 where the moving party has to give notice and be specific, as is explained below.  Such tactics also undermined the Court's Orders directing counsel to cooperate and efficiently complete the remaining discovery in this matter.

For all of these reasons, Giant Eagle's motions for sanctions will be denied as a result of its counsel's failure to follow the Court's procedures and to conduct a meaningful meet and confer with opposing counsel in an effort to resolve these disputes.  *See Fuhs v. McLachlan Drilling Co.*, No. CV 16-376, 2018 WL 5312760, at \*24 (W.D. Pa. Oct. 26, 2018) ("Because the Court was available to referee this dispute at the time it arose, and Defendants failed to follow the established procedures, the request for sanctions must be denied.").

## B.  Other Procedural Deficiencies

Although the discussion could end here, the Court briefly sets forth alternative reasons why these motions should be rejected.  It is also this Court's opinion that Giant Eagle's motions for sanctions should be denied because it did not sufficiently specify the provisions of Rule 37 upon which it is relying to support the sanctions sought against those individuals.

Whether to grant or deny a motion for discovery sanctions is generally committed to the sound discretion of the District Court.  *See, e.g., Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 577 (3d Cir. 2018) (citing *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 248 (3d Cir. 2014)).  However, "due process considerations demand that a party and/or attorney to whom a motion for sanctions is directed must have both notice and an opportunity to be heard." *Vay v. Huston*, Civ. A. No. 14-769, 2016 WL 1408116, at \*9 (W.D. Pa. Apr. 11, 2016) (citing *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990)).  "The required notice must be 'explicit' and 'particularized,' advising the allegedly offending party of the precise legal theory under which sanctions are being advanced, (i.e., Rule 37, Rule 11, or 28 U.S.C. § 1927), and the

form of relief that is requested as a sanction or sanctions, such as attorneys' fees, costs, exclusion of evidence or dismissal." *Id.* "[A] district court abuses its discretion in imposing sanctions when it 'bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Clientron*, 894 F.3d at 577 (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007)) (further quotations omitted).

Similarly, this Court's motions practice rules require that "motions must state with particularity the grounds upon which the motion is made and the relief or order that is sought," and "[t]he accompanying proposed order of court must detail the specific relief sought by the party." *Vay*, 2016 WL 1408116, at *8 (citations omitted). Further, "legal arguments not raised and relief that is not sought in the initial motion are generally deemed waived" and "[a]lthough this Court often holds oral argument and liberally permits supplemental briefing, these procedures should not be construed as the Court granting permission to raise for the first time new issues or arguments at the hearing and through supplemental submissions." *Id.* (citations omitted). As this Court noted previously,

> it would be an abuse of discretion for a District Court to award sanctions against a party or counsel in a form that was not part of the initial motion providing notice, without providing an opportunity to be heard on the precise type of sanctions that are awarded. *See McLaughlin*, 756 F.3d at 249-50 (quoting *Jones*, 899 F.2d at 1357) ("The 'mere existence' of a rule or statute concerning sanctions is insufficient to put a party on notice that sanctions are being contemplated."). When a party ups the ante by changing the form of sanctions that it is seeking during ongoing proceedings, the proceedings become unnecessarily complicated and the Court must either: adjourn and provide the allegedly offending party a full and fair opportunity to respond; or, deny the relief for sanctions that is outside the scope of the initial notice.

*Vay*, 2016 WL 1408116, at *9.

In this Court's estimation, Giant Eagle's motions and briefs simply do not meet these standards. To that end, Giant Eagle proclaims in its motions that sanctions should be imposed under Rule 37 generally and does not cite a specific provision supporting its requested relief. "Rule 37 contains a number of different provisions dealing with sanctions for discovery violations, making a general citation to 'Rule 37' unhelpful." *Streeter v. Soo Line R.R.*, Civ. A. No. 07-C-299, 2008 WL 2937744, at *1 (E.D. Wis. July 23, 2008). In fact, the subsections under Rule 37 pertain to several types of discovery which are subject to different legal tests and authorize various forms of sanctions, making it important for the moving party to identify the precise legal provisions upon which sanctions are being sought. *See, e.g.*, Fed. R. Civ. P. 37(a), (b), (c), (d), (e).

The problems here are exacerbated by Giant Eagle's corresponding briefs which contain no legal citations within the body, and state that "Giant Eagle incorporates by reference the detailed legal standards set forth in its prior motion for sanctions and the Special Master's Recommendation." (Docket Nos. 171 at 3; 193 at 1). Yet, this Court's practices require that "[b]riefs must contain all information relevant to the disposition of the pending motion" and admonishes counsel that "[i]ncorporating previously filed briefs is prohibited." *Practices and Procedures* at § II.B. Giant Eagle's purported reliance upon the prior Report and Recommendation adopted by the Court does not assist because the only sanctions were awarded under Rule 37(a)(5)(A) and/or (C) following the corresponding orders to compel further discovery as to Plaintiffs Vidovich and Zitnick.[7]

At most, Giant Eagle cites to Rule 37(e)(1) and (3) in footnotes regarding the spoliation sanctions sought against Conley for the discarded cell phone. But the company seeks dispositive

---

[7]     Of course, a party filing a motion to compel is required to submit a certificate of conferral and sanctions are not available if the motion was filed prior to the movant making a good faith attempt to obtain the discovery without court action. *See e.g.,* Fed. R. Civ. P. 37(a)(1), 37(a)(5)(A).

sanctions against him and neither cites to nor applies the *Poulis* factors which must be evaluated

prior to a case being dismissed, with prejudice. *Cf. Fuhs*, 2018 WL 5312760, at *15 ("Defendants'

supplemental brief analyzing the *Poulis* factors for the first time can be disregarded and such relief

can be denied on this basis alone."). All told, the Court simply cannot glean from the remainder

of the briefing which provisions Giant Eagle is relying upon as to the other Plaintiffs and declines

to do so on its behalf.

> As our Court of Appeals has held, "courts rely on the litigants not
> only to cite relevant precedents, but also to frame the issues for
> decision," *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir.
> 2010), and "'[j]udges are not like pigs, hunting for truffles buried
> in' the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d
> 812, 820 n.8 (3d Cir. 2006) (quoting *United States v. Dunkel*, 927
> F.2d 955, 756 (7th Cir. 1991)). Stated another way, when parties
> seek discovery sanctions against their opponents, it is not the
> Court's burden to scour a disjointed and incomplete record in an
> effort to assist the movant in obtaining such sanctions. Quite
> naturally, that burden lies with the movant.

*Fuhs*, 2018 WL 5312760, at *21.

Therefore, the Court alternatively denies Giant Eagle's motions due to a failure to specify

the precise basis for the sanctions and as to Conley, to fully brief the necessary issues.

C. *Relief Requested Is Inconsistent with Prior Rulings & Otherwise Unsupported by Record*

Even without these procedural defects, the Court would separately deny Giant Eagle's

motions because the relief it requests is inconsistent with the prior rulings and otherwise

unsupported by this record.

Giant Eagle suggests that the sanctions it seeks at this stage are warranted under the Special

Master's recommendations in this case. (Docket Nos. 171; 193). To the contrary, the Court

believes that the prior rulings undermine its present arguments and put forth a roadmap as to the

type of sanctions which could be available given the asserted discovery misconduct and how Giant

20

Eagle should have proceeded to obtain them.  (Docket Nos. 98; 99; 100).  As noted, the Court denied the former motion for sanctions seeking that the claims of 9 Plaintiffs be dismissed, with prejudice; refused to impose the costs of depositions as a sanction; and limited the relief awarded to attorneys' fees and costs associated with the order compelling Plaintiffs Vidovich and Zytnick to supplement and/or search for relevant discovery materials.  (*Id*.).  Despite these rulings, Giant Eagle did not bring a corresponding motion to compel which could have resulted in the imposition of attorney's fees and costs and blindly seeks dispositive sanctions, adverse inferences and other fees and costs against these individuals without sufficiently building its case to meet the applicable burden of proof.

     1.  <u>Loss of ESI as to Conley</u>

The Court initially points out the many flaws in Giant Eagle's pursuit of sanctions against Conley arising from the alleged loss of data from his discarded cell phone.  (Docket No. 171 at 8-10).  At the outset, the Court established a deadline of <u>February 15, 2022</u> for Plaintiffs to produce their devices for a forensic examination and the parties never sought any type of extension from that deadline.  (Docket No. 137).  As with other discovery issues in this case, Giant Eagle failed to alert the Court of any problems and these delays resulted in the phone being discarded approximately one week later around February 22 or 24, 2022 before the third-party vendor Bit-x-Bit arrived to image it on March 1, 2022.  Giant Eagle has presented no evidence demonstrating that any of the delays were caused by Conley himself, as opposed to his counsel.  (Docket No. 171 at 8-10).  It stands to reason that since Giant Eagle allowed the deadline to expire rather than enforce it, the company accepted the risk that the cell phone may be damaged in the interim and should not be awarded for its lack of diligence.

Beyond these considerations, Giant Eagle has failed to meet its burden to show that the severe sanctions of dismissal, with prejudice, or an adverse inference would be appropriately awarded under Rule 37(e) given the totality of the circumstances.  To that end, it is Giant Eagle's burden to show:

> (1) certain ESI should have been preserved in anticipation or conduct of litigation; (2) that evidence was lost; (3) the ESI was lost because plaintiff failed to take reasonable steps to preserve it; and (4) that it cannot be restored or replaced." *Goldrich*, 2018 WL 4492931, at *7.
>
> If these elements are established, "to determine the appropriate sanctions to be imposed, the Court must find either prejudice to defendants or that plaintiff acted with the intent to deprive defendants of the ESI's use in the litigation." *Id.*

*Fuhs*, 2018 WL 5312760, at *13.  As the Court held in *Fuhs*, it is relatively common for cell phones to be lost, damaged or destroyed and a party seeking sanctions must do more than show that ESI from a party's device was lost, it must offer "concrete, plausible suggestions as to any <u>relevant</u> ESI that was lost" and establish how the loss of evidence "affected [its] substantial rights, preventing [it] from defending this case."  *Fuhs*, 2018 WL 5312760, at *15 (emphasis in original).

Here, Giant Eagle relies upon the loss of ESI from Conley's cell phone but has made no effort to show that there was <u>relevant</u> ESI on the device.  (Docket No. 171 at 8-10).  Indeed, Conley's testimony demonstrates that it is highly unlikely that there was anything relevant on the phone at the time it was destroyed.  To that end, Conley testified that the phone had been hacked where a third party had completely taken over the controls of the phone and it was no longer operating.  (Docket No. 172-2 at 207-08).  He also deleted certain apps and other things from the phone and had done a factory reset which would wipe the data off the phone.[8]  (*Id.*).  He ordered

---

[8]     The Court understands that a factory reset would likely wipe all of the data off of the phone.  *See e.g., Folino v. Hines*, 2018 WL 5982448, at *1 (W.D. Pa. Nov. 14, 2018).  While Mr. Petro from Bit-x-Bit declares that data was

a new phone which arrived around February 18, 2022 and the old phone was discarded within a few days or by February 22, 2022 or February 24, 2022.  At most, the record demonstrates that Conley acted negligently and the same is not sufficient to impose the severe sanctions requested by Giant Eagle.  *See Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) ("It bears adding that to the extent Applebaum sought an adverse inference instruction for spoliation of electronic information, a 2015 amendment to Civil Rule 37(e)(2) required her to show that Target had 'intent' to deprive her of the information's use. A showing of negligence or even gross negligence will not do the trick.").

Giant Eagle has not claimed any specific prejudice resulting from the loss of Conley's phone and it proceeded to conduct his deposition using the texts that it had recovered from his new phone along with what appears to be a robust collection of other forms of electronic evidence available to the parties, including videos of his encounter at the store, social media posts and other messages.  Given same, the company has failed to show that any ESI which may have been lost "cannot be restored or replaced through additional discovery."   Fed. R. Civ. P. 37(e)(1). Accordingly, Giant Eagle's motion seeking sanctions against Conley would otherwise be denied due to such circumstances.

### 2.  Dismissal, With Prejudice

As to Giant Eagle's request for dismissal, with prejudice, of the 21 Plaintiffs' claims, it is well-established that "[d]ismissals with prejudice are 'drastic sanctions.'" *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 80 (3d Cir. 2012) (quoting *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984)).  The same is only warranted in limited circumstances including where "'the non-responsible party's case is severely impaired because it lacked the information

---

possibly recoverable from the device, he was not aware of this information which was later developed during Conley's March 16, 2022 deposition.

that was not produced.'" *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting *Bull*, 665 F.3d at 83).  The Court of Appeals has further recognized that "'doubts should be resolved in favor of reaching a decision on the merits.'" *Id.* (quoting *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002)).  Therefore, courts must evaluate each of the *Poulis* factors prior to dismissing a case, with prejudice, i.e.: "(1) the extent of the party's personal responsibility; (2) prejudice to the adversary; (3) a history of dilatoriness; (4) whether the [...] conduct was willful or in bad faith; (5) alternative sanctions; and (6) the meritoriousness of the claim." *Poulis*, 747 F.2d at 868.

In this case, the record simply does not support the imposition of the drastic sanction of dismissal against any of these Plaintiffs.  With respect to the first factor, Giant Eagle concedes that it "takes no position as to whether certain Plaintiffs' misconduct or their counsel's lack of oversight is responsible for their failure to search for, produce, or preserve responsive materials."[9] (Docket No. 171 at 3).  While the Court of Appeals has "never held that personal wrongdoing is an absolute prerequisite in all instances," *Clientron*, 894 F.3d at 583, this factor weighs strongly against dismissal given the facts and circumstances of this matter.  Regarding the history of dilatoriness factor, Giant Eagle assigns blame to Plaintiffs' counsel and his staff for failure to timely respond to discovery requests but did not bring those issues to the attention of the Court until months later at which time counsel explained the staffing issues and other circumstances which had understandably caused the delays.  (Docket No. 160).  On the other hand, Giant Eagle's case has been fully staffed with multiple attorneys and they neglected to contact the Court about these

---

[9]     Giant Eagle adds the caveat that "certain Plaintiffs clearly bear responsibility for withholding information about their experiences and ability to wear a face covering" in reference to the alleged false or misleading discovery responses.  (Docket No. 171 at 3).  Of course, counsel also bears responsibility for discovery responses which they prepare for their clients and sign.  Yet, some of the discovery responses provided in the record were not verified by the clients.  For example, Giant Eagle asserts that Nathanael Dollar and Stephen McRae provided false responses to written discovery because of statements which are in their Supplemental Answers to Interrogatories but neither of those documents are verified by them.  (*See* Docket No. 171-9, Def. Ex. 9; 171-26; Def. Ex. 26).

delays or the parties' ongoing legal disputes.  As to the fourth factor, it reasonably follows that if Giant Eagle cannot assign fault to the individual Plaintiffs, then it is also unable to show that their alleged misconduct was willful or in bad faith.

Most importantly, the second factor weighs against Giant Eagle because it has not demonstrated that its defense of any of the claims in this suit have been significantly impacted by alleged discovery misconduct.  Instead, it largely complains that the same have increased its costs of defense.  To that end, Giant Eagle repeatedly points to other evidence in the record and argues that all of these Plaintiffs' claims are without merit.  (*See* Docket Nos. 171; 193).  Finally, even if Giant Eagle had prevailed here, the fifth factor, alternative sanctions, would counsel the Court to consider fees and costs as more appropriate than dismissal.  *Poulis*, 747 F.2d at 868.

3.  Attorneys' Fees and Costs for Depositions

Moving on, Giant Eagle also argues that it was "forced" to depose all of these individuals in order to defend their claims and seeks reimbursement of its fees for preparing for and taking the depositions.   (Docket Nos. 171; 193).  However, as stated above, all 21 of these individuals were deposed after the February 25, 2022 meet and confer session.  Therefore, Giant Eagle conducted these depositions without asking the Court to intervene and resolve their legal disputes surrounding the proper interpretation of the prior rulings and knew that none of the Plaintiffs would be supplementing their discovery before they were deposed.  Giant Eagle was also advised of the staffing issues with Plaintiffs' counsel's firm, declined the opportunity to engage in ADR and insisted that the depositions continue.  (*See generally* Docket No. 160).  At the same time, the record shows that Giant Eagle conducted its own investigation into the Plaintiffs by obtaining videos, social media posts and other materials which were used during the depositions to discredit the Plaintiffs' claims.  Again, Giant Eagle has not moved to compel the 21 Plaintiffs to make any

supplemental productions and several did so but were still accused of discovery misconduct.  All told, it appears to the Court that Giant Eagle undertook a deliberate legal strategy in noticing and taking all of these depositions such that an award of fees and costs for preparation and taking the depositions would not be appropriate.  *See Vay*, 2016 WL 1408116, at \*15. Moreover, even if the Court dismisses this case for lack of jurisdiction, Giant Eagle would have needed to depose these Plaintiffs in any ensuing state litigation.

IV.   CONCLUSION

This litigation arises out of Giant Eagle's insistence that Plaintiffs follow its rule requiring that everyone wear a mask while shopping at its grocery stores during the outset of the COVID-19 pandemic.  While the Court believes that Plaintiffs and their counsel could have been more diligent and engaged in better discovery practices, Giant Eagle's refusal to abide by this Court's rules significantly undermines its request for discovery sanctions against them.  The Court expects that counsel will engage in meaningful meet and confer sessions in an effort to resolve their discovery disputes before bringing all discovery motions and counsel sending correspondence purportedly reserving the right to file sanctions motions "without further notice" does not alter these practice rules.  The Court will not award sanctions to litigants who take a "wait-and-sanction" approach by failing to take advantage of the procedures to alert the Court of known legal disputes or request a referral to the Special Master and only raising these issues when it is too late for judicial intervention to assist in "secur[ing] the just, speedy, and inexpensive determination" of the matter, as is the case here.  Fed. R. Civ. P. 1.

For the reasons set forth herein, Giant Eagle's Second [166] and Third [192] Motions for Sanctions are DENIED.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer, Senior U.S. District Judge

Dated:  August 26, 2022

cc/ecf:  All counsel of record.