IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY PLETCHER, et al., | ) |
| Consolidated Plaintiffs, | ) ) ) |
| v. | ) )  Civil Action No. 2:20-754 |
| GIANT EAGLE INC., et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

I.   INTRODUCTION

There are forty-seven (47) individuals remaining in this consolidated action involving Plaintiffs Kimberly Pletcher et al.'s challenge to Defendants Giant Eagle et al.'s ("Giant Eagle" or "Defendants") COVID-19 mask policy. (Docket No. 51). Plaintiffs' only federal claims under Title III of the Americans with Disabilities Act ("ADA") for discrimination and retaliation/coercion seek prospective injunctive relief affording them an accommodation under the policy due to their asserted disabilities which would permit them to shop at Giant Eagle stores without masks. (*Id*.). However, it is uncontested that the challenged mask policy is no longer in effect and Giant Eagle's customers can freely shop without masks or face coverings at its stores. (Docket Nos. 152; 158; 165).

The United States Court of Appeals for the Third Circuit and other federal courts across the country have reviewed similar legal challenges to COVID-19 restrictions which have been lifted and generally determined that claims seeking to enjoin such restrictions are no longer justiciable under Article III of the U.S. Constitution. *See e.g.*, *County of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021) (challenge to rescinded stay-at-home orders, business closure orders and congregation limits moot); *Clark v. Governor of New Jersey*, --- F. 4th ----, App. No.

1

21-2732, 2022 WL 17246445, at *1 (3d Cir. Nov. 28, 2022) (First Amendment claims against Governor's congregation limits on religious organizations moot); *Parker v. Governor of Pennsylvania*, App. No. 20-3518, 2021 WL 5492803, at *4 (3d Cir. Nov. 23, 2021) (challenge to expired state mask mandate moot); *John Doe 1 et al. v. Upper Saint Clair Sch. Dist., et al*, and *John Doe 1 et al. v. North Allegheny Sch. Dist.*, App. Nos. 22-1141, 22-1160 & 22-1299, 2022 WL 2951467 (3d Cir. Mar. 1, 2022) (claims seeking to enjoin mask policies at local schools moot). Given the Court's continuing obligation to ensure that it maintains subject matter jurisdiction over this action, a rule to show cause was issued on the parties to demonstrate why Plaintiffs' Title III ADA claims should not be dismissed, as moot, and the Court should not decline to exercise supplemental jurisdiction over their state law claims. (Docket No. 150).

The Show Cause Order has been fully briefed, there are no other outstanding issues for the Court to address and the matter is now ripe for disposition.[1] (Docket Nos. 152; 158; 160; 165). After careful consideration of the parties' positions and for the following reasons, the Court will dismiss this case, as the Court lacks subject matter jurisdiction over the non-justiciable federal claims and declines to exercise supplemental jurisdiction over the remaining state law claims.

II.   BACKGROUND

   A. Relevant Facts

Because the Court writes primarily for the parties and has set forth the facts in its prior decisions, it focuses on those facts necessary to resolve the pending dispute. (*See* Docket Nos. 42; 98; 99; 112; 149; 205). The COVID-19 pandemic is still ongoing but both the virus itself and our society's response to it have evolved significantly since March and April of 2020. *See Clark*, 2022

---

[1] At this stage of the proceedings, fact discovery has concluded, the parties' discovery disputes have been adjudicated and they were unable to resolve the case at a recent mediation with court-appointed neutral Mary Jo Rebelo, Esq. (*See* Docket Nos. 205-06; 208; 211). The numerous delays caused by the parties' discovery disputes are discussed ad nauseum elsewhere and not repeated here. (*See e.g.*, Docket Nos. 149; 205).

WL 17246445, at *1. In those early days of the pandemic, Giant Eagle was deemed an essential business and permitted to operate with substantial restrictions, including executive orders issued by then-Secretary of Health Rachel Levine, M.D., which required its employees and patrons to wear masks while inside its stores, (the "state mask mandate"). (Docket No. 42 at 5-6). Relevant here, the state mask mandate contained an exception for individuals with medical conditions who were unable to wear a mask and was later amended to expressly authorize the use of face shields and other face coverings in lieu of masks. (*Id*.; *see also* Docket No. 51 at ¶¶ 270-71). Ultimately, the state mask mandate was lifted as of June 28, 2021, and businesses operating in the Commonwealth have not been required to have any type of mask policy for their patrons since that time. See *Parker*, 2021 WL 5492803 at *1.

The crux of Plaintiffs' claims is that Giant Eagle violated the ADA by imposing a mandatory mask policy on all customers, without providing an exception for individuals with disabilities and also retaliated against them for seeking an accommodation to shop without masks. (Docket No. 51 at ¶ 7). As is noted in the Court's prior decisions, Giant Eagle's policy[2] has changed over time as it initially required universal masking for all customers, then permitted

---

[2]   The current version of Giant Eagle's policy states the following:

> Personal Protective Equipment
>
> On Feb. 25, 2022, the Centers for Disease Control and Prevention (CDC) updated metrics for determining COVID-19 behavior guidance. To learn more about the latest CDC guidance, visit Use and Care of Masks | CDC
>
> Following this guidance, Team Members are no longer required to wear masks or face coverings unless required by local authorities. Pharmacy Team Members will continue to wear masks when providing direct patient care, such as vaccinations or testing. Team Members and Guests that choose to wear a mask or protective face covering are welcomed to do so.
>
> If you are at potential increased risk for COVID-19, we encourage you to speak with your healthcare provider for mask guidance when shopping in retail stores.

See https://www.gianteagle.com/store-cleansing (last visited 12/6/2022).

shoppers to use face shields and other face coverings instead of masks and was discontinued after the expiration of the state mask mandate. (*See* Docket Nos. 42; 98; 99; 112; 149; 150; 205). Indeed, several Plaintiffs testified at their recent depositions that they have been shopping at Giant Eagle for many months now that they are not required to wear masks. (*See e.g., Duckstein Depo* at 14, Docket No. 200-10 at 15; *Ree Depo* at 25-26, Docket No. 172-2 at 8; *Durso Depo* at 36, Docket No. 200-1 at 10).

Further, although it had been disputed, the information obtained through discovery led Plaintiffs to concede that Giant Eagle amended its policy to allow customers to wear face shields as of June 12, 2020. (Docket No. 115-1 at ¶ 243; *Pletcher et al. v. Giant Eagle, Inc., et al.*, Civ. A. No. 21-1361, Docket No. 1 at ¶ 243 (W.D. Pa. Oct. 12, 2021)). This concession was made approximately one year after the Court denied Plaintiff Josiah Kostek's motion for preliminary injunction for several reasons, including that: the policy had been amended by Giant Eagle to permit customers to wear face shields; Kostek had neither alleged nor presented any evidence that he could not wear a face shield; and the requested accommodation of shopping without a mask was therefore unnecessary. (Docket No. 42). In the more recent decision denying Plaintiffs leave to amend to add the claims for damages under § 504 of the Rehabilitation Act, the Court pointed out that Plaintiffs themselves had questioned whether they had standing to pursue the Title III ADA claims in their proposed Fourth Amended Consolidated Complaint and found that they had effectively pled themselves out of court by making the concession about face shields but not updating any of the other allegations. (Docket No. 149). Recognizing these defects along with the fact that the policy had been discontinued by Giant Eagle, the Court issued the Show Cause Order as to why the claims in the operative pleading, i.e., the Third Amended Consolidated Complaint filed on November 6, 2020, should not be dismissed. (Docket Nos. 149; 150).

While the instant lawsuit has also changed over time, with new Plaintiffs and state law theories added, the essential allegations supporting their Title III ADA claims and the prospective injunctive relief sought have remained throughout and they continue to present a challenge to a mandatory mask policy that no longer exists and a corresponding request for an accommodation that is unnecessary. (Docket No. 51). At this point, twenty-four (24) individuals have dropped their claims, leaving forty-seven (47) Plaintiffs from the three Divisions of the U.S. District Court for the Western District of Pennsylvania who are still pursuing this consolidated lawsuit against Giant Eagle.[3] (Docket Nos. 51; 72; 141; 146; 163; 176; 187). All of the remaining Plaintiffs assert state law claims for damages under the PHRA, four (4) of them bring claims for negligence/reckless conduct, and a single plaintiff has a claim for assault/battery. (Docket No. 51). Another plaintiff has a PHRA claim against the owner of the Ligonier store, C&J Grocery, and its manager, Matt Faccenda. (*Id.*).

In their consolidated pleading, Plaintiffs allege that they attempted to enter one of Giant Eagle's stores to shop for groceries without wearing a mask between April 15, 2020 and August 17, 2020. (Docket No. 51 at ¶¶ 7-268). They generally complain that they were not permitted to shop without a mask, despite their disabilities, and each detail the individual circumstances which resulted ranging from refusal of service to physical altercations with security, and interventions by police, among other things. (*Id.*). They seek the following injunctive relief:

---

[3]  The Court notes that this is not a class action under Rule 23 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23. Rather, the Court initially consolidated 35 separate Title III ADA lawsuits which were filed by the individual Plaintiffs in this District between May 26, 2020 and June 17, 2020 under Rule 42 after "finding it is in the interests of judicial economy to decide the common issues of fact and law in a single, consolidated proceeding rather than separate individual lawsuits." (Docket No. 11). The Court notes that the breakdown of Plaintiffs per county and Division of our Court is the following. There are 36 Plaintiffs whose suits would typically be filed in the Pittsburgh Division: 12 – Westmoreland; 11 – Allegheny; 6 – Armstrong; 3 – Butler; 2- Indiana; 1 – Fayette; and, 1 – Washington. (Docket No. 51). There are 8 Plaintiffs with claims from the Johnstown Division: 6 – Cambria; and, 2 – Blair. (*Id.*). Finally, there are 3 Plaintiffs from the Erie Division: 2 – Erie; and, 1 – Venango. (*Id.*).

> Plaintiffs request that the court declare that Giant Eagle violated the ADA and award them injunctive relief requiring Giant Eagle to accommodate Plaintiffs by modifying its policies and procedures, allowing them to shop in its stores without wearing a mask so that they may fully and equally enjoy the benefits, privileges, goods, services facilities, advantages, and accommodations of Giant Eagle's stores in the future. To affect such relief to Plaintiffs, it may be appropriate for the court to provide clear protocols to all Giant Eagle employees advising that persons who cannot wear a mask inside the stores due to a disability must be accommodated. Giant Eagle should be required to train its employees about its legal obligations and to post and disseminate notice to Giant Eagle employees regarding their legal obligations under the ADA and the PHRA.

(Docket No. 51 at ¶ 299). In their claims asserting retaliation/coercion in violation of the ADA, Plaintiffs incorporate all of their allegations, including the injunctive relief sought in ¶ 299, and further state that "Defendants should be declared in violation of the ADA and enjoined from retaliating against Plaintiffs for requesting reasonable modifications to Defendants' policies and practices and refusing to wear a mask while shopping at Giant Eagle." (*Id*. at ¶ 304).

    B.  Relevant Procedure

The Court's Show Cause Order was issued on March 17, 2022 as part of its prior Memorandum Opinion denying Plaintiffs leave to file their proposed Fourth Amended Consolidated Complaint. (Docket Nos. 149, 150). Plaintiffs submitted their Response on March 18, 2022, stating that they had no objection to the proposed dismissal of this action, without prejudice, to be refiled in state court. (Docket No. 152). Later that day, at a discovery status conference, the Court heard brief argument from counsel regarding the issues related to the Show Cause Order. (Docket No. 160). Defendants submitted their Response on March 31, 2022, wherein they objected to the dismissal of this lawsuit. (Docket No. 158). At the Court's direction, Plaintiffs filed a Reply on April 13, 2022. (Docket No. 165).

In the ensuing months, the parties completed discovery including the depositions of all remaining Plaintiffs and litigated sanctions motions brought by Defendants which were later denied in a Memorandum Opinion dated August 26, 2022. (Docket Nos. 205; 206). They also participated in mediation pursuant to the Court's ADR Policies and Procedures but were unable to resolve the case. (Docket Nos. 208; 211). Neither party has requested further briefing or argument on the issues related to the Show Cause Order and the matter is ripe for disposition.

III.   LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "They possess only that power authorized by Constitution or statute, which is not expanded by judicial decree." *Id.* (internal citations omitted). In every case, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). The Court's "continuing obligation" to ensure that subject matter jurisdiction is present extends to it inquiring into "issues of standing and mootness sua sponte." *Seneca Res. Corp. v. Twp. of Highland, Elk Cnty., Pennsylvania*, 863 F.3d 245, 252 (3d Cir. 2017) (further citations and quotations omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," and an order dismissing a case for lack of subject matter jurisdiction is without prejudice. Fed. R. Civ. P. 12(h)(3).

IV.   DISCUSSION

Plaintiffs concede that their Title III ADA discrimination and retaliation/coercion claims are moot and that an order for the injunctive relief sought in their operative complaint to permit them to shop without masks at Giant Eagle stores would do them "little to no good" since the mandatory mask policy is no longer in effect. (Docket Nos. 152; 165). They likewise have not

7

objected to dismissal of their state law claims, without prejudice, to be refiled in state court. (*Id*.). In response, Defendants maintain that the federal claims are not moot because six of the Plaintiffs may have viable retaliation claims and the voluntary cessation exception to mootness applies. (Docket No. 158). Defendants alternatively argue that if the claims are deemed moot, the Court should exercise its discretion to hear the state law claims under its supplemental jurisdiction. (*Id*.). Having carefully considered the parties' arguments, the Court dismisses the federal claims, as moot, and the state law claims, without prejudice, to be refiled in state court. The Court's rationale follows, starting with the justiciability of Plaintiffs' claims.

A. *Justiciability of Plaintiffs' Title III ADA Claims*

Helpfully, in the recent decision of *Clark v. Governor of New Jersey*, the United States Court of Appeals for the Third Circuit set forth the following legal standards which are applicable here.

> The jurisdiction of the federal courts is limited to "Cases" and "Controversies". U.S. Const. art. III, § 2, cl. 1. "Thus, [we] can entertain actions only if they present live disputes, ones in which both sides have a personal stake." *Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)). The doctrine of mootness ensures that this condition remains "throughout the life of the lawsuit." *See Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) (quoting *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993)); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" (quoting *Alvarez v. Smith*, 558 U.S. 87, 93, 130 S.Ct. 576, 175 L.Ed.2d 447 (2009))).
>
> If it is impossible for us to grant "any effectual relief whatever to the prevailing party," then the case is moot. *See, e.g., Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 132 S. Ct.

>
> 2277, 2287, 183 L.Ed.2d 281 (2012)); *see also N.Y. State Rifle & Pistol Ass'n v. City of New York*, —— U.S. ——, 140 S. Ct. 1525, 1526, 206 L.Ed.2d 798 (2020) (holding that case became moot when statutory amendments provided the relief sought); *Trump v. Hawaii*, —— U.S. ——, 138 S. Ct. 377, 199 L.Ed.2d 275 (2017) (Mem.) (holding that challenge to expired provision of an executive order was moot). Yet, one "recurring situation" in which we are reluctant to dismiss a case as nonjusticiable—despite the absence of ongoing conduct to enjoin—occurs where the defendant claims the matter has become moot owing to his voluntary cessation of the challenged action. *Hartnett*, 963 F.3d at 306–07; *see City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) ("Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.").

*Clark*, 2022 WL 17246445, at *4.

"Voluntary cessation […] will moot a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719, 127 S.Ct. 2738, 168 L.Ed.2d 508 (2007)). "While the case law speaks largely of voluntary cessation, these principles apply even when the defendant's cessation is not entirely voluntary." *Hartnett*, 963 F.3d at 306. The key question is whether the defendant "could reasonably be expected to engage in the challenged behavior again." *Id.* (citation omitted). Courts are skeptical of claims of mootness if a defendant "yields in the face of a court order and assures [the Court] that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along." *Id.* at 307 (citations omitted). On the other hand, "if the defendant ceases because of a new statute or a ruling in a completely different case, [the] argument for mootness is much stronger." *Id.* "The burden always lies on the party claiming mootness, whether the case involves voluntary cessation or not." *Id.* at 307 (citation omitted).

9

Our Court of Appeals has examined the doctrine of mootness and the voluntary cessation exception in several cases involving challenges to COVID-19 pandemic restrictions which were lifted during the pendency of the lawsuits. To that end, in *Parker*, the Court of Appeals found that the plaintiffs' Constitutional claims against Governor Wolf contesting the state's mask mandate were moot and affirmed the District Court's denial of a preliminary injunction. *Parker*, 2021 WL 5492803, at *4. As the Court of Appeals explained:

> The voluntary cessation exception does not apply because the mandate expired by its own terms and not as a response to litigation. [*County of Butler*, 8 F. 4th at 230 (citing *Trump v. Hawaii*, 138 S. Ct. 377 (2017)]. The mask mandate remained in place for many months after its constitutionality was challenged. It expired by its own terms once vaccines became widely available. The Court "generally presume[s] that government officials act in good faith." *Id*. Absent any evidence to the contrary, that presumption applies here, and the voluntary cessation exception is inapplicable.

*Id*. Similarly, the Court of Appeals held that cases involving universal masking at North Allegheny and Upper Saint Clair school districts were moot after the policies were vacated due to changes in local COVID-19 pandemic conditions. *See In John Doe 1*, 2022 WL 2951467 at *1. Each of these cases relied on *County of Butler*, where the Third Circuit concluded that the plaintiffs' Constitutional challenges to "stay-at-home orders, business closure orders and orders setting congregation limits in secular settings" were moot and that the voluntary cessation exception did not apply because the restrictions expired, and subsequent legislation limited the authority of the governor to unilaterally impose the same type of restrictions. *See County of Butler*, 8 F.4th at 230. Several District Courts have also held that claims for injunctive relief by patrons challenging mask policies were non-justiciable after the state mandates upon which the policies were based had been discontinued. *See e.g., Abadi v. Marina Dist. Dev. Co., LLC*, No. 1:22-CV-00314, 2022 WL 5208882, at *2 (D.N.J. Oct. 4, 2022) (dismissing Title III ADA claims against Borgata Casino in

Atlantic City, New Jersey as "it seems clear to the Court that Plaintiff continues to lack constitutional standing to raise his Title III claims because there is no ongoing threat that any of his rights will be violated. The Executive Orders on which Defendants' policy was based are no longer in effect."); *Edtl v. Best Buy Stores, L.P.*, No. 3:22-CV-00003-AR, 2022 WL 11436434, at *2 (D. Or. Oct. 13, 2022) ("Edtl asks for, in addition to damages, injunctive relief against Best Buy's enforcement of Oregon's mask mandate. The order rescinding the indoor face covering requirement renders moot Edtl's requested injunctive relief.").

In light of this authority, it is this Court's opinion that Plaintiffs' Title III ADA discrimination and retaliation/coercion claims are moot, and that the voluntary cessation exception does not apply to save their claims from dismissal. *See Parker*, 2021 WL 5492803, at *4; *see also County of Butler*, 8 F. 4th at 230. Hence, Defendants' objections to the dismissal of the federal claims are overruled. The Court reaches this decision for several reasons.

First, Plaintiffs concede that an order for the injunctive relief they seek in this case would do them "little to no good" and have "little value" due to Giant Eagle's abandonment of the mandatory mask policy. (Docket Nos. 152; 165). For its position, Defendants lodge a narrow objection to the mootness of the Title III ADA retaliation claims raised by six Plaintiffs and have not specifically contested that the discrimination and retaliation/coercion claims brought by the rest of the Plaintiffs are moot. (Docket No. 158). The Court agrees that Plaintiffs have already been granted the relief that they sought for these claims because Giant Eagle discontinued its mask policy and individuals have been shopping there without wearing masks for some time. (*See* Docket No. 51). Since none of the Plaintiffs need an accommodation to shop at Giant Eagle without a mask, it would be impossible to grant "any effectual relief" to them if they prevailed on their Title III ADA claims. *Clark*, 2022 WL 17246445, at *4.

11

Second, the Court overrules Defendants' objections and its interpretation of the Third Amended Consolidated Complaint that six Plaintiffs have pled Title III ADA retaliation claims which outlive Giant Eagle's discontinued mask policy because they were allegedly banned from certain stores. (Docket No. 158). To the contrary, the only explicit relief sought by Plaintiffs under their retaliation theory is limited to the same injunctive relief providing them all with an accommodation to shop without masks at Giant Eagle stores. (*See* Docket No. 51 at ¶¶ 299-304). Although Plaintiffs ask that Defendants be enjoined from retaliating against them "for requesting reasonable modifications to Defendants' policies and practices and refusing to wear a mask while shopping at Giant Eagle," such a broad "obey-the-law" or "do not retaliate" type of injunction would not meet the specificity requirements of the Federal Rules. *See e.g.*, *Murray-Nolan v. Rubin*, No. CV 22-801 (EP) (AME), 2022 WL 4104343, at *7 (D.N.J. Sept. 8, 2022) (finding that parent's request for injunction against school board that it not retaliate against her for refusing to wear a mask at school board meetings was overbroad and otherwise moot following the school's recission of its mask policy); Fed. R. Civ. P. 65(d)(1)(C) ("Every order granting an injunction and every restraining order must: … describe in reasonable detail … the act or acts restrained or required.").

Beyond Defendants' misinterpretation of the allegations in the operative pleading, three of the Plaintiffs identified by the defense, (i.e., Mara Sims, Danielle Markham, and Crystal McGinnis), have separately dismissed their claims and are no longer parties to this lawsuit. (*See* Docket Nos. 72; 176). Another two of the Plaintiffs, (i.e., Tommy Wynkoop and Owen Burk), admitted at their depositions that they were not permanently banned from stores for requesting an accommodation. (*See* Docket Nos. 94-2 at 65-69; 172-1, *Wynkoop Depo* at 41 ("Q. All right. So they didn't – he didn't ban you because you wanted to shop without wearing a mask; right? A. Correct."); 200-9, *Burk Depo* at 28-29 ("Yeah, all right. So they said you can't come back to the

store unless you're wearing a mask? A. Yeah, I think so. Yep.")). Finally, the Court previously ruled that the sixth individual, Kostek, had not presented evidence supporting a conclusion that he was banned from the Oil City Giant Eagle store due to his request for an accommodation, as opposed to his other behavior for which he was prosecuted. See *Pletcher*, 2020 WL 6263916, at *5 (finding that "the letter was sent to Kostek at the suggestion of police who arrived at the scene of the second incident but persuaded him to leave without arresting him" and "Kostek has not proven that his misconduct at the Oil City Giant Eagle which led to the issuance of this letter was the result of any disability.").

Third, the voluntary cessation exception does not save Plaintiffs' federal claims because there is no evidence before the Court indicating that "substantially the same legal controversy" is reasonably likely to recur in the future. See *Clark*, 2022 WL 17246445, at *5-8. The Court of Appeals' decision in *Clark* is instructive on this point given the in-depth discussion of the plaintiffs' Constitutional challenges to executive orders issued by the Governor of New Jersey establishing congregation limits on churches that were lifted in May of 2021. *Id.* In determining whether the Governor was reasonably likely to re-impose the defunct restrictions on religious worship, the Court of Appeals analyzed the many factual and legal changes since the outset of the pandemic and the government's response to same and determined that it was "implausible" that "substantially the same legal controversy" could recur. *Id.* at *6-8. Among other things, the Court of Appeals noted that "it is hard to imagine that we could once again face anything like [the pandemic conditions which] confronted us [in 2020-21]"; "the public health outlook has changed dramatically since the dark days of March 2020, when the [challenged restrictions] were implemented," and, "[t]he fact that such restrictions did not return during the Delta and Omicron

13

waves – nor during the less extreme increase of May 2022—indicates that gathering restrictions are reasonably unlikely to return as a COVID mitigation measure." Id. at *6-7.

The same is true in this case because the many legal and factual changes since the height of the pandemic in April of 2020 when Giant Eagle initially adopted its no exception mask policy make it implausible that it would impose a substantially similar policy on all customers in the future. See Clark, 2022 WL 17246445, at *5-8. While defense counsel suggests that Giant Eagle continues to believe that the mask policy was lawfully enacted and speculates that the company could revert to it at any time during the ongoing COVID-19 pandemic, the policy was not discontinued due to this lawsuit. (Docket No. 158). Instead, Giant Eagle dropped its policy after the state mask mandate expired in June of 2021 and none of the businesses across the Commonwealth have been required to have their customers "mask up" since that time. See Parker, 2021 WL 5492803 at *1. Despite Defendants' objections, they have not produced any evidence that Giant Eagle plans to revert to the original policy requiring all customers to wear masks and not allowing them to wear face shields or other face coverings. (Docket Nos. 152; 158; 165). As in Clark, the track record of Giant Eagle permitting face shields and other face coverings from June 12, 2020 until the expiration of the state mandate in June of 2021 and not re-imposing the more restrictive policy "during the Delta and Omicron waves – nor during the less extreme increase of [COVID-19 cases in] May 2022," demonstrates that it is implausible that the company would return to the more restrictive policy demanding that all shoppers wear masks at this point in the pandemic where vaccines, booster shots and other therapeutic treatments are widely available to combat COVID-19. Clark, 2022 WL 17246445, at *6-7.

Fourth, as the Court of Appeals also recognized in Clark, the law is well established that "[a]n interest in attorney's fees is ... insufficient to create an Article III case or controversy where

14

none exists on the merits of the underlying claim." *Clark*, 2022 WL 17246445, at *5, n.10 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)) (further citation omitted). In addition, the parties' "interest in attorneys' fees does not save a matter from mootness." *Id*. (quoting *Ivy Club v. Edwards*, 943 F.2d 270, 276 (3d Cir. 1991)). Therefore, the fact that Plaintiffs and/or Defendants may have sought attorneys' fees as a prevailing party under the ADA is insufficient to confer subject matter jurisdiction over the non-justiciable federal claims.[4] *See Clark*, 2022 WL 17246445, at *5, n.10.

For all of these reasons, the Court holds that Plaintiffs' Title III ADA discrimination and retaliation/coercion claims are moot and must be dismissed for lack of subject matter jurisdiction.

### B. Supplemental Jurisdiction Over State Law Claims

The Court's final inquiry is whether it should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. Section 1367(c)(3) "permits a district court to decline the exercise of supplemental jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.'" *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (quoting 28 U.S.C. § 1367(c)(3)). "Congress explicitly green-lighted" the dismissal of state law claims in such situations. *Kach*, 589 F.3d at 650. With that said, "[t]he decision to retain or decline jurisdiction over state-law claims is discretionary" and "'should be based on considerations of judicial economy, convenience and fairness to the litigants.'" *Id*. at 650 (quoting *New Rock Assets Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996)) (further citations omitted). If the Court declines jurisdiction, the dismissal of the state law claims is without prejudice so that they can be

---

[4] In their brief, Defendants asserted that they would seek attorneys' fees against one specific Plaintiff, John Blackstone. (Docket No. 158). However, Blackstone dismissed all of his claims against Giant Eagle on April 6, 2022 and is no longer a party to this lawsuit. (Docket No. 163).

refiled in an appropriate state court. *Id*. (citing *Elmore v. Cleary*, 399 F.3d 279, 283 (3d. Cir. 2005)).

As there is no ongoing case or controversy of federal law and only state law issues remain to be decided in this case between Pennsylvania-based Giant Eagle and its local customers, the Court believes that the interests of judicial economy, convenience, and fairness weigh strongly in favor of declining supplemental jurisdiction over Plaintiffs' state law claims so that they can be adjudicated in an appropriate state forum. *See Kach*, 589 F.3d at 650. Most importantly, the PHRA claims for damages present a dispute that is best suited for resolution by a state tribunal because Plaintiffs assert that Giant Eagle refused them service in violation of the state mask mandate issued by the Secretary of Health. (*See* Docket No. 51).

In any event, the primary reasons cited by Defendants for this Court to retain jurisdiction over the state law claims have now been resolved. (*See* Docket No. 158). To that end, fact discovery has been completed and the Court has adjudicated their many discovery disputes. (Docket Nos. 205; 206). Defendants suggested that they would be prejudiced if Plaintiffs engaged in forum shopping by splitting their claims and filing separate individual actions in different Courts of Common Pleas, but Plaintiffs replied that they have no such intentions and plan "to promptly refile in state court and move directly to trial without additional discovery or delay." (Docket No. 165 at 3). Even if Plaintiffs change tactics and employ this disavowed strategy, Defendants would not be prejudiced because the Pennsylvania Rules of Civil Procedure would permit them to move for the cases to be consolidated within a particular county or coordinate any actions filed in different counties before a single court. *See e.g., HTR Restaurants, Inc. v. Erie Ins. Exch.*, 260 A.3d 978, 990 (Pa. Super. Ct. 2021), *reargument denied* (Oct. 13, 2021), *appeal granted*, 279 A.3d 38 (Pa. 2022), *and appeal granted*, 279 A.3d 40 (Pa. 2022) ("Rule 213.1 does authorize a single

judge […] to decide coordination issues within the constraints of Rule 213.1)); Pa. R. Civ. P. 213 (consolidation of actions); Pa. R. Civ. P. 213.1 (coordination of actions).

All told, the purpose of the Court consolidating these individual actions was to streamline the litigation of the common legal and factual issues regarding Plaintiffs' Title III ADA claims for injunctive relief and now that those claims have been dismissed, the state law claims will be dismissed, without prejudice, to be refiled in state court. See 28 U.S.C. § 1367(c)(3).

V.     CONCLUSION

To conclude, Article III of the Constitution limits this Court's jurisdiction to deciding live cases or controversies and the recent decisions from the United States Court of Appeals for the Third Circuit make clear that Plaintiffs' federal claims are moot now that Giant Eagle has discontinued its COVID-19 mask policy and welcomed its customers to shop in its stores without masks. See e.g., *County of Butler*, 8 F.4th at 230; *Clark*, 2022 WL 17246445, at *1; *Parker*, 2021 WL 5492803, at *4. Since the federal claims will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims but expects that the parties should be able to bring them to a prompt resolution in an appropriate forum because fact discovery has been completed and all of their discovery disputes have been adjudicated. See 28 U.S.C. § 1367(c)(3).

Accordingly, for the reasons set forth herein, Plaintiffs' Response to Rule to Show Cause [152] is granted, Defendants' Response to the Rule to Show Cause [158] is denied, and the Third Amended Consolidated Complaint [51] is dismissed, for lack of subject matter jurisdiction as to the federal claims and without prejudice to Plaintiffs pursuing their state law claims in state court.[5]

---

[5] The Court notes that the dismissal of the federal claims for lack of subject matter jurisdiction due to mootness is without prejudice. See e.g., *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir.1980) ("A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim. Ordinarily, such a dismissal is 'without prejudice.'"); *New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011) ("the District Court's dismissal for

An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: December 7, 2022

cc/ecf: All counsel of record.

---

lack of subject matter jurisdiction was by definition without prejudice."); *Doe 1*, 2022 WL 2951467, at *1 (remanding school mask cases to "the District Court with instruction to dismiss without prejudice the complaints as moot."); *Lontex Corp. v. Nike, Inc.*, No. CV 18-5623, 2020 WL 5947852, at *4 (E.D. Pa. Oct. 7, 2020 ("A dismissal without prejudice makes sense when, as here, a case is mooted by voluntary cessation. If the relevant behavior ever restarts, the cause of action will cease to be moot, and the opposing party should be allowed to refile his or her claims.").